**FOURTH JUDICIAL DISTRICT COURT**
**STATE OF NEW MEXICO**
**COUNTY OF SAN MIGUEL**

**JOHN VIGIL,**

<strong>Plaintiff,</strong>

**vs.**                                                     No. ___D-412-CV-2018-00263___

**FRANCES TWEED,**                                          Baca, Gerald

**ANTONIO COCA**

**JOE CHAVEZ,**

**NEW MEXICO DEPT. OF HEALTH, a**
**political subdivision of the NEW MEXICO**
**DEPARTMENT OF HEALTH,**

**DEPUTY SEAN ARMIJO, in his individual**
**capacity as a deputy employed by the San**
**Miguel County Sheriff's Office,**

**UNDERSHERIFF ANTHONY MADRID, in**
**his individual capacity as a deputy employed**
**by the San Miguel County Sheriff's Office,**

**DEPUTY ANTOINE WHITFIELD, in his**
**individual capacity as a deputy employed by**
**the San Miguel County Sheriff's Office, and**

**BOARD OF COUNTY COMMISSIONERS**
**OF THE COUNTY OF SAN MIGUEL,**

<strong>Defendants.</strong>

<u>**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND TORT CLAIMS**</u>

Plaintiff John Vigil, by and through his attorneys of record, ROMERO & WINDER, P.C.

(Joe M. Romero, Jr.) and for his Complaint for violation of his federally protected civil rights,

violations of his state-protected civil rights, and for torts committed against him, states:

EXHIBIT A

## JURISDICTION AND VENUE

1.      Venue is proper in this Court pursuant to NMSA 1978 §§ 38-3-1(A) and/or 41-4-18(A). All of the wrongful acts alleged occurred in San Miguel County, New Mexico.

2.      This Court also has jurisdiction over Plaintiff's claims seeking monetary damages, equitable relief and such other relief as will redress the unlawful conduct of, and deprivations by Defendants of rights, privileges and immunities secured to Plaintiff by the Constitution, statutory and common law of the State of New Mexico and the Constitution of New Mexico.

3.      This Court has jurisdiction over the counts contained herein that are brought under 42 U.S.C. § 1983 pursuant to the terms of the statute.

## PARTIES

4.      Plaintiff John Vigil is a resident of the State of New Mexico, County of San Miguel.

5.      Upon Information and belief, Defendants Frances Tweed is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Frances Tweed was acting as a de facto supervisor or under authority granted her by Plaintiff's supervisors at the New Mexico Behavioral Health Institute ("NMBHI"). At all times material to this Complaint, Defendant Frances Tweed was acting within the scope of her employment with State of New Mexico. Immunity for the tort claims alleged herein is waived by the New Mexico Tort Claims Act. Defendant Frances Tweed is sued herein in her individual capacity as an agent/employee of the State of New Mexico, Department of Health, at NMBHI.

6.      Upon Information and belief, Defendant Antonio Coca is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Antonio Coca was acting pursuant to authority granted to him by the State of New Mexico Dept. of Health. At all times material to this Complaint, Defendant Antonio Coca was acting within the scope of his

2

employment with State of New Mexico. Immunity for the tort claims alleged herein is waived by the New Mexico Tort Claims Act. Defendant Antonio Coca is sued herein in his individual capacity as an agent/employee of the State of New Mexico at NMBHI.

7.     Upon Information and belief, Defendant Joe Chavez is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Joe Chavez was acting pursuant to authority granted to him by the State of New Mexico Dept. of Health. At all times material to this Complaint, Defendant Joe Chavez was acting within the scope of his employment with State of New Mexico. Immunity for the tort claims alleged herein is waived by the New Mexico Tort Claims Act. Defendant Joe Chavez is sued herein in his individual capacity as an agent/employee of the State of New Mexico at NMBHI.

8.     Defendant NMBHI is a division of the New Mexico Department of Health ("NMDOH"), which is itself a division of the State of New Mexico and is a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-3(B) and (C). At all times material hereto, NMDOH was the employer of Defendants Frances Tweed, Antonio Coca, and Joe Chavez.

9.     Upon Information and belief, Defendant Sean Armijo is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Sean Armijo was an officer of the San Miguel County Sheriff's Office. As such, Defendant Sean Armijo was a law enforcement officer within the meaning of the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3(D) and, consequently, immunity is waived for the actions complained of herein. At all times material to this Complaint, Defendant Sean Armijo was acting within the scope of his employment. Defendant Sean Armijo is sued herein in his individual capacity as an agent/employee of the San Miguel County Sheriff's Office.

10.     Upon Information and belief, Defendant Anthony Madrid is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Anthony Madrid was an officer and undersheriff of the San Miguel County Sheriff's Office. As such, Defendant Anthony Madrid was a law enforcement officer within the meaning of the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3(D) and, consequently, immunity is waived for the actions complained of herein. At all times material to this Complaint, Defendant Anthony Madrid was acting within the scope of his employment. Defendant Anthony Madrid is sued herein in his individual capacity as an agent/employee of the San Miguel County Sheriff's Office.

11.     Upon Information and belief, Defendant Antoine Whitfield is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Antoine Whitfield was an officer of the San Miguel County Sheriff's Office. As such, Defendant Antoine Whitfield was a law enforcement officer within the meaning of the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3(D) and, consequently, immunity is waived for the actions complained of herein. At all times material to this Complaint, Defendant Antoine Whitfield was acting within the scope of his employment. Defendant Antoine Whitfield is sued herein in his individual capacity as an agent/employee of the San Miguel County Sheriff's Office.

12.     Defendant Board of County Commissioners of San Miguel County is an incorporated governmental entity, a body politic, and a political subdivision under the laws of the State of New Mexico. It is also a local governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-3(B) and (C). Pursuant to NMSA 1978, § 4-46-1, all suits against a county are to be brought in the name of the board of county commissioners of that county.

## **FACTUAL BACKGROUND**

13.     In June of 2012, Patricia J. Vigil brought suit against the New Mexico Behavioral

Health Institute for discrimination and retaliation pursuant to the New Mexico Human Rights Act,

for violations of the New Mexico Whistleblower Protection Act, and for violations of the New

Mexico Fraud Against Taxpayers Act. *See, Vigil vs. New Mexico Behavioral Health Institute*, Case

No. D-412-CV-2012-279.

14.     Patricia J. Vigil is Plaintiff's longtime domestic partner and this fact was well-

known by the named Defendants in this action.

15.     The allegations in Ms. Vigil's lawsuit—many of which included graphic sexual

misconduct—went back to 2010 and 2011.

16.     Throughout the course of Ms. Vigil's litigation, Plaintiff supported her. Plaintiff

was present at hearings and conferences in his personal capacity in support of Ms. Vigil.

17.     Plaintiff's employers and supervisors including, but not necessarily limited to

Defendants Frances Tweed, Antonio Coca, and Joe Chavez were angered by Plaintiff's support of

Ms. Vigil throughout her litigation against NMBHI.

18.     Upon information and belief, after Ms. Vigil's lawsuit was settled for a substantial

sum, Defendants and others sought to retaliate against Plaintiff for his support of his partner.

19.     Specifically, on May 29, 2015, Plaintiff's superiors at the NMBHI, a state hospital,

received a typed anonymous letter alleging that Plaintiff had narcotics stored in his desk. The desk

was located in El Paso Cottage, one of the NMBHI buildings. The letter stated:

> I was told and everybody knows that supervisor john vigil has a lot
> of bottels of the patientes meds in his desk, and some are ativans and
> narcotics locked away. Also hundreds of dollars of there money to.
> John vigil is the psych tech supervisor at the arches. We will send to
> HR patient avocate and Investegations. You cannot tell him how you
> found out cuase he will know who send this letter.

20.     Five days later, three NMBHI employees—Defendants Frances Tweed, Antonio Coca, and Joe Chavez—conducted a search of Plaintiff's desk. At the time of the search, they knew that Plaintiff was on vacation and would not be present. They knew that Plaintiff's office was a secure area to which they did not normally have access; they nonetheless obtained a key to enter. Plaintiff kept a padlock on his desk, which they cut off. They found and photographed various items within the desk, some of which they moved, removed, or examined, and then Mr. Chavez placed a new lock on the desk.

21.     Two days later, at approximately 10:00am on June 5, 2015, Joe Chavez made contact with Deputy Sean Armijo of the San Miguel Sheriff's Department, claiming a possible narcotics larceny had occurred. Mr. Chavez gave Deputy Armijo a copy of the anonymous letter. Deputy Armijo obtained statements from both Mr. Chavez and Frances Tweed, and consequently learned that they had entered Plaintiff's secure office, cut off the lock he had on his desk, conducted a search, and placed a new lock on the desk. Mr. Chavez provided Deputy Armijo with pictures that had been taken in the course of the initial search.

22.     On the basis of the above information, Deputy Armijo and Undersheriff Anthony Madrid obtained and executed a search warrant on Plaintiff's desk. In order to enable their search, Joe Chavez removed the lock he had placed on the desk after cutting Plaintiff's own lock off.

23.     When their search concluded, the officers submitted a "Return and Inventory" claiming that all the items in the desk had been "found by Under Sheriff Anthony Madrid." These documents omitted any mention of the previous warrantless search or the individuals who had conducted it.

24.     About two weeks after deputies conducted their search on Plaintiff's desk, Frances Tweed received a second typed anonymous note. The note stated:

> John paul vigil has 2 lokers in mesa an el paso unit 1 in mesa has a combination and 1 in el pasao has a yellow lock. I no the 1 in el paso has pills. He uses.

25.     After receiving this anonymous note, Frances Tweed and other NMBHI employees conducted searches on Plaintiff's lockers in both El Paso and Mesa Cottages while Plaintiff was not present. Once again, they cut the locks off in order to perform their searches.

26.     On June 19, 2015, Frances Tweed contacted Undersheriff Madrid to inform him that she had received another anonymous letter—this time regarding Plaintiff's personal lockers. Undersheriff Madrid arrived at the scene at approximately 11:00am., and Ms. Tweed took him, to Plaintiff's locker in Mesa Cottage. She informed him that the lock had been cut off and a search performed. She itemized the pills allegedly found in the locker during her first search, claiming that she had "researched" them and identified them as narcotics.

27.     Undersheriff Madrid and Deputy Antoine Whitfield obtained a second search warrant on June 26, 2015, and executed it the same day—a week after Undersheriff Madrid investigated Plaintiff's cut-open locker with Frances Tweed. During this third examination of Plaintiff's locker, the second by law enforcement, Undersheriff Madrid seized several items.

28.     Undersheriff Madrid then submitted a "Return and Inventory" for the items seized, stating that he had executed a search of the locker pursuant to the June 5, 2015 search warrant—though that warrant was specifically for Plaintiff's desk in another building, and had been executed the same day it was issued.

29.     On July 8, 2015, Undersheriff Madrid submitted an affidavit for Plaintiff's arrest. This affidavit lists the items found during the searches of Plaintiff's lockers and desk, but nowhere

mentions the warrantless search of Plaintiff's desk.

30.     There is no indication that NMBHI, as his government employer, had any policy in place that diminished his expectation of privacy or alerted him to the possibility that it would conduct unconsented searches while he was not present and this search, far from being part of an established administrative practice, was undertaken for the express purpose" of finding items related to alleged criminal conduct.

31.     According to the June 5, 2015 Affidavit for Search Warrant, the grounds for the deputies' search of Plaintiff's desk were:

        a.  an anonymous note, written by a person who apparently remains unidentified;

        b.  the statements of Joe Chavez and Frances Tweed as to what they had discovered in their previous illegal search;

        c.  pictures of items retrieved in the previous illegal search; and

        d.  Mr. Chavez's and Ms. Tweed's statements purporting to identify items discovered in said search as narcotics. When Deputy Armijo sought a search warrant for the desk, he was fully aware of the NMBHI search and chose to use information obtained from it. Without the fruits of that initial search, the only basis for the June 5, 2015 search warrant was a typed anonymous note.

32.     When Undersheriff Madrid responded to NMBHI on June 19, 2015, he too was aware that NMBHI had conducted repeated warrantless searches of Plaintiff's belongings. Undersheriff Madrid expressly admitted that he was able to view Plaintiff's locker in Mesa Cottage only because NMBHI employees had forcibly removed Plaintiff's personal lock.

33.     According to the Affidavit for Search Warrant that Undersheriff Madrid signed on June 26, 2015, a week after he first viewed Plaintiff's locker with Frances Tweed, the grounds for the second search warrant were:

        a.  the previous law enforcement search on June 5, 2015;

        b.  the second anonymous note;

    c.   Frances Tweed's representation that Plaintiff's locker contained pills, which was based on NMBHI's search of the locker;

    d.   Ms. Tweed's representation that "she had researched the pill's descriptors and found it to be Hydrocodone"; and

    e.   Undersheriff Madrid's warrantless investigation of Plaintiff's cut-open locker on June 19, 2015. Without the fruits of NMBHI's prior searches—including their removal of Plaintiff's lock, which allowed Undersheriff Madrid to view Plaintiff's locker without a warrant on June 19, 2015—the only basis for the second search warrant was again a typed anonymous note.

34.    On November 6, 2015, Plaintiff was charged with felony Possession of a Controlled Substance; Misdemeanor Possession of a Controlled Substance; and a second felony alleging that he sold or possessed Dangerous Drugs.

35.    Plaintiff was forced to defend himself against the unsupported charges. In so doing, he incurred substantial attorney's fees, lost wages, suffered emotional distress (of the type and sort that anyone in Plaintiff's situation would be expected to endure rather than of a specific, diagnosable nature) as a result of the fear and apprehension that Defendants' actions caused Plaintiff.

36.    Ultimately, Plaintiff was acquitted of two of the three charges at trial. The third charge was dismissed. Plaintiff was not convicted of *any* crime as a result of the allegations leveled against him by and/or because of Defendants.

37.    This suit is not barred as a collateral attack on a conviction.

## COUNT I: UNLAWFUL SEARCH AND SEIZURE
(Under the United States Constitution)

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

38.    The Fourth Amendment to the federal Constitution provides citizens protections against unreasonable searches and seizures. U.S. Const., amend. IV.

39.    Under precedent existing at the time of the search that is the subject of this lawsuit,

Plaintiff had a clearly established right to a reasonable expectation of privacy to his desk, lockers, and office. *See*, *City of Ontario v. Quon*, 560 U.S. 746, 747 (2010)(A government employee can claim Fourth Amendment protections to those areas of his workplace in which he has a reasonable expectation of privacy).

      40.     The Supreme Court has held that such expectations of privacy would extend to the employee's "private property"—including desks or cabinets in his office. *O'Connor*, 480 U.S. at 715-16, *citing Mancusi v. DeForte*, 392 U.S. 364 (1968); *see also United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007)(holding that an employee had a reasonable expectation to privacy in his office when lie normally had exclusive use of that area, despite the fact that his employer had a master key); *Schowengerdt v. Gen. Dynamics Corp.*, 823 F.2d 1328, 1331 (9th Cir. 1987)(holding that an employee had a reasonable expectation of privacy in his locked desk and credenza where he had received no notice that those items could be searched); *United States v, DeWeese*, 632 F.2d 1267, 1271 (5th Cir. 1980)(holding that a crewman would have a reasonable expectation of privacy in his "foot locker, duffle bag, private cabin or quarters," to which only he normally had access); *United States v. Speights*, 557 F.2d 362, 363 (3d Cir. 1977)(holding that a police officer had a reasonable expectation of privacy in his locker, which he secured with a personal lock, where no established practices alerted him to the possibility of unconsented searches). Even more broadly, the Supreme Court in *Quon* allowed for the possibility that the offices of government employees are generally covered by Fourth Amendment protections." 560 U.S. at 747, *citing O'Connor*, 480 U.S. at 731 (Scalia, J., concurring)(emphasis added).

      41.     Defendants are not entitled to qualified immunity in this case.

      42.     Defendants' searches of Plaintiff's desk and lockers violated his rights under the Fourth Amendment.

43.    Defendant's wrongful acts proximately caused Plaintiff to suffer damages in an amount to be proven at trial.

44.    Defendants acted maliciously, willfully, intentionally, deliberately, and with intent to cause harm and did, in fact, cause harm to Plaintiff.

45.    The assessment of punitive damages against Defendants is also therefore appropriate in this case, in order to dissuade Defendants and others from committing the same or similar acts in the future.

## COUNT II: UNLAWFUL SEARCH AND SEIZURE
### Under the New Mexico Constitution

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

46.     Our State Constitution provides the same protections as the U.S. Constitution, N.M. Const. art. 2, § 10, but "there is established New Mexico law interpreting Article II, Section 10 more expansively than the Fourth Amendment," *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 12, 130 N.M. 386, 25 P.3d 225 (internal. citations omitted). Where our courts diverge from federal precedent, therefore, they do so to provide an "extra layer of protection" from searches and seizures. *Id.* at ¶ 15; *see also ACLU of N.M. v. City of Albuquerque*, 2006-NMCA-078, 1139, 139 N.M. 761, 137 P.3d 1215.

47.     New Mexico constitutional jurisprudence expands rather than limits federal standards for reasonable expectation of privacy.

48.     As stated above and incorporated herein, there was no exception to the warrant requirement to justify the multiple unconsented searches of Plaintiff's private work areas: government agents conducted those searches at times when they knew Plaintiff was not present, they did not seek his consent, they cut the locks off of spaces to which he had a reasonable expectation of privacy, and their goal throughout was to find evidence of crimes or misconduct. This intention is clarified beyond doubt by their continued efforts to search and seize Plaintiff's belongings even after involving law enforcement in the matter.

49.     Defendants' searches of Plaintiff's desk and lockers violated his rights under Article II, Section 10. *O'Connor*, 480 U.S. at 723.

50.     In New Mexico, "[t]he constitutional right to be free from unreasonable search and seizure includes the exclusionary rule and precludes a good-faith exception." *State v. Gutierrez*, 1993-NMSC-062, ¶ 50, 116 N.M. 431, 863 P.2d 1052.

51.    Under New Mexico state law, informants' tips cannot serve as the basis for a search warrant unless independent corroboration establishes a "substantial basis for believing the informant's report was based on reliable information"—a higher standard than under the federal Constitution. *State v. Cordova*, 1989-NMSC-083, ¶ 25, 109 N.M. 211, 784 P.2d 30. When the tip comes from an anonymous source, a warrant cannot issue unless the issuing judge can make an independent determination of probable cause. *State v. Lujan*, 1998-NMCA-032, ¶ 3, 124 N.M. 494, 953 P.2d 29.

1.    An affidavit for search warrant must therefore contain:

    a.    the factual basis of the informant's knowledge (the "basis of knowledge" test); and

    b.    support for the informant's credibility, meaning that "either the informant is inherently credible or the information from the informant is credible on this particular occasion" (the "credibility" or "veracity" test). *Id.* at ¶ 4. Neither prong of the Cordova test has been satisfied here.

2.    The searches violated Plaintiff's constitutional rights under the New Mexico Constitution and were unlawful.

3.    The search warrants issued after these unlawful searches did not cure their flaws or render otherwise illegally search somehow legally protected.

4.    First, the notes fail on the basis-of-knowledge prong. New Mexico courts have found that "first-hand observations" satisfy that test, *State v. Barker*, 1992-NMCA-117, ¶ 5, 114 N.M. 589, 844 P.2d 839; but in this case, the first anonymous note explicitly denies that the informant has first-hand knowledge. It instead states, "I was told and everybody knows" that Plaintiff was guilty of misfeasance and criminal conduct. The anonymous informant does not identify the source of this hearsay, and the note does not indicate whether either the anonymous informant or the equally anonymous sub-informant are even employed at NMBHI. *See State v. Haidle*, 2012-NMSC-033, ¶ 18, 285 P.3d 668 (rejecting an affidavit for search warrant based on

"multiple levels of hearsay from unidentified sources").

5.    The second note similarly contains no description of how its writer obtained his or her knowledge; it simply states, "I no [sic]" that Plaintiff has pills in his El Paso locker. In fact, the pills were allegedly discovered in his Mesa locker—suggesting that the anonymous source never personally observed pills in that location.

6.    In *Barker*, the New Mexico Court of Appeals found that a search warrant failed on this prong when the affidavit: (1) "reflect[ed] no independent police corroboration of the informant's information"; (2) did not describe any of "the surrounding circumstances of the informant's admissions, which would serve to show why they were trustworthy"; and (3) "the informant [was] not named." 1992-NMCA-117, ¶ 13.

7.    Similarly, in *Haidle*, the Supreme Court held that an affidavit did not satisfy the credibility prong when it did not indicate that the informant had provided reliable information in the past, the statements were not against the informant's interest, and there was "no information to discount that the sources at any level might themselves have been involved in the [criminal behavior alleged] or might have had any other reason to fabricate the story." 2012-NMSC-033, ¶ 21.

8.    This case mirrors *Barker* and Haidle. There is no evidence that the author of the first anonymous note had previously furnished accurate information, such as could establish his or her credibility—the documents do not even indicate whether the same person authored both notes, as the second note does not refer to the first in any way.

9.    At least one of the notes relies on hearsay from yet another unknown source. The notes are not against the author's or authors' interests; as in *Haidle*, none of the sources' motives can be verified, nor can it be discounted that they might have had reason to fabricate the story or

tamper with the scenes they identified. Id.

10. The affidavits for the June 5, 2015 and June 26, 2015 search warrants do not indicate any independent police investigation of these anonymous notes; in lieu of attempting to make a credibility determination about the actual informant or informants, the deputies relied upon the fruits of previous illegal searches.

11. According to the affidavit for the June .5, 2015 warrant, the deputies' investigation consisted of: interviewing people who had conducted a prior unlawful search of the area; reading a copy of the anonymous note; reviewing the findings of the prior search, including photographs; and looking in the area to be searched before seeking any warrant.

12. The affidavit contains no reference whatsoever to an investigation into the note's authorship or the credibility of the informant. The affidavit for the June 26, 2015 warrant describes a similar investigation: deputies interviewed a person who had conducted a prior unlawful search of the area; read a copy of the second anonymous note; and looked in the area to be searched long before seeking a warrant. As before, the affidavit conspicuously lacks any reference to an investigation of this informant's credibility, or even a determination that the second informant was the same as the first.

13. Because both anonymous notes fail both prongs of the *Cordova* test, they cannot provide a substantial basis for probable cause. 1989-NMSC-083, ¶ 25; *State v. Vest*, 2011-NMCA-037, ¶ 12, 149 N.M. 548, 252 P.3d 772.

14. The remainder of the evidence cited in the affidavits stems directly from the multiple illegal searches described above, and was never reobtained "by means sufficiently distinguishable to be purged of the primary taint," *State v. Monteleone*, 2005-NMCA 129, ¶ 17, 138 N.M. 544, 123 P.3d 777, *citing Wong Sun v. United States*, 371 U.S. 471, 488 (1963); therefore,

those searches ostensibly pursuant to the two search warrants were just as unlawful as NMBHI's searches, and their fruits should also be suppressed, *Id.* at 5 20; *Gutierrez*, 1993-NMSC-062, 1f 50; *Trudelle*, 2007-NMCA-066, ¶ 47; *see also Barker*, 1992-NMCA-117, 14 (holding that when a search warrant failed to satisfy *Cordova*, the search was unlawful and its fruits should not have been admissible against Plaintiff at trial").

15.     At times relevant to this Complaint, Defendants were acting as law enforcement officers within the meaning of the New Mexico Tort Claims Act § 41-4-3(D) and, consequently, immunity is waived for the actions complained of herein.

16.     Defendants' wrongful acts proximately caused Plaintiff to suffer damages in an amount to be proven at trial.

17.     No punitive damages are sought for claims brought pursuant to the New Mexico Tort Claims Act.

### COUNT III: FOURTH AMENDMENT MALICIOUS PROSECUTION
### (Pursuant to 42 U.S.C. § 1983)

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

18.     42 U.S.C. § 1983 provides for civil liability for the deprivation of any rights, privileges or immunity secured by the United States Constitution.

19.     The Tenth Circuit "has recognized the viability of malicious prosecution claims under § 1983." *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996). To establish a malicious-prosecution claim under § 1983, a plaintiff must prove that the defendant initiated or continued a proceeding against him without probable cause. *Becker v. Kroll*, 494 F.3d 904, 913-14 (10th Cir. 2007).

20.     Plaintiff was wrongfully detained after the initiation of legal process.

21.     In this case, the legal process itself was wrongful as there was no probable cause to

charge Plaintiffs with the aforementioned crimes and any evidence of any malfeasance was the result of the above described unlawful and unconstitutional searches.

22.     Upon information and belief, at the time that Defendants conspired to initiate and did initiate the filing of charges against Plaintiff, Defendants were fully aware that there was no probable cause to support the aforementioned allegations.

23.     All of the charges brought against Plaintiff were ultimately dismissed.

24.     As a result of the criminal charges that were wrongfully brought against them, Plaintiffs were arrested, detained, incarcerated, prosecuted and forced to spend thousands of dollars to defend themselves—all in contravention of their Fourth Amendment protections. Thus, Defendant's wrongful acts proximately caused Plaintiff to suffer damages.

25.     In this case, Defendants caused the Plaintiff's confinement or prosecution; the criminal action terminated in favor of Plaintiff; no probable cause supported the original arrest, confinement, or prosecution; Defendants acted with malice; and Plaintiff sustained damages.

26.     Defendants acted maliciously, willfully, intentionally, deliberately, and with intent to cause harm and he did, in fact, cause harm to Plaintiffs through said malicious prosecution.

27.     The assessment of punitive damages against Defendants is also therefore appropriate in this case, in order to dissuade Defendants and others from committing the same or similar acts in the future.

## COUNT IV: MALICIOUS ABUSE OF PROCESS (LACK OF PROBABLE CAUSE) (Pursuant to the New Mexico Tort Claims Act)

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

28.     New Mexico has combined the torts of abuse of process and malicious prosecution into a single tort: malicious abuse of process. *Devaney v. Thriftway Marketing Corp.*, 124 N.M.512,

518, 953 P.2d 277, 283 (1997), *abrogated on other grounds by Fleetwood Retail Corp. of N.M. v. LeDoux*, 142 N.M. 150, 164 P.3d 31 (2007).

29.     The Supreme Court of New Mexico has held that the elements of the tort of malicious abuse of process are as follows: (i) the initiation of judicial proceedings against the plaintiff by the defendant; (ii) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (iii) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (iv) damages. *Devaney v. Thriftway Marketing Corp.*, 124 N.M. at 518, 953 P.2d at 283.

30.     "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." *Richardson v. Rutherford*, 109 N.M. 495, 501, 787 P.2d 414, 420 (1990).

31.     The Supreme Court of New Mexico has held:

> an abuse of process arises when there has been a perversion of the court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to perform some collateral act which he legally and regularly would not be compelled to do.

*Richardson v. Rutherford*, 109 N.M. at 500, 787 P.2d at 419.

32.     A malicious abuse of process claim may be asserted in two ways: (1) a "procedural irregularity" involving misuse of procedural devices such as discovery or (2) "an act that otherwise indicates the wrongful use of proceedings." *Fleetwood Retail Corp. of N.M. v. LeDoux*, 142 N.M. at 155, 164 P.3d at 36.

33.     In this case Defendants caused the initiation of judicial proceedings against Plaintiffs on the charges of "trafficking in a controlled substance," or the like for reasons that were improper—including but not limited to: fabricating claims with a primary motive to achieve the

illegitimate end of punishing Plaintiff for speaking out in support of his partner and/or against mismanagement and other protected activities and those bad acts resulted in damages to Plaintiff.

34.    Defendants did not have a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that the claim could be established to the satisfaction of a court or jury.

35.    All charges filed against Plaintiff were dismissed.

36.    As a result of the charges that were wrongfully brought against them, Plaintiff was arrested, detained, incarcerated, forced to post a bond, arraigned and had his freedom restricted and suffered other harms and damages to be proven at trial, including but not limited to pain and suffering in the form of emotional and psychological distress of the type and sort that any person could be expected to experience under like or similar circumstances. Defendants' wrongful acts proximately caused Plaintiff to suffer damages.

37.    No punitive damages are sought for claims brought pursuant to the New Mexico Tort Claims Act.

### COUNT V: FIRST AMENDMENT RETALIATION
(Pursuant to 42 U.S.C. § 1983)

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

38.    42 U.S.C. § 1983 provides for civil liability for the deprivation of any rights, privileges or immunity secured by the United States Constitution.

39.    The United States Supreme Court has held that "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Hartman v. Moore*, 547 U.S. 250, 256 (2006)(*quoting Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1988)).

40.    It is therefore "settled that as a general matter, the First Amendment prohibits

government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. at 256 (citation omitted).

41.     Plaintiffs engaged in no activity that would legitimately give rise to a criminal complaint for "trafficking in a controlled substance" of any sort.

42.     Defendants were aware that there was no probable cause to charge Plaintiff with "trafficking in a controlled substance" or the like.

43.     Defendants were aware that Plaintiff had exercised his First Amendment protected right of speech and association in support of Patricia J. Vigil throughout the course of her lawsuit against NMBHI.

44.     Upon information and belief, Defendants conspired to retaliate against Plaintiff for his exercise of his First Amended protected rights.

45.     Defendants caused the aforementioned criminal charges to be brought against Plaintiff in retaliation for Plaintiff speaking out in support of Ms. Vigil's claims, being present and associating with Ms. Vigil at various hearings and conferences in Ms. Vigil's case.

46.     Defendants' actions were substantially motivated by their desire to squelch Plaintiff's speech, expression and protected association and/or punish Plaintiff for exercising his First Amendment rights.

47.     Defendants actions were likely also motivated by the fact that Defendant had spoken out over mismanagement at NMBHI, including but not necessarily limited to employee misbehavior and misclassification of residents/patients.

48.     The widespread misclassification of NMBHI residents/patients caused people who could not independently function to be assigned to the unit that Plaintiff oversaw.

49.     Said unit was not designed to house people who could not, for example, manage

their own money or take their own medication.

50.     These failings were compounded by the lack of medical staff in the unit in which Plaintiff worked.

51.     The degree and type of action taken by Defendants against Plaintiff was sufficient to chill a person of ordinary firmness in the continued exercise of his or her First Amendment rights.

52.     The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for engaging in First Amendment protected activity.

53.     Said First Amendment retaliation by Defendants—was harmful and offensive, and Plaintiff was harmed and damaged by Defendants' First Amendment retaliation.

54.     Plaintiff is entitled to just and fair compensation in an amount to be established at trial.

55.     Defendants acted maliciously, willfully, intentionally, deliberately, and with intent to cause harm and they did, in fact, cause harm to Plaintiff through their participation in said First Amendment Retaliation.

56.     The assessment of punitive damages against Defendants—save NMBHI against which no punitive damages are sought—is also therefore appropriate in this case, in order to dissuade Defendants and others from committing the same or similar acts in the future.

### COUNT VI: *RESPONDEAT SUPERIOR*
### CLAIMS AGAINST DEFENDANT NMBHI FOR TORT CLAIMS VIOLATION

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

57.     Pursuant to the New Mexico Tort Claims Act, Defendant NMBHI is liable under the doctrine of *Respondeat Superior* for any violation of the Act perpetrated by any NMBHI

employee.

58.     No claim for punitive damages is made against Defendant NMBHI pursuant to the New Mexico Tort Claims Act.

## COUNT VII: *RESPONDEAT SUPERIOR*
## CLAIMS AGAINST DEFENDANT BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SAN MIGUEL FOR TORT CLAIMS VIOLATION

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

1.     Pursuant to the New Mexico Tort Claims Act, Defendant Board of County Commissioners of the County of San Miguel is liable under the doctrine of *Respondeat Superior* for any violation of the Act perpetrated by any county employee.

2.     No claim for punitive damages is made against Defendant County of San Miguel pursuant to the New Mexico Tort Claims Act.

## REQUESTED RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

Award compensatory damages jointly and severally against all Defendants in an amount to be determined by the jury at trial;

Award punitive and exemplary damages against Defendants Frances Tweed, Antonio Coca, Joe Chavez, Sean Armijo, Anthony Madrid, and Antoine Whitfield for violations of 42 U.S.C. § 1983 in a separate amount to be determined by the jury at trial;

Award pre- and post-judgment interest on all monetary damages in an amount to be fixed by the Court;

Award the costs incurred in bringing this action including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

Award other and further relief as the Court deems proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury on all issues so triable and has filed concurrently with this Complaint a separate Jury Demand.

Respectfully submitted,
**ROMERO & WINDER, P.C.**

**"Electronically Filed"**

By:      /s/ Joe M. Romero, Jr.
**Attorney for Plaintiff**
1905 Lomas Blvd. NW
Albuquerque, NM 87104
(505) 843-9776
joe@romeroandwinder.com