**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

John Vigil,

       Plaintiff,

    v.                                        Civ. No. 18-829 SCY/KBM

Frances Tweed, et al.

       Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO DISMISS**

Plaintiff is a former employee of a state-run psychiatric hospital in Las Vegas, New Mexico. He brings suit against the hospital, San Miguel County, and an assortment of individual defendants, claiming that a series of searches conducted of his belongings at his workplace was unlawful. An anonymous, typewritten note sent to Plaintiff's superiors at the hospital claiming that Plaintiff stored cash and narcotics in his desk served as the catalyst for the searches. The hospital and its employees move to dismiss the constitutional claims against them, arguing that they are entitled to qualified immunity because the law did not clearly establish any prohibition on workplace searches based on anonymous notes. They also move to dismiss Plaintiff's claims against them under the New Mexico Tort Claims Act. For the reasons that follow, the Court grants the motion to dismiss in full.

**BACKGROUND**

A.    <u>Procedural Background</u>

Plaintiff filed suit in state court on April 26, 2018. Doc. 1-1. On May 30, 2018, he filed a First Amended Complaint ("FAC"). Doc. 1-4. In the FAC, Defendants Frances Tweed, Antonio Coca, Joe Chavez, and Corrine Dominguez are sued in their individual capacities as employees

of the State of New Mexico. FAC at 2-3 ¶¶ 5-8.[1] Together with Defendant New Mexico Department of Health, who operates the New Mexico Behavioral Health Institute ("NMBHI"), FAC at 4 ¶ 9, these Defendants are collectively the "State Defendants." Additionally, the Amended Complaint names Deputies Sean Armijo and Antoine Whitfield, and Undersheriff Anthony Madrid, of San Miguel County, in their individual capacities. FAC at 3-4 ¶ 10-12. Together with Defendant Board of County Commissioners of San Miguel County, FAC at 5 ¶ 13, these Defendants are collectively the "County Defendants."

The FAC brings the following causes of action: Count I, "Unlawful Search and Seizure (Under the United States Constitution)"; Count II, "Unlawful Search and Seizure Under the New Mexico Constitution"; Count III, "Fourth Amendment Malicious Prosecution (Pursuant to 42 U.S.C. § 1983)"; Count IV, "Malicious Abuse of Process (Lack of Probable Cause) (Pursuant to the New Mexico Tort Claims Act)"; Count V, "First Amendment Retaliation (Pursuant to 42 U.S.C. § 1983)"; Count VI, "*Respondeat Superior* Claims Against Defendant NMBHI for Tort Claims Violation"; and Count VII, "*Respondeat Superior* Claims Against Defendant Board of County Commissioners of the County of San Miguel for Tort Claims Violation." FAC at 10-22 (upper case omitted from original). Except for Counts VI and VII, the FAC brings all Counts against all Defendants. *See id.*[2]

---

[1] Because the paragraph numbering in the FAC starts over on page 13 and again on page 22, the citations herein include the page number as well as the paragraph number.

[2] Although the federal constitutional claims in the FAC are directed at all "Defendants" collectively, it is not clear whether Plaintiff intends to sue the New Mexico Department of Health for a constitutional violation. Plaintiff's complaint does not appear to satisfy the test articulated in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), as there are no allegations of a custom or policy of the Department that would support a *Monell* claim. It also is not obvious that the Department could be held liable under a *Monell* theory. Pursuant to the Eleventh Amendment, liability under *Monell* is limited "to local government units which are not considered part of the State for Eleventh Amendment purposes." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) (quoting *Monell*, 436 U.S. at 690 n.54).

The County Defendants removed this case to federal court on August 30, 2018, alleging that this Court has original jurisdiction over the federal claims in the FAC under 28 U.S.C. § 1331, and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367. *See* Doc. 1 ¶¶ 9-10. On August 31, the State Defendants filed a notice of consent to removal. Doc. 5. The County Defendants filed an Answer to the FAC on October 5, 2018. Doc. 13. The State Defendants filed the instant Motion to Dismiss on October 12, 2018. Doc. 16. Meanwhile, Magistrate Judge Molzen found good cause to delay entry of a Rule 16 scheduling order pending the resolution of the Motion to Dismiss. Doc. 18. Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 15, 21, & 22.

B.     Factual Background

Because this matter is before the Court on a motion to dismiss, the Court accepts the following from the FAC as true for purposes of resolving the motion.

Plaintiff worked for the New Mexico Behavioral Health Institute ("NMBHI"), a psychiatric hospital in Las Vegas, New Mexico run by the New Mexico Department of Health ("the Department"). In June 2012, his longtime domestic partner, Patricia Vigil, brought suit against the NMBHI for discrimination and retaliation. FAC at 5 ¶ 14. Plaintiff supported Ms. Vigil throughout her litigation, attending hearings and conferences in his personal capacity. FAC at 5-6 ¶ 17. Plaintiff's employers at the State "were angered by Plaintiff's support of Ms. Vigil." FAC at 6 ¶ 18. Ms. Vigil's lawsuit was resolved through settlement. FAC at 6 ¶ 19.

---

Neither party addresses this issue. If Plaintiff moves to file a second amended complaint, the Court directs him to be more specific in the proposed second amended complaint regarding which counts are directed towards which defendants and to include detailed factual support for any claims against the Department.

On May 29, 2015, Plaintiff's superiors "received a typed anonymous letter alleging that Plaintiff had narcotics stored in his desk." FAC at 6 ¶ 20. The desk was in a state building. *Id.* The letter stated:

> I was told and everybody knows that supervisor john vigil has a lot of bottels of the patientes meds in his desk, and some are ativans and narcotics locked away. Also hundreds of dollars of there money to. John vigil is the psych tech supervisor at the arches. We will send to HR patient avocate and Investegations. You cannot tell him how you found out cuase he will know who send this letter.

*Id.* (errors in original).

Five days later, when they knew Plaintiff would be on vacation, Defendants Tweed, Coca, and Chavez conducted a search of Plaintiff's desk. FAC at 6 ¶ 21. "Plaintiff's office was a secure area to which they did not normally have access; they nonetheless obtained a key to enter." *Id.* They cut off the padlock on Plaintiff's desk. *Id.* They removed and photographed various items within the desk, and Defendant Chavez placed a new lock on it. *Id.*

On June 5, Defendant Chavez made contact with Deputy Armijo of the San Miguel County Sheriff's Department, claiming a possible narcotics larceny had occurred, and gave him a copy of the anonymous letter. FAC at 6-7 ¶ 23. Deputy Armijo and Undersheriff Madrid obtained and executed a search warrant for Plaintiff's desk. *Id.* Defendant Chavez took off the lock he had placed on the desk to aid the search. *Id.*

Approximately two weeks later, Defendant Tweed received a second anonymous note. FAC at 7 ¶ 26. It stated:

> John paul vigil has 2 lokers in mesa an el paso unit 1 in mesa has a combination and 1 in el pasao has a yellow lock. I no the 1 in el paso has pills. He uses.

*Id.* (errors in original). Defendant Tweed and other state employees conducted searches of the lockers referenced in the note. FAC at 7 ¶ 27. On June 19, Defendant Tweed contacted

Undersheriff Madrid to inform him of the allegations and that a search had been performed. FAC at 7-8 ¶ 28. "She itemized the pills allegedly found in the locker during her first search, claiming that she had 'researched' them and identified them as narcotics." *Id.* On June 26, 2015, Undersheriff Madrid and Deputy Whitfield obtained and executed a search warrant for the lockers. FAC at 8 ¶ 29. Several items were seized. *Id.*

On November 15, 2015, Plaintiff was charged with felony possession of a controlled substance; misdemeanor possession of a controlled substance; and felony possession of dangerous drugs. FAC at 9 ¶ 36. After trial, he was acquitted on two of the three charges and the third charge was dismissed. FAC at 10 ¶ 38.

The State Defendants filed the instant Motion to Dismiss, moving to dismiss all claims against them. Doc. 16. The individual State Defendants argue they are entitled to qualified immunity from the federal constitutional claims, and all State Defendants argue that the state claims are not cognizable against them. *Id.* Plaintiff opposed the motion, but clarified that he agrees to dismiss the malicious prosecution claims against the State Defendants. Doc. 23 at 10. Thus, the issues for the Court to decide are (1) whether the State Defendants have qualified immunity from the Fourth Amendment unlawful search and seizure claims and the First Amendment retaliation claims; and (2) whether the FAC states a claim against the State Defendants for violations under the New Mexico Tort Claims Act.

## LEGAL STANDARD

A.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir.

2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A court considering a challenge under Rule 12(b)(6) may proceed according to a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For purposes of this second prong, the Court "accept[s] the well-pled factual allegations in the complaint as true, resolve[s] all reasonable inferences in the plaintiff's favor, and ask[s] whether it is plausible that the plaintiff is entitled to relief." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (internal citations and quotation marks omitted). "A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the Court required to accept as true legal conclusions that are masquerading as factual allegations. *See Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000). The Court

must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

B.    Qualified Immunity

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to defeat qualified immunity, a plaintiff must assert facts that rebut the presumption of the officer's immunity from suit. *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001). The plaintiff carries the burden of showing that 1) the officer violated a constitutional or statutory right and 2) the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). A court may address these prongs in either order, *Pearson*, 555 U.S. at 236, but a plaintiff must satisfy both in order to avoid qualified immunity, *Olsen*, 312 F.3d at 1304. As with other motions to dismiss, to survive a motion to dismiss based on qualified immunity, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 677.

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The action at issue need not have been previously declared unlawful, but its unlawfulness must be evident in light of preexisting law. *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). Unlawfulness is generally demonstrated "when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law." *Id.* at 1069-70 (internal quotation marks omitted). "A prior case need not have identical facts," *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir.

2017), but the precedent must make it clear "to every reasonable officer . . . that what he is doing violates that right," *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). The plaintiff bears the burden of identifying "a controlling case or robust consensus of cases" where an officer acting "under similar circumstances" to those faced by defendants was found to have acted unlawfully. *D.C. v. Wesby*, 138 S. Ct. 577, 591 (2018).

In recent years, the Supreme Court "has issued a number of opinions reversing federal courts in qualified immunity cases." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). "The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *Id.* (internal quotation marks and citations omitted). "[T]he defense of qualified immunity gives public officials the benefit of legal doubts." *Donovan v. City of Milwaukee*, 17 F.3d 944, 951 (7th Cir. 1994) (internal quotation marks omitted). Thus, qualified immunity provides "ample room for mistaken judgments" and protects all but "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 314, 343 (1986).

## DISCUSSION

I.    **The State Defendants Are Entitled To Qualified Immunity.**

    A.    The State Defendants are entitled to qualified immunity on Plaintiff's Fourth
          Amendment search and seizure claim.

Plaintiff's search and seizure claim is premised on the searches of his desk and lockers at his workplace. FAC at 11 ¶ 44. The State Defendants assume for purposes of their motion that Plaintiff had a reasonable expectation of privacy in his workplace desk and lockers. Doc. 16 at 9. Even if Plaintiff had an expectation of privacy, however, the Fourth Amendment does not require a warrant for "investigations of work-related misconduct." *Narotzky v. Natrona Cty. Mem'l*

*Hosp. Bd. of Trustees*, 610 F.3d 558, 567 (10th Cir. 2010) (citing *O'Connor v. Ortega*, 480 U.S. 709, 725-26 (1987) (plurality op.)). Plaintiff does not dispute that the motivation behind the searches at issue in this case was to investigate work-related misconduct.[3]

The sole question under the Fourth Amendment in this case, therefore, is whether the search was "reasonable under the circumstances." *Narotzky*, 610 F.3d at 567 (citing *O'Connor*, 480 U.S. at 725-26). "Under this standard, 'both the inception and the scope of the intrusion must be reasonable.'" *Id.* (quoting *O'Connor*, 480 U.S. at 726). "In applying this reasonableness standard, the courts must balance 'the legitimate privacy interests of public employees in the private objects they bring to the workplace' against 'the realities of the workplace,' which include 'the need to complete the government agency's work in a prompt and efficient manner.'" *Id.* at 568 (quoting *O'Connor*, 480 U.S. at 721-22). The State Defendants argue that the search of Plaintiff's desk and lockers was justified at its inception due to the anonymous note and the government's strong interest in regulating psychotropic medications in the workplace. Doc. 16 at 10-11. Plaintiff, for his part, emphasizes that the State Defendants had no idea who wrote the note and took no actions to validate it before performing their search. Doc. 23 at 9.

This quarrel over the search's justification is relevant primarily to the first prong of the qualified immunity test—whether Plaintiff's constitutional rights were violated. The first prong,

---

[3] The FAC alleges that one or both searches were "undertaken for the express purpose of finding items related to alleged criminal conduct." FAC at 8 ¶ 32 (internal quotation mark omitted); *see also* FAC at 12 ¶ 50. The Supreme Court left open the possibility that a different standard could apply when an employee is being investigated for criminal misconduct. *See O'Connor*, 480 U.S. at 729 n. ("[W]e do not address the appropriate standard when an employee is being investigated for criminal misconduct or breaches of other nonwork-related statutory or regulatory standards."). In his response, however, Plaintiff does not pursue an argument that the initial search of his desk was part of a criminal investigation. Nor does the FAC allege that the State Defendants were acting at the behest of law enforcement. The Court does not consider, *sua sponte*, how the Fourth Amendment would apply to this search if the search were part of a criminal investigation.

however, is not necessarily the appropriate starting point. The Tenth Circuit and the Supreme Court have instructed that district courts "should proceed directly to, should address only, and should deny relief exclusively based on the second element" when

> (1) the first, constitutional violation question is so factbound that the decision provides little guidance for future cases; (2) it appears that the question will soon be decided by a higher court; (3) deciding the constitutional question requires an uncertain interpretation of state law; (4) qualified immunity is asserted at the pleading stage and the precise factual basis for the claim may be hard to identify; (5) tackling the first element may create a risk of bad decisionmaking due to inadequate briefing; (6) discussing both elements risks bad decisionmaking because the court is firmly convinced the law is not clearly established and is thus inclined to give little thought to the existence of the constitutional right; or (7) the doctrine of constitutional avoidance suggests the wisdom of passing on the first constitutional question because it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.

*Kerns v. Bader*, 663 F.3d 1173, 1180-81 (10th Cir. 2011) (internal quotation marks and alterations omitted). The Court finds that factors (4), (5), and (7) are present here. This case is at the pleading stage. In addition, because the State Defendants have reasonably chosen to focus on the second prong in their motion to dismiss, briefing on the first prong is less developed. Further, no Supreme Court or Tenth Circuit clearly establishes a right to be free from a workplace search predicated on an anonymous tip. And, split among circuits that have considered this issue demonstrates that it is far from obvious whether such a right exists.

To succeed on the second prong—whether the right was clearly established—Plaintiff must demonstrate that "a controlling case or robust consensus of cases" establishes that defendants acting "under similar circumstances" violated a plaintiff's constitutional rights. *D.C. v. Wesby*, 138 S. Ct. 577, 591 (2018). "[T]he contours of a right [must be] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks and alterations in original omitted). Plaintiff accuses the State Defendants of relying on this standard in order to

impose a *scienter* requirement under which Plaintiff must allege "that these *specific* Defendants were personally aware that their actions did not comport with clearly established law." Doc. 23 at 7. Plaintiff is correct that the test is not whether these specific Defendants were aware of clearly established law; instead, the test is whether a reasonable official would have been aware that her actions did not comport with clearly established law. *Anderson*, 483 U.S. at 639-40. The Court, however, does not agree with Plaintiff's characterization of the State Defendants' position. The State Defendants unambiguously apply the correct standard in arguing that "it is plaintiff's burden, not defendants', to identify relevant caselaw showing that their alleged conduct in undertaking a workplace search of a secure psychiatric hospital for psychotropic drugs allegedly stolen from patients by an employee violates clearly established law." Doc. 16 at 11.

Application of the proper objective test reveals that Plaintiff has not met his burden to defeat qualified immunity. Plaintiff fails to provide the Court with any case sufficiently similar to his in which a court found a Fourth Amendment violation. Instead, Plaintiff's response cites only to cases establishing the basic Fourth Amendment right against unreasonable searches by a public employer. Doc. 23 at 8 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 338 (1985); and *O'Connor v. Ortega*, 480 U.S. 709 (1987) (plurality op.)). In *New Jersey v. T.L.O.*, the Supreme Court held that the Fourth Amendment applies to the conduct of public school officials, even when they are not law enforcement officers. 469 U.S. at 336-37. The Court also held that these officials need not secure a warrant before searching a student who is under their authority. *Id.* at 340. Applying this standard, the Court found that a search of a student's purse was reasonably based on a teacher's report that the student had been smoking in the school bathroom. *Id.* at 345-46. And in *O'Connor v. Ortega*, a plurality of the Court held that a public employee could

lawfully conduct a search of an employee's office, desk, or file cabinets for a work-related purpose. 480 U.S. at 722. The lawfulness of a warrantless public employer search depends on whether the inception and the scope of the intrusion is reasonable. *Id.* at 726. Rather than deciding whether the search at issue meets this standard, the plurality in *O'Connor* remanded for the district court to do so. *Id.* at 726-29.[4]

Critically, while setting forth general parameters, neither *T.L.O.* nor *O'Connor* found a search under facts similar to those presently before the Court to be unreasonable and, therefore, unlawful. The Supreme Court has warned against reliance on cases with a "high level of generality" to establish a constitutional right. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'"). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "In the Fourth Amendment context," whether a right is clearly established "'depends very much on the facts of each case,' and the precedents must 'squarely govern' the present case." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015)).

In *Kerns v. Bader*, the Tenth Circuit instructed that "[t]he relevant question the district court needed to address, thus, wasn't whether we all have some general privacy interest in our homes (of course we do)." 663 F.3d at 1183. Instead, "the district court needed to address the officers' claim that exigent circumstances existed (based on a belief that someone who had just

---

[4] ""In a published opinion, the Tenth Circuit adopted the plurality's standard. *Narotzky*, 610 F.3d at 567.

shot down a police helicopter might be hiding in or near the home) and their claim that their intrusion was justified in part because of the consent [a resident] supplied (at least after the incursion was first made)." *Id.* Here, the right at issue is more specifically defined as the right to be free of workplace searches based solely on an anonymous note.

The fact that Plaintiff has identified no cases more specific than *T.L.O.* and *O'Connor* would constitute sufficient grounds on its own to grant the State Defendants' motion. It is a "well-settled rule that the *plaintiff* bears the burden of citing to us what he thinks constitutes clearly established law." *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015) (internal quotation marks and alterations omitted; emphasis in original). Furthermore, the cases so cited must clearly establish that "*the scope of the right encompasses the facts presented*." *Id.* at 1012 (internal quotation marks omitted; emphasis in original). Plaintiff here has failed to identify controlling cases clearly establishing that workplace searches based on anonymous tips are unreasonable. Nonetheless, the Court takes "the additional step of surveying the caselaw extant at the time of the arrest that *would* have guided [defendants'] endeavors to conform [their] conduct to constitutional norms." *A.M. v. Holmes*, 830 F.3d 1123, 1154 (10th Cir. 2016) (internal quotation marks and alterations omitted).

"In order for a law to be clearly established, there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (internal quotation marks omitted). If no controlling authority is on point, Plaintiff must identify "a robust consensus of cases of persuasive authority." *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014) (internal quotation marks omitted). "Plaintiff does not need to find a case with an identical factual situation." *Id.* But the correspondence between settled law

and the present case must be "substantial." *Quinn*, 780 F.3d at 1014. Here, the State Defendants represent that they have been unable to find "factually analogous" Tenth Circuit cases. Doc. 16 at 13. After "surveying the caselaw," *cf. Holmes*, 830 F.3d at 1154, the Court agrees. No Supreme Court or Tenth Circuit decision has answered the question of whether a workplace search is justified at its inception based on an anonymous tip. And there is no "robust consensus of cases of persuasive authority." *Cf. Plumhoff*, 572 U.S. at 780.

As discussed, the relevant authority from the Supreme Court establishes the Fourth Amendment right in the context of workplace searches at a high level of generality. The Court in *O'Connor v. Ortega*, which first established that a "reasonableness" standard governs these searches, specifically declined to decide whether the search in question in that case was reasonable. 480 U.S. at 726-29. The Supreme Court has never applied the workplace-search rule in the context of anonymous tips. And the case law in the regional circuits is at odds.

*Wiley v. Department of Justice*, a case out of the Federal Circuit, most closely supports Plaintiff's position. 328 F.3d 1346 (Fed. Cir. 2003). The Federal Circuit held that a public employer violated the Fourth Amendment when it searched an employee's car and the search was justified only by "a tip provided by an anonymous informant who gave Wiley's name and place of employment, and alleged that Wiley kept a 9 mm gun in his car and that several unidentified employees had seen the gun." *Id.* at 1355. To answer the Fourth Amendment question in the workplace search context, the Federal Circuit turned to the body of law governing anonymous tips in the criminal-law context. It characterized *O'Connor v. Ortega* as having held that a public employer must show "reasonable suspicion" to justify a workplace search. *Id.* at 1349; *see also id.* at 1350-51. The court then turned to the body of case law, starting with *Terry v. Ohio*, 392 U.S. 1 (1968), that developed the "reasonable suspicion" standard in the criminal

investigatory context. *Id.* at 1353-54. In the criminal investigatory context, "[a]n anonymous tip in particular raises special concerns as to how to establish the veracity, reliability, and basis of knowledge of the hearsay information alleged in the tip." *Id.* at 1354. Therefore, the Federal Circuit reasoned, anonymous tips must be "sufficient[ly] corroborated" before government officials may act on them. *Id.* In other words, an anonymous tip *on its own* is never enough. *Id.* at 1355 n.3 ("the allegations in an anonymous tip must be corroborated by sources *extrinsic* to the tip"). Because the employer in that case had done nothing to externally corroborate the tip, the Federal Circuit found the search to be unjustified at its inception. *Id.* at 1355-56.[5]

’“””“”’The opinion the Ninth Circuit issued in *Ortega v. O'Connor* after the Supreme Court remanded the case also lends support to *Wiley*. There, the Ninth Circuit, like the Federal Circuit, concluded that criminal reasonable-suspicion case law applies to workplace searches. *Ortega v. O'Connor*, 146 F.3d 1149, 1157-58 (9th Cir. 1998). In doing so, the Ninth Circuit found that *Terry* itself formed the basis for the relevant law. *Id*. Judge Reinhardt reasoned that "[t]he *Terry* rule was adopted with specific reference to police officers' 'stops' of persons suspected of crimes, but the Supreme Court has explained that the rule has long been thought to embody essentially the 'irreducible' minimum required for *all* warrantless searches covered by the Fourth Amendment." *Id.* at 1158 n.12.[6]

---

[5] Judge Prost rejected this view and dissented. In Judge Prost's view, criminal law precedent related to whether an anonymous tip can establish reasonable suspicion should not have applied to this workplace search. *Wiley*, 328 F.3d at 1358. Further, Judge Prost opined that an anonymous tip need not predict future behavior to be reliable. *Id*. An anonymous tip can be corroborated through information within the tip that shows familiarity with an employee's affairs and demonstrates "inside knowledge". *Id*.

[6] Judge Reinhardt in *Ortega*, however, placed heavy emphasis on the fact that, rather than simply looking for a specific item in the employee's office, the employer conducted a general search of the office, to include reading personal letters and mementos. These items "rest at the core of the right to privacy and 'enjoy[] the highest status under our law' . . . ." *Ortega*, 146 F.3d at 1163 (quoting *Nixon v. Administrator of General Servs.*, 433 U.S. 425, 530 (1977)). In the present

But other circuit court decisions have not adopted the analysis of the Federal Circuit and Ninth Circuit. In *Shields v. Burge*, the Seventh Circuit granted qualified immunity to employers who instigated a search based on an anonymous report of misconduct. 874 F.2d 1201, 1204 (7th Cir. 1989). "The record contain[ed] nothing concerning the tip's nature, the informant's reliability, the extent to which the tip was corroborated, or any other facts that might have" corroborated the tip. *Id.* Nonetheless, the Seventh Circuit held that qualified immunity was appropriate, in part because existing "cases either involved criminal investigations or were otherwise distinguishable from cases involving only work-related searches." *Id.* at 1206.

Eight years later, in *Gossmeyer v. McDonald*, the Seventh Circuit again held an anonymous tip sufficient to justify a workplace search. 128 F.3d 481, 491 (7th Cir. 1997). There, the court found that the tip at issue "showed sufficient signs of reliability." *Id.* Specifically, "[t]he informant identified herself as one of [plaintiff]'s co-workers in the [] office; made serious and specific allegations of misconduct . . . and stated where th[e evidence] could be found . . . ." *Id.* In other words, the *Gossmeyer* court determined an anonymous tip with indicia of reliability, but no external corroboration, could justify a workplace search. The *Gossmeyer* court reached this decision without analogizing to criminal reasonable-suspicion law.

Not long thereafter, the Second Circuit followed suit and held that an anonymous letter describing workplace misconduct sufficiently justified a warrantless workplace search. *Leventhal v. Knapek*, 266 F.3d 64, 75 (2d Cir. 2001). Similar to the Seventh Circuit in *Gossmeyer*, the Second Circuit found that the allegations in the anonymous letter were "specific" enough to constitute "reasonable grounds to believe that the searches would uncover evidence of

---

case, the employer is alleged to have specifically searched for the allegedly stolen pills referenced in the anonymous letter. Thus, even if *Ortega* were controlling precedent, its facts might not clearly establish that the search in the present case was unlawful.

misconduct." *Id.* at 75. Like the Seventh Circuit, the Second Circuit also did so without analogizing to criminal reasonable-suspicion law or requiring external corroboration.

In any event, it is not "clearly established" in the Tenth Circuit or the Supreme Court, unlike in the Federal Circuit and the Ninth Circuit, that the concept of reasonable suspicion should be imported from the criminal-law context into the context of workplace searches. The Supreme Court's *O'Connor* opinion never used the phrase "reasonable suspicion." Its lone citation to *Terry* came in the middle of a quote from another opinion—*New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)—while the Supreme Court was describing the general requirement that searches must be justified at their inception in order to be reasonable under the Fourth Amendment. *See O'Connor*, 480 U.S. at 726 (plurality op.). The Court disagrees that this citation-within-a-citation clearly establishes that all criminal-law-enforcement rules should be imported into the workplace search context, including rules regarding anonymous tips developed after *O'Connor* was decided. In *TLO*, regarding school searches, the Supreme Court cited the criminal case of *Hill v. California* in support of its analysis. 469 U.S. at 346. Yet, the *O'Connor* plurality took great pains to distinguish workplace searches from the criminal law enforcement context and the requirement of probable cause. 480 U.S. at 724-25. And the Supreme Court has rejected the "irreducible minimum" analysis that Judge Reinhardt relied on when he issued his opinion in *Ortega*. As the Supreme Court explained elsewhere, there is no one-size-fits-all test for the Fourth Amendment: "neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance." *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989); *see also Maryland v. King*, 569 U.S. 435, 447 (2013) ("the Fourth Amendment imposes no irreducible requirement of such suspicion" (internal quotation marks omitted)).

Likewise, the Tenth Circuit has affirmed that the reasonableness standard that applies in a non-criminal context is sometimes less than the reasonableness standard that applies in criminal investigations. In *Leatherwood v. Welker*, the Tenth Circuit acknowledged that "[g]enerally, anonymous tips must be corroborated and bear 'sufficient indicia of reliability' to support reasonable suspicion" in the criminal investigatory context. 757 F.3d 1115, 1121 (10th Cir. 2014) (citing *Florida v. J.L.*, 529 U.S. 266, 270 (2000)). Probation searches, however, "may be premised on less reliable information than that required in other contexts." *Id.* Hearsay information from an unidentified third party, that is uncorroborated, and asserts only the "possible existence of a violation" can establish reasonableness under the Fourth Amendment for probation-violation purposes. *Id.* (citing *Griffin*, 483 U.S. at 879); *see also Pierce v. Smith*, 117 F.3d 866, 880 (5th Cir. 1997) (rejecting application of the *Terry* reasonable-suspicion analysis in the school-search context, under a standard analogous to that governing workplace searches).

This review of case law from various circuit courts demonstrates that no consensus exists regarding exactly what the Supreme Court meant when it stated that searches such as those that occurred in this case must have "reasonable" justification. More significantly, a review of this mixed case law guidance demonstrates that no reasonable state employees in the position of the State Defendants would be on clear notice that their actions would violate Plaintiff's Fourth Amendment rights. The anonymous note, although written in extremely poor English, was very specific: it accused Plaintiff of storing "a lot of" patient medication, including narcotics, and hundreds of dollars of cash in his desk. FAC ¶ 20. It explained who Plaintiff is and why he would have access to such medication. *Id.*[7] The State Defendants' interest in investigating

---

[7] In addition, the anonymous note stated that narcotics and cash were "locked away" in the desk. FAC at 6 ¶ 20. While the fact that Plaintiff had his own lock on the desk arguably increases his

allegations of narcotics trafficking on their property is extremely strong. No "clearly established weight of authority" in the Tenth Circuit or other circuits provided notice that the anonymous tip in this case failed to provide reasonable justification for the searches at issue.[8]

B.   <u>Plaintiff's complaint does not contain sufficient allegations to defeat the State Defendants' assertion of qualified immunity with respect to the First Amendment claim.</u>

The State Defendants also move for qualified immunity on Plaintiff's claim of First Amendment retaliation. Doc. 16 at 14-17. As clarified in his response to the motion to dismiss, Plaintiff's First Amendment claim relates to two types of protected activity: freedom of speech and freedom of association. The Court analyzes each in turn.

1.   <u>Freedom of Speech</u>

"To recover under a First Amendment retaliation claim, [Plaintiff] must establish that (1) []he was engaged in constitutionally protected activity, (2) the defendant's actions caused h[im] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) the defendant's actions were substantially motivated as a response to h[is] protected conduct." *McBeth v. Himes*, 598 F.3d 708, 717 (10th Cir. 2010) (internal quotation marks and original alterations omitted). Defendant moves to dismiss on the basis that Plaintiff's activity was not constitutionally protected. Doc. 16 at 15-16.[9]

---

expectation of privacy in his desk drawer, it also arguably provided independent confirmation of the truth of the note's allegations.

[8] Because the Court determines that no Fourth Amendment violation was clearly established, it need not address the State Defendants' contention that Plaintiff has failed to establish a basis for supervisory liability against Defendant Dominguez. Doc. 16 at 13.

[9] Plaintiff criticizes Defendants for failing to perform an in-depth analysis of qualified immunity law as it relates to the third prong—Defendants' subjective motive. Doc. 23 at 12-13. The quality of Defendants' briefing on the third prong, however, is only relevant if Plaintiff clears the first and second prong.

The First Amendment balances a government employees' right to freedom of speech against a government employer's interest in regulating civil service. "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "At the same time, . . . [t]he First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Id.* at 419. Which side of this balancing test a particular claim falls on depends on a five-step inquiry: "(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009).

Plaintiff alleges that he was retaliated against for his speech. FAC at 20-21 ¶¶ 47-50. According to the FAC, Plaintiff "had spoken out over mismanagement at NMBHI, including but not necessarily limited to employee misbehavior and misclassification of residents/patients." *Id.* at 20 ¶ 47. "The widespread misclassification of NMBHI residents/patients caused people who could not independently function to be assigned to the unit that Plaintiff oversaw." *Id.* at 20 ¶ 48. Plaintiff's "unit was not designed to house people who could not, for example, manage their own money or take their own medication," and "[t]hese failings were compounded by the lack of medical staff in the unit in which Plaintiff worked." *Id.* at 21 ¶¶ 49-50.

The State Defendants argue that this speech was not "on a matter of public concern." Doc. 16 at 15-16. The Court agrees that, at the very least, Plaintiff has failed to cite clearly established law demonstrating that these cursory allegations in the FAC are sufficient to defeat Defendants' assertion of qualified immunity. The sole case cited by Plaintiff establishes that criticisms of his employer are "grievances of a purely personal nature." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007) (cited by Doc. 23 at 12). *Brammer-Hoelter* held that "Plaintiffs' complaints about staffing levels, including a lack of aides, inherently relate to the amount of work Plaintiffs had to perform individually, and so they are matters of personal, rather than public concern." *Id.* at 1206. Although the FAC is not clear, it appears that Plaintiff complained about the mismanagement of his own unit—that is, how it affected his own job—and how the problem was compounded by "staffing levels." FAC at 20-21 ¶¶ 47-50. Again, in defeating the assertion of qualified immunity, Plaintiff's burden is to cite cases that place his speech within the parameters of clearly established law.

It is also Plaintiff's burden to include in his complaint sufficient factual matter which "nudges his claims across the line from conceivable to plausible in order to survive a motion to dismiss." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotation marks and alterations omitted). The descriptions of Plaintiff's speech in the FAC are not sufficient to enable the Court to determine to what extent Plaintiff was complaining about his own employment conditions, and to what extent Plaintiff was speaking for those who cannot speak for themselves due to neglect and mismanagement at a public institution. The Court thus finds that Plaintiff has not satisfied any of his burdens in defeating Defendants' assertion of qualified immunity.

2.      Freedom of Association

Plaintiff also argues that he has stated a claim for "retaliation as a result of his exercise of his right to associate with Patricia J. Vigil, Plaintiff's long-time partner." Doc. 23 at 13. In the FAC, Plaintiff alleges that the State Defendants "were aware that Plaintiff had exercised his First Amendment protected right of speech and association in support of Patricia J. Vigil throughout the course of her lawsuit against NMBHI" and that they caused "criminal charges to be brought against Plaintiff in retaliation for Plaintiff speaking out in support of Ms. Vigil's claims, being present and associating with Ms. Vigil at various hearings and conferences in Ms. Vigil's case." FAC at 20 ¶¶ 43, 45.

In *Roberts v. United States Jaycees*, the Supreme Court distinguished the freedom of "intimate association," which the Court determined is protected "as a fundamental element of personal liberty," from the freedom of "expressive association," which the Court determined is protected by the First Amendment. 468 U.S. 609, 617-18 (1984). Plaintiff appears to claim that the State Defendants retaliated against him based on both his "intimate relationship" and his First Amendment association. Doc. 23 at 13 (acknowledging the existence of two different theories); *id.* at 14 ("seeking to fire, prosecute, and otherwise harm Plaintiff's livelihood and life in retaliation for his intimate association with his partner is unconstitutional"); *id.* at 15 (Plaintiff's presences at hearings and conferences to support Ms. Vigil in her lawsuit "is actionable under the First Amendments protections over freedom of association").

Plaintiff cannot prevail on either theory. Regarding Plaintiff's First Amendment freedom of association theory, "[t]here is no generalized right of free association." *Dillon v. Twin Peaks Charter Acad.*, 406 F. App'x 253, 259 (10th Cir. 2010). Courts only "recognize[] a right to associate for the purpose of engaging in those activities protected by the First Amendment— speech, assembly, petition for the redress of grievances, and the exercise of religion." *U.S.*

*Jaycees*, 468 U.S. at 618; *see also Dillon*, 406 F. App'x at 259 (the Supreme Court has "limited the protection of association to situations involving intimate relationships or furthering another right under the constitution, such as free speech"). Plaintiff admits that "the Hospital Defendants are correct that 'the allegation in the complaint that Mr. Vigil was merely present at hearings and conferences to support Patricia Vigil does not as a matter of law constitute speech on a matter of public concern.'" Doc. 23 at 14 (citation omitted). Thus, Plaintiff essentially concedes that this particular "freedom of association" claim does not implicate "another constitutional right" such as free speech. Nor does Plaintiff argue that it implicates any other First Amendment right. Essentially, he claims a "generalized right of 'social association.'" *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). There is no such right. *See id.*

With respect to Plaintiff's "intimate association" retaliation claim, the State Defendants argue that no clearly established law defines this right at a sufficient level of particularity. Doc. 26 at 11. Plaintiff relies on a Second Circuit case which holds that "a retaliatory discharge based solely on litigation instituted by one's spouse is actionable under the First Amendment." *Adler v. Pataki*, 185 F.3d 35, 45 (2d Cir. 1999) (cited in Doc. 23 at 14).[10] *Adler* surveyed the case law as it stood in 1999 and found many unanswered questions about the right to intimate association. It explained that "[t]he source of the intimate association right has not been authoritatively determined" as between the Fourteenth Amendment and the First Amendment. *Id.* at 42. And "[j]ust as the source of a right of intimate association has varied, so has the standard applied in

_____

[10] Plaintiff cites many other cases, but none of them are from federal circuit courts of appeals. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (district courts do not make precedent, and many courts of appeals therefore decline to consider district court decisions when determining if constitutional rights are clearly established for the purposes of defeating qualified immunity); *see also Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) ("The law is clearly established when a Supreme Court or Tenth Circuit precedent is on point or the alleged right is clearly established from case law *in other circuits*." (emphasis added)).

determining whether that right has been violated." *Id.* at 43. "Sometimes court opinions suggest that an intimate association right is not violated unless the challenged action has the likely effect of ending the protected relationship, or unless affecting the relationship was the purpose of the challenged regulation." *Id.* (citations omitted). "In other cases, the opinions consider whether the challenged action alleged to burden an intimate association is arbitrary or an undue intrusion by the state into the marriage relationship." *Id.* at 43-44 (internal quotation marks omitted). Without answering any of these questions, *Adler* concluded with no further analysis that a claim "that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association." *Id.* at 44.

The Tenth Circuit has never adopted such a rule. Instead, in *Trujillo v. Board of County Commissioners of the County of Santa Fe*, it held that "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983." 768 F.2d 1186, 1190 (10th Cir. 1985); *see Bryson v. City of Edmond*, 905 F.2d 1386, 1394 (10th Cir. 1990) ("Nowhere in the complaint is there an allegation that any claimed acts or omissions, however intentional, occurred with the specific intent on the part of the defendants to deprive the plaintiffs of their rights of association with the victims."). Nor is it the only circuit to insist on specific intent. *See Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 433 (7th Cir. 2010) (plaintiff's "claim cannot survive summary judgment because she has failed to provide any evidence that the defendants refused to hire her *because of* her marriage to" her husband).

In sum, *Adler* is not sufficient to clearly establish a general right under the First Amendment to be free of retaliation based upon the conduct of a family member. *Cf. Gaines v.*

*Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) (finding this right is not clearly established in the Eleventh Circuit). Instead, the law in the Tenth Circuit establishes that "[t]he alleged conduct by the State . . . will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right." *Trujillo*, 768 F.2d at 1190. Plaintiff's complaint does not contain any facts plausibly alleging that the State Defendants acted with the specific intent to interfere in his relationship with Ms. Vigil. It never alleges, for example, that the State Defendants retaliated against Plaintiff because he is cohabitating with someone to whom he is not married, or that the State Defendants took the actions at issue in this case with the aim of separating Plaintiff and Ms. Vigil. Therefore, the Court must dismiss Plaintiff's First Amendment claim on the basis of qualified immunity.[11]

## II.      Plaintiff Does Not State A Claim Under The New Mexico Tort Claims Act.

The State Defendants also move the Court to dismiss the claims against them arising under state law. Congress established supplemental jurisdiction over state law claims through 28 U.S.C. § 1367. That law provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The last sentence of § 1367(a) permits "pendent party" jurisdiction, under which a district court obtains jurisdiction "over claims involving parties who were not already parties to a claim independently within the court's subject matter jurisdiction." *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 539-40 (2002). Because the Court is dismissing the federal claims

---

[11] Because the Court concludes that the FAC does not establish the requisite specific intent, it does not reach the State Defendants' arguments that only formal marriages are constitutionally protected.

against the State Defendants, the only basis on which to exercise jurisdiction over the state-law claims are the remaining federal claims against the County Defendants, who have not filed a motion to dismiss.

To determine whether supplemental jurisdiction over claims or parties is proper, the court asks whether "[t]he state and federal claims . . . derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). No party has briefed the issue, but the Court assumes this test is satisfied here, where the same series of searches and seizures constitute the basis of the state-law claims against the State Defendants and the federal claims against the County Defendants.

The State Defendants moved to dismiss on the basis of sovereign immunity. Doc. 16 at 4-5. Plaintiff argues that the State has waived its immunity from suit under the New Mexico Tort Claims Act ("NMTCA"). Plaintiff relies on the following provision in the NMTCA:

> [I]mmunity . . . does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities.

NMSA § 41-4-9. Plaintiff argues this waiver subjects the State Defendants to suit "'to the extent that [they] operate a mental institution or clinic, are negligent in such operation, and that negligence causes damages.'" Doc. 23 at 4 (quoting *Armijo v. Dep't of Health & Env't*, 1989-NMCA-043, ¶ 11, 108 N.M. 616).

In their response, the State Defendants argue that Plaintiff's reliance on a "medical services" waiver is inapposite because Plaintiff received no medical services from the State Defendants. Doc. 26 at 2-3.[12] State Defendants cite no case law in support of this proposition.

---

[12] The State Defendants also fault Plaintiff for failing to cite NMSA § 41-4-9 in the FAC. Doc. 26 at 2. "It is not necessary that a complaint [identify a Tort Claims Act provision waiving

Further, the text of the statute does not limit the waiver to the "provision of medical services," but applies much more broadly to any "operation" of a hospital. NMSA § 41-4-9. On the other hand, the New Mexico Court of Appeals has indicated that "the word 'operation'" is to be interpreted "narrowly," unlike the word "maintenance," which "has an expansive definition." *Armijo*, 1989-NMCA-043, ¶¶ 8-9. The parties have not cited, and the Court has not found, any New Mexico case discussing whether hospital employees acting within the scope of their duty engage in the "operation" of the facility when participating in a search, seizure, and prosecution of an employee related to items found on the premises.

The Court need not resolve this question, however, as the State Defendants' motion to dismiss the state law claims may be resolved on narrower grounds. Even if New Mexico would recognize an "operation" waiver, the FAC here contains no facts plausibly alleging that State Defendants were engaged in the "operation" of the hospital when they conducted the search and seizures at issue, or that any operational-level negligence led to the conduct at issue. *Cf. Leithead v. City of Santa Fe*, 1997-NMCA-041, ¶ 12, 123 N.M. 353, 356-57 (failure by a public swimming pool to provide an adequate number of lifeguards was "negligent operation" that "created a condition on the premises that was dangerous to [plaintiff] and the general public"). In fact, some of Plaintiff's allegations indicate that State Defendants did not conduct the search in connection with their operation of the hospital. FAC at 8 ¶ 32 (NMBHI had no policy in place that diminished plaintiff's expectation of privacy and the searches without plaintiff's consent were "far from being part of an established administrative practice").

immunity]; sovereign immunity is a defense available to a government defendant, and the lack of such immunity is not an element of a claim that must be pled to survive a motion to dismiss." *Loya v. Presbyterian Health Care Servs., Inc.*, No. 00-1773 BB/DJS, 2001 WL 37124838, at *6 n.4 (D.N.M. Sept. 17, 2001).

The FAC therefore fails to demonstrate the existence of a waiver under NMSA § 41-4-9.[13] The State Defendants are entitled to sovereign immunity from Plaintiff's state-law claims, and the Court therefore lacks subject-matter jurisdiction over those claims.

## CONCLUSION

The Motion to Dismiss filed by Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez and the New Mexico Department of Health (Doc. 16) is GRANTED.  The claims against Defendants Frances Tweed, Antonio Coca, Joe Chavez, Corrine Dominguez, and the New Mexico Department of Health in Plaintiff's First Amended Complaint are DISMISSED without prejudice.

Plaintiff will have thirty days to move to amend his complaint to the extent that he is able to do so consistent with this opinion. Should Plaintiff move to amend his complaint, the proposed second amended complaint must be attached to the motion in compliance with D.N.M.LR-Civ. 15.1.

SO ORDERED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent

---

[13] As the Court grants the State Defendants' motion in full, it need not reach the argument that Plaintiff is collaterally estopped from bringing suit. Doc. 16 at 17-19.