**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JOHN VIGIL,**

        **Plaintiff,**

**vs.**                               **No. D-412-CV-2018-00263**

**FRANCES TWEED, in her individual capacity,**

**CORRINE DOMINGUEZ, in her individual capacity,**

**ANTONIO COCA, in his individual capacity,**

**JOE CHAVEZ, in his individual capacity,**

**NEW MEXICO BEHAVIORAL HEALTH INSTITUTE, a political subdivision of the NEW MEXICO DEPARTMENT OF HEALTH a division of the STATE OF NEW MEXICO,**

**DEPUTY SEAN ARMIJO, in his individual capacity as a deputy employed by the San Miguel County Sheriff's Office,**

**UNDERSHERIFF ANTHONY MADRID, in his individual capacity as a deputy employed by the San Miguel County Sheriff's Office,**

**DEPUTY ANTOINE WHITFIELD, in his individual capacity as a deputy employed by the San Miguel County Sheriff's Office, and**

**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SAN MIGUEL,**

        **Defendants.**

**SECOND AMENDED COMPLAINT
FOR VIOLATION OF CIVIL RIGHTS AND TORT CLAIMS**

Plaintiff John Vigil, by and through his attorneys of record, ROMERO & WINDER, P.C.

(Joe M. Romero, Jr.) and for his Second Amended Complaint for violation of his federally

protected civil rights, violations of his state-protected civil rights, and for torts committed against him, states:

## JURISDICTION AND VENUE

1.        Venue is proper in this Court pursuant to Defendant's removal of the action.

## PARTIES

2.        Plaintiff John Vigil is a resident of the State of New Mexico, County of San Miguel.

3.        Upon Information and belief, Defendant Frances Tweed is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Frances Tweed was acting as a de facto supervisor or under authority granted her by Plaintiff's supervisors at the New Mexico Behavioral Health Institute ("NMBHI"). At all times material to this Complaint, Defendant Frances Tweed was acting within the scope of her employment with State of New Mexico. Immunity for the tort claims alleged herein is waived by the New Mexico Tort Claims Act. Defendant Frances Tweed is sued herein in her individual capacity as an agent/employee of the State of New Mexico, Department of Health, at NMBHI.

4.        Upon Information and belief, Defendant Corrine Dominguez is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Corrine Dominguez was acting as Plaintiff's supervisor or under authority granted her by Plaintiff's supervisors at the New Mexico Behavioral Health Institute ("NMBHI'). At all times material to this Complaint, Defendant Corrine Dominguez was acting within the scope of her employment with State of New Mexico. Immunity for the tort claims alleged herein is waived by the New Mexico Tort Claims Act. Defendant Frances Tweed is sued herein in her individual capacity as an agent/employee of the State of New Mexico, Department of Health, at NMBHI.

5.      Upon Information and belief, Defendant Antonio Coca is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Antonio Coca was acting pursuant to authority granted to him by the State of New Mexico Dept of Health. At all times material to this Complaint, Defendant Antonio Coca was acting within the scope of his employment with State of New Mexico. Immunity for the tort claims alleged herein is waived by the New Mexico Tort Claims Act. Defendant Antonio Coca is sued herein in his individual capacity as an agent/employee of the State of New Mexico at NMBHI.

6.      Upon Information and belief, Defendant Joe Chavez is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Joe Chavez was acting pursuant to authority granted to him by the State of New Mexico Dept. of Health. At all times material to this Complaint, Defendant Joe Chavez was acting within the scope of his employment with State of New Mexico. Immunity for the tort claims alleged herein is waived by the New Mexico Tort Claims Act. Defendant Joe Chavez is sued herein in his individual capacity as an agent/employee of the State of New Mexico at NMBHI.

7.      Defendant NMBHI is a division of the New Mexico Department of Health ("NMDOH"), which is itself a division of the State of New Mexico and is a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-3(B) and (C). At all times material hereto, NMDOH was the employer of Defendants Frances Tweed, Antonio Coca, and Joe Chavez.

8.      Upon Information and belief, Defendant Sean Armijo is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Sean Armijo was an officer of the San Miguel County Sheriff's Office. As such, Defendant Sean Armijo was a law enforcement officer within the meaning of the New Mexico Tort Claims Act, NMSA 1978, §

3

41-4-3(D) and, consequently, immunity is waived for the actions complained of herein. At all times material to this Complaint, Defendant Sean Armijo was acting within the scope of his employment. Defendant Sean Armijo is sued herein in his individual capacity as an agent/employee of the San Miguel County Sheriff's Office.

9.      Upon Information and belief, Defendant Anthony Madrid is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Anthony Madrid was an officer and undersheriff of the San Miguel County Sheriff's Office. As such, Defendant Anthony Madrid was a law enforcement officer within the meaning of the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3(D) and, consequently, immunity is waived for the actions complained of herein. At all times material to this Complaint, Defendant Anthony Madrid was acting within the scope of his employment. Defendant Anthony Madrid is sued herein in his individual capacity as an agent/employee of the San Miguel County Sheriff's Office.

10.     Upon Information and belief, Defendant Antoine Whitfield is a citizen of the State of New Mexico, County of San Miguel. At times relevant to this Complaint, Defendant Antoine Whitfield was an officer of the San Miguel County Sheriff's Office. As such, Defendant Antoine Whitfield was a law enforcement officer within the meaning of the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3(D) and, consequently, immunity is waived for the actions complained of herein. At all times material to this Complaint, Defendant Antoine Whitfield was acting within the scope of his employment. Defendant Antoine Whitfield is sued herein in his individual capacity as an agent/employee of the San Miguel County Sheriff's Office.

11.     Defendant Board of County Commissioners of San Miguel County is an incorporated governmental entity, a body politic, and a political subdivision under the laws of the State of New Mexico. It is also a local governmental entity and local public body as those terms

4

are defined in the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-3(B) and (C). Pursuant to NMSA 1978, § 4-46-1, all suits against a county are to be brought in the name of the board of county commissioners of that county.

## FACTUAL BACKGROUND

12.    In June of 2012, Patricia J. Vigil brought suit against the New Mexico Behavioral Health Institute for discrimination and retaliation pursuant to the New Mexico Human Rights Act, for violations of the New Mexico Whistleblower Protection Act, and for violations of the New Mexico Fraud Against Taxpayers Act. *See, Vigil vs. New Mexico Behavioral Health Institute*, Case No. D-412-CV-2012-279.

13.    Patricia J. Vigil is Plaintiff's longtime domestic partner and this fact was well-known by the named Defendants in this action.

14.    The allegations in Ms. Vigil's lawsuit—many of which included graphic sexual misconduct—went back to 2010 and 2011.

15.    Throughout the course of Ms. Vigil's litigation, Plaintiff supported her. Plaintiff was present at hearings and conferences in his personal capacity in support of Ms. Vigil.

16.    Plaintiff's employers and supervisors including, but not necessarily limited to Defendants Frances Tweed, Antonio Coca, and Joe Chavez were angered by Plaintiff's support of Ms. Vigil throughout her litigation against NMBHI.

17.    Upon information and belief, after Ms. Vigil's lawsuit was settled for a substantial sum, Defendants and others sought to retaliate against Plaintiff for his support of his partner.

18.    Specifically, on May 29, 2015, Plaintiff's superiors at the NMBHI, a state hospital, fabricated a typed letter alleging that Plaintiff had narcotics stored in his desk.

19.     The fabricated note stated: "I was told and everybody knows that supervisor john vigil has a lot of bottels of the patientes meds in his desk, and some are ativans and narcotics locked away. Also hundreds of dollars of there money to. John vigil is the psych tech supervisor at the arches. We will send to HR patient avocate and Investegations. You cannot tell him how you found out cuase he will know who send this letter."

20.     Five days later, three NMBHI employees—Defendants Frances Tweed, Antonio Coca, and Joe Chavez—conducted a search of Plaintiff's desk.

21.     At the time of the search, Defendants Frances Tweed, Antonio Coca, and Joe Chavez knew that Plaintiff was on vacation and would not be present.

22.     Prior to manufacturing the purported anonymous note Defendants Frances Tweed, Antonio Coca, and/or Joe Chavez used a key to access Plaintiff's locked office and accessed Plaintiff's locked desk cabinet because there "was enough play in the cabinet doors" to allow a single tablet of Clonazepam inside the cabinet.

23.     Defendants Frances Tweed, Antonio Coca, and Joe Chavez then searched Plaintiff's desk as a result of the fabricated note—knowing that they would find the Clonazepam that they had planted therein.

24.     During their search, Defendants Frances Tweed, Antonio Coca, and/or Joe Chavez found and photographed various items within the desk, some of which they moved, removed, or examined, and then Mr. Chavez placed a new lock on the desk.

25.     At the time of the aforementioned unlawful search, Defendant Corrine Dominguez was Plaintiff's supervisor. Upon information and belief, Defendant Corrine Dominguez consented to and/or authorized and/or agreed to the unlawful search of private areas of Plaintiffs workspace based upon the fabricated note.

26.     Two days later, at approximately 10:00am on June 5, 2015, Joe Chavez made contact with Deputy Sean Armijo of the San Miguel Sheriff's Department, claiming a possible narcotics larceny had occurred. Mr. Chavez gave Deputy Armijo a copy of the fabricated letter.

27.     Deputy Armijo obtained statements from both Mr. Chavez and Frances Tweed, and consequently learned that they had entered Plaintiff's secure office, cut off the lock he had on his desk, conducted a search, and placed a new lock on the desk. Mr. Chavez provided Deputy Armijo with pictures that had been taken in the course of the initial search.

28.     On the basis of the above information, Deputy Armijo and Undersheriff Anthony Madrid obtained and executed a search warrant on Plaintiff's desk. In order to enable their search, Joe Chavez removed the lock he had placed on the desk after cutting Plaintiff's own lock off.

29.     When their search concluded, the officers submitted a "Return and Inventory" claiming that all the items in the desk had been "found by Under Sheriff Anthony Madrid."

30.     These documents deliberately omitted any mention of the previous warrantless search or the individuals who had conducted it to disguise the use of the fabricated note to discover planted evidence previously.

31.     About two weeks after deputies conducted their search on Plaintiff's desk, Frances Tweed claimed to receive a second typed anonymous note.

32.     The second note was also fabricated to incriminate Plaintiff.

33.     The second fabricated note stated: "John paul vigil has 2 lokers in mesa an el paso unit 1 in mesa has a combination and 1 in el pasao has a yellow lock. I no the 1 in el paso has pills. He uses."

34.     After claiming to receive this purported anonymous note, Frances Tweed and other NMBHI employees conducted searches on Plaintiffs lockers in both El Paso and Mesa Cottages while Plaintiff was not present. Once again, they cut the locks off in order to perform their searches.

35.     The fabricated notes served as a pretext to conduct a search.

36.     The fabricated notes were not genuine.

37.     The searches perpetrated by Defendants Frances Tweed, Antonio Coca, and/or Joe Chavez were conducted pursuant to the NMBHI's longstanding though unwritten policy of retaliating against people who filed suit against NMBHI, like Plaintiff's longtime partner, or who supported those individuals, as Plaintiff did.

38.     The searches conducted by NMBHI employees, including Defendants Frances Tweed, Corrine Dominguez, and Antonio Coca were carried out in connection with their operation of NMBHI.

39.     On June 19, 2015, Frances Tweed contacted Undersheriff Madrid to claim that she had received another anonymous letter—this time regarding Plaintiffs personal lockers.

40.     Undersheriff Madrid arrived at the scene at approximately 11:00 a.m., and Ms. Tweed took him to Plaintiff's locker in Mesa Cottage.

41.     Defendant Tweed informed Undersheriff Madrid that the lock had been cut off and a search already performed. She itemized the pills allegedly found in the locker during her first search, claiming that she had "researched" them and identified them as narcotics.

42.     Undersheriff Madrid and Deputy Antoine Whitfield obtained a second search warrant on June 26, 2015, and executed it the same day—a week after Undersheriff Madrid investigated Plaintiff's cut-open locker with Frances Tweed. During this third examination of Plaintiff's locker, the second by law enforcement, Undersheriff Madrid seized several items.

8

43.     Undersheriff Madrid then submitted a "Return and Inventory" for the items seized, stating that he had executed a search of the locker pursuant to the June 5, 2015 search warrant— though that warrant was specifically for Plaintiff's desk in another building, and had been executed the same day it was issued.

44.     On July 8, 2015, Undersheriff Madrid submitted an affidavit for Plaintiff's arrest. This affidavit lists the items found during the searches of Plaintiff's lockers and desk, but deliberately omitted the warrantless, pretextual search of Plaintiff's desk in which the planted Clonazepam was found.

45.     Although NMBHI, as his government employer, did not have a written policy in place that diminished Plaintiff's expectation of privacy or alerted him to the possibility that it would conduct unconsented searches while he was not present, Plaintiff has determined through the litigation of his State Personnel Office claim that the behavior of the NMBHI Defendants was perpetrated pursuant to their custom of retaliating against anyone who angered them by, for example, making a discrimination claim against NMBHI employees or supporting people who made such claims.

46.     According to the June 5, 2015 Affidavit for Search Warrant, the grounds for the deputies' search of Plaintiff's desk were:

   a.   an anonymous note, written by a person who apparently remains unidentified;

   b.   the statements of Joe Chavez and Frances Tweed as to what they had discovered in their previous illegal search;

   c.   pictures of items retrieved in the previous illegal search; and

   d.   Mr. Chavez's and Ms. Tweed's statements purporting to identify items discovered in said search as narcotics.

47.     When Deputy Armijo sought a search warrant for the desk, he was fully aware of the NMBHI search and chose to use information obtained from it. Without the fruits of that initial search, the only basis for the June 5, 2015 search warrant was a typed anonymous note.

48.     Deputy Armijo did not conduct the minimal investigation needed to discover that the note was fabricated.

49.     When Undersheriff Madrid responded to NMBHI on June 19, 2015, he too was aware that NMBHI had conducted repeated warrantless searches of Plaintiff's belongings. Undersheriff Madrid expressly admitted that he was able to view Plaintiff's locker in Mesa Cottage only because NMBHI employees had forcibly removed Plaintiff's personal lock.

50.     Undersheriff Madrid did not conduct the minimal investigation needed to discover that the note was fabricated.

51.     According to the Affidavit for Search Warrant that Undersheriff Madrid signed on June 26, 2015, a week after he first viewed Plaintiff's locker with Frances Tweed, the grounds for the second search warrant were:

      a.  the previous law enforcement search on June 5, 2015;

      b.  the second anonymous note;

      c.  Frances Tweed's representation that Plaintiff's locker contained pills, which was based on NMBHI's search of the locker;

      d.  Ms. Tweed's representation that "she had researched the pill's descriptors and found it to be Hydrocodone"; and

      e.  Undersheriff Madrid's warrantless investigation of Plaintiff's cut-open locker on June 19, 2015. Without the fruits of NMBHI's prior searches—including their removal of Plaintiff's lock, which allowed Undersheriff Madrid to view Plaintiff's locker without a warrant on June 19, 2015—the only basis for the second search warrant was the typed, fabricated, purportedly anonymous note.

52.     On November 6, 2015, Plaintiff was charged with felony Possession of a Controlled Substance; Misdemeanor Possession of a Controlled Substance; and a second felony alleging that he sold or possessed Dangerous Drugs.

53.     The Hydrocodone that Plaintiff was charged with possessing was prescribed to Plaintiff by his physician.

54.     Despite knowing that the Hydrocodone was lawfully prescribed to Plaintiff, Deputy Armijo and Undersheriff Madrid pressed charges against Plaintiff.

55.     Plaintiff was forced to defend himself against the unsupported charges. In so doing, he incurred substantial attorney's fees, lost wages, suffered emotional distress (of the type and sort that anyone in Plaintiff's situation would be expected to endure rather than of a specific, diagnosable nature) as a result of the fear and apprehension that Defendants' actions caused Plaintiff.

56.     Ultimately, Plaintiff was acquitted of two of the three charges at trial. The third charge was dismissed. Plaintiff was not convicted of any crime as a result of the allegations leveled against him by and/or because of Defendants.

57.     This suit is not barred as a collateral attack on a conviction.

## COUNT I: UNLAWFUL SEARCH AND SEIZURE (United States Constitution) (against Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and Deputy Antoine Whitfield )

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

58.     The Fourth Amendment to the United States Constitution provides citizens protections against unreasonable searches and seizures. U.S. Const., amend. IV.

59.     Under precedent existing at the time of the search that is the subject of this lawsuit, Plaintiff had a clearly established right to a reasonable expectation that evidence of a crime would not be planted in the private areas of his desk, lockers, and office.

60.     A reasonable jury can find that planting evidence, fabricating evidence, and otherwise fabricating claims that Plaintiff broke the law as well as the decision to forward that information to a prosecutor's office violated Plaintiff's rights.

61.     Defendants are not entitled to qualified immunity in this case.

62.     Defendants' searches of Plaintiff's desk and lockers violated his rights under the Fourth Amendment.

63.     Defendant's wrongful acts proximately caused Plaintiff to suffer damages in an amount to be proven at trial.

64.     Defendants acted maliciously, willfully, intentionally, deliberately, and with intent to cause harm and did, in fact, cause harm to Plaintiff.

65.     The assessment of punitive damages against Defendants is also therefore appropriate in this case, in order to dissuade Defendants and others from committing the same or similar acts in the future.

### COUNT II: UNLAWFUL SEARCH AND SEIZURE (New Mexico Constitution) (against Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and Deputy Antoine Whitfield)

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

66.     The New Mexico Constitution provides the same protections as the U.S. Constitution, N.M. Const. art. 2, § 10, but "there is established New Mexico law interpreting Article II, Section 10 more expansively than the Fourth Amendment," *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 12, 130 N.M. 386, 25 P.3d 225 (internal. citations omitted). Where New

Mexico courts diverge from federal precedent, therefore, they do so to provide an "extra layer of protection" from searches and seizures. *Id*. at ¶ 15; see also *ACLU of N.M. v. City of Albuquerque*, 2006-NMCA-078, ¶ 39, 137 P.3d 1215.

67.     New Mexico constitutional jurisprudence expands rather than limits federal standards for reasonable expectation of privacy.

68.     As stated above and incorporated herein, there was no exception to the warrant requirement to justify the multiple unconsented searches of Plaintiff's private work areas: government agents conducted those searches at times when they knew Plaintiff was not present, they did not seek his consent, they cut the locks off of spaces to which he had a reasonable expectation of privacy, and their goal throughout was to find evidence of crimes or misconduct. This intention is clarified beyond doubt by their continued efforts to search and seize Plaintiff's belongings even after involving law enforcement in the matter.

69.     The bad acts of Defendants are amplified by the fact that they relied on fabricated notes and planted evidence on order to further their plot.

70.     Defendants' searches of Plaintiff's desk and lockers violated his rights under Article II, Section 10.

71.     In New Mexico, "[t]he constitutional right to be free from unreasonable search and seizure includes the exclusionary rule and precludes a good-faith exception." *State v. Gutierrez*, 1993-NMSC-062, ¶ 50, 116 N.M. 431, 863 P.2d 1052.

72.     New Mexico does not recognize qualified immunity for violations of the New Mexico Constitution.

73.     Under New Mexico state law, informants' tips cannot serve as the basis for a search warrant unless independent corroboration establishes a "substantial basis for believing the

13

informant's report was based on reliable information"—a higher standard than under the federal

Constitution. *State v. Cordova*, 1989-NMSC-083, 4 25, 109 N.M. 211, 784 P.2d 30.

74.     When the tip comes from an anonymous source, a warrant cannot issue unless the

issuing judge can make an independent determination of probable cause. *State v. Lujan*, 1998-

NMCA-032, ¶ 3, 124 N.M. 494, 953 P.2d 29.

75.     An affidavit for search warrant must therefore contain:

   a.   the factual basis of the informant's knowledge (the "basis of knowledge" test);
        and

   b.   support for the informant's credibility, meaning that "either the informant is
        inherently credible or the information from the informant is credible on this
        particular occasion" (the "credibility" or "veracity" test). Id. at ¶ 4. Neither
        prong of the Cordova test has been satisfied here.

76.     It is clear that a valid warrant cannot rely on planted evidence.

77.     It is likewise obvious that a valid warrant cannot be based upon a fabricated,

purportedly anonymous note.

78.     The searches violated Plaintiff's constitutional rights under the New Mexico

Constitution and were unlawful.

79.     Even if a warrant would not have been needed to search Plaintiff's locked cabinet

under the U.S. Constitution, a warrant was required under the New Mexico Constitution.

80.     The search warrants issued after these unlawful searches did not cure their flaws or

render otherwise illegally search somehow legally protected.

81.     First, the notes fail based upon the fact that they were fabricated.

82.     Second, the notes fail on the basis-of-knowledge prong. New Mexico courts have

found that "first-hand observations" satisfy that test, *State v. Barker*, 1992-NMCA-117, ¶ 5, 114

N.M. 589, 844 P.2d 839; but in this case, the first anonymous note explicitly denies that the

informant has first-hand knowledge. It instead states, "I was told and everybody knows" that

Plaintiff was guilty of misfeasance and criminal conduct. The anonymous informant does not identify the source of this hearsay, and the note does not indicate whether either the anonymous informant or the equally anonymous sub-informant are even employed at NMBHI. *See State v. Haidle*, 2012-NMSC-033, ¶ 18, 285 P.3d 668 (rejecting an affidavit for search warrant based on "multiple levels of hearsay from unidentified sources").

83.    The second note similarly contains no description of how its writer obtained his or her knowledge; it simply states, "I no [sic]" that Plaintiff has pills in his El Paso locker. In fact, the pills were allegedly discovered in his Mesa locker—suggesting that the anonymous source never personally observed pills in that location.

84.    In *Barker*, the New Mexico Court of Appeals found that a search warrant failed on this prong when the affidavit: (1) "reflect[ed] no independent police corroboration of the informant's information"; (2) did not describe any of "the surrounding circumstances of the informant's admissions, which would serve to show why they were trustworthy"; and (3) "the informant [was) not named." 1992-NMCA-117, ¶ 13.

85.    Similarly, in *Haidle*, the Supreme Court held that an affidavit did not satisfy the credibility prong when it did not indicate that the informant had provided reliable information in the past, the statements were not against the informant's interest, and there was "no information to discount that the sources at any level might themselves have been involved in the [criminal behavior alleged] or might have had any other reason to fabricate the story." 2012-NMSC-033, ¶ 21.

86.    This case mirrors *Barker* and *Haidle*. There is no evidence that the author of the first anonymous note had previously furnished accurate information, such as could establish his or

her credibility—the documents do not even indicate whether the same person authored both notes, as the second note does not refer to the first in any way.

87.     At least one of the notes relies on hearsay from yet another unknown source. The notes are not against the author's or authors' interests; as in *Haidle*, none of the sources' motives can be verified, nor can it be discounted that they might have had reason to fabricate the story or tamper with the scenes they identified. *Id*.

88.     The affidavits for the June 5, 2015 and June 26, 2015 search warrants do not indicate any independent police investigation of these anonymous notes; in lieu of attempting to make a credibility determination about the actual informant or informants, the deputies relied upon the fruits of previous illegal searches.

89.     According to the affidavit for the June 5, 2015 warrant, the deputies' investigation consisted of: interviewing people who had conducted a prior unlawful search of the area; reading a copy of the anonymous note; reviewing the findings of the prior search, including photographs; and looking in the area to be searched before seeking any warrant.

90.     The affidavit contains no reference whatsoever to an investigation into the note's authorship or the credibility of the informant. The affidavit for the June 26, 2015 warrant describes a similar investigation: deputies interviewed a person who had conducted a prior unlawful search of the area; read a copy of the second anonymous note; and looked in the area to be searched long before seeking a warrant. As before, the affidavit conspicuously lacks any reference to an investigation of this informant's credibility, or even a determination that the second informant was the same as the first.

91.     Because both anonymous notes fail both prongs of the *Cordova* test, they cannot provide a substantial basis for probable cause—this is undoubtedly the case as the notes were

fabricated by Defendants in order to create a pretext to search Plaintiff's locked desk cabinet in order to "find" the planted Clonazepam. 1989-NMSC-083, ¶ 25; *State v. Vest*, 2011-NMCA-037, ¶ 12, 252 P.3d 772.

92.     The remainder of the evidence cited in the affidavits stems directly from the multiple illegal searches described above, and was never reobtained "by means sufficiently distinguishable to be purged of the primary taint," *State v. Monteleone*, 2005-NMCA 129, ¶ 17, 138 N.M. 544, 123 P.3d 777(*citing Wong Sun v. United States*, 371 U.S. 471, 488 (1963)); therefore, those searches ostensibly pursuant to the two search warrants were just as unlawful as NMBHI's searches, and their fruits should also be suppressed, *Id*. at ¶ 20; *Trudelle*, 2007-NMCA-066, ¶ 47; *Barker*, 1992-NMCA-117, 14 (holding that when a search warrant failed to satisfy *Cordova*, the search was unlawful and its fruits should not have been admissible against Plaintiff at trial").

93.     At times relevant to the Tort Claims and State Constitutional Violations alleged in this Complaint, Defendants Deputy Sean Armijo, Undersheriff Anthony Madrid, and Deputy Antoine Whitfield were acting as law enforcement officers within the meaning of the New Mexico Tort Claims Act § 41-4-3(D) and, consequently, immunity is waived for the actions complained of herein.

94.     At times relevant to the Tort Claims and State Constitutional Violations alleged in this Complaint, Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and Joe Chavez, were operating and maintaining a mental institution or clinic within the meaning of the New Mexico Tort Claims Act § 41-4-9. Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and Joe Chavez, were operating the institution negligently and, consequently, immunity is waived for the actions complained of herein.

17

95.     Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and Joe Chavez have admitted that their actions with respect to Plaintiff were undertaken in conjunction with the operation and maintenance of NMBHI.

96.     The bad acts perpetrated by Defendants Deputy Sean Armijo, Undersheriff Anthony Madrid, Deputy Antoine Whitfield, Frances Tweed, Corrine Dominguez, Antonio Coca, and Joe Chavez proximately caused Plaintiff to suffer damages in an amount to be proven at trial.

97.     No punitive damages are sought for claims brought pursuant to the New Mexico Tort Claims Act.

**COUNT III: FOURTH AMENDMENT MALICIOUS PROSECUTION**
**(Pursuant to 42 U.S.C. § 1983)**
**(against Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and/or Deputy Antoine Whitfield)**

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

98.     42 U.S.C. § 1983 provides for civil liability for the deprivation of any rights, privileges or immunity secured by the United States Constitution.

99.     The Tenth Circuit "has recognized the viability of malicious prosecution claims under § 1983." *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996). To establish a malicious-prosecution claim under § 1983, a plaintiff must prove that the defendant initiated or continued a proceeding against him without probable cause. *Becker v. Kroll*, 494 F.3d 904, 913-14 (10th Cir. 2007).

100.    Plaintiff was wrongfully detained after the initiation of legal process.

101.    In this case, the legal process itself was wrongful as there was no probable cause to charge Plaintiff with the aforementioned crimes. All of the supposed evidence of purported malfeasance was based upon planted evidence and/or fabricated "anonymous notes," which resulted in the above described unlawful and unconstitutional searches.

102.     Upon information and belief, at the time that Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and/or Deputy Antoine Whitfield conspired to fabricate the notes and plant the Clonazepam and then to initiate the filing of criminal charges against Plaintiff, Defendants were fully aware that there was no probable cause to support the aforementioned allegations.

103.     All of the charges brought against Plaintiff were ultimately dismissed.

104.     As a result of the criminal charges that were wrongfully brought against him, Plaintiff was arrested, detained, incarcerated, prosecuted and forced to spend thousands of dollars to defend himself—all based upon false claims, planted evidence, and in contravention of their Fourth Amendment protections. Thus, the wrongful acts undertaken by Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and/or Deputy Antoine Whitfield proximately caused Plaintiff to suffer damages.

105.     In this case, Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and/or Deputy Antoine Whitfield caused Plaintiff's confinement or prosecution; the criminal action terminated in favor of Plaintiff; no probable cause supported the original arrest, confinement, or prosecution; Defendants acted with malice; and Plaintiff sustained damages.

106.     Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and/or Deputy Antoine Whitfield acted maliciously, willfully, intentionally, deliberately, and with intent to cause harm and did, in fact, cause harm to Plaintiff through said malicious prosecution.

107.     The assessment of punitive damages against Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid,

and/or Deputy Antoine Whitfield is also therefore appropriate in this case, in order to dissuade Defendants and others from committing the same or similar acts in the future.

108.    New Mexico has combined the torts of abuse of process and malicious prosecution into a single tort: malicious abuse of process. *Devaney v. Thriftway Marketing Corp.*, 124 N.M.512, 518, 953 P.2d 277, 283 (1997), abrogated on other grounds by *Fleetwood Retail Corp. of NM v. LeDoux*, 142 N.M. 150, 164 P.3d 31 (2007).

109.    The Supreme Court of New Mexico has held that the elements of the tort of malicious abuse of process are as follows: (i) the initiation of judicial proceedings against the plaintiff by the defendant; (ii) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (iii) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (iv) damages. *Devaney v. Thriftway Marketing Corp.*, 124 N.M. at 518, 953 P.2d at 283.

110.    "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." *Richardson v. Rutherford*, 109 N.M. 495, 501, 787 P.2d 414, 420 (1990).

111.    The Supreme Court of New Mexico has held: "an abuse of process arises when there has been a perversion of the court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to perform some collateral act which he legally and regularly would not be compelled to do." *Richardson v. Rutherford*, 109 N.M. at 500, 787 P.2d at 419.

112.    A malicious abuse of process claim may be asserted in two ways: (1) a "procedural irregularity" involving misuse of procedural devices such as discovery or (2) "an act that otherwise

indicates the wrongful use of proceedings." *Fleetwood Retail Corp. of N.M v. LeDoux*, 142 N.M. at 155, 164 P.3d at 36.

113.    In this case Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and/or Deputy Antoine Whitfield caused the initiation of judicial proceedings against Plaintiff on charges that Defendants knew were not true and for reasons that were improper—including but not limited to: fabricating claims with a primary motive to achieve the illegitimate end of punishing Plaintiff for speaking out in support of his partner and/or against mismanagement and other protected activities and those bad acts resulted in damages to Plaintiff.

114.    In addition, Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and/or Deputy Antoine Whitfield knew that were Plaintiff convicted of the charges brought against him, he would be unable to associate with his longtime partner. Defendants actions were therefore also designed to force a separation between the two.

115.    Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and/or Deputy Antoine Whitfield did not have a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that the claim could be established to the satisfaction of a court or jury.

116.    All charges filed against Plaintiff were dismissed.

117.    As a result of the charges that were wrongfully brought against them, Plaintiff was arrested, detained, incarcerated, forced to post a bond, arraigned and had his freedom restricted and suffered other harms and damages to be proven at trial, including but not limited to pain and suffering in the form of emotional and psychological distress of the type and sort that any person

could be expected to experience under like or similar circumstances. Defendants' wrongful acts proximately caused Plaintiff to suffer damages.

118.   No punitive damages are sought for claims brought pursuant to the New Mexico Tort Claims Act.

**COUNT V: FIRST AMENDMENT RETALIATION**
**(Pursuant to 42 U.S.C. § 1983)**
**(Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and Joe Chavez)**

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

119.   42 U.S.C. § 1983 provides for civil liability for the deprivation of any rights, privileges or immunity secured by the United States Constitution.

120.   The United States Supreme Court has held that "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Hartman v. Moore*, 547 U.S. 250, 256 (2006)(*quoting Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1988)).

121.   It is therefore "settled that as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. at 256 (citation omitted).

122.   Plaintiff spoke out about the abuse that his longtime partner suffered in order to prevent it from continuing to occur to her and to other employees.

123.   Plaintiff specifically complained to NMBHI employees, including but not limited to Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and/or Joe Chavez that patients were suffering as a result of placing patients who had extremely limited cognitive skills into placements designed for patients who were able to take care of themselves.

124.    Plaintiff spoke out about other instances involving the mistreatment of patients in his unit at NMBHI.

125.    He was motivated to do so to bring attention to the patient's well-being and their plight at NMBHI.

126.    Plaintiff engaged in no activity that would legitimately give rise to a criminal complaint for "trafficking in a controlled substance" of any sort.

127.    Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and/or Joe Chavez were aware that there was no probable cause to charge Plaintiff with "trafficking in a controlled substance" or the like because they fabricated the evidence that those charges were based on.

128.    Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and/or Joe Chavez were aware that Plaintiff had also exercised his First Amendment protected right of speech in support of Patricia J. Vigil by speaking out about the repulsive and unlawful treatment that she endured throughout the course of her lawsuit against NMBHI.

129.    Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and/or Joe Chavez conspired to retaliate against Plaintiff for his exercise of his First Amended protected rights.

130.    Defendants caused the aforementioned criminal charges to be brought against Plaintiff in retaliation for Plaintiff's First Amendment protected activities.

131.    Defendants' actions were substantially motivated by their desire to squelch Plaintiff's speech, expression and protected association and/or punish Plaintiff for exercising his First Amendment rights.

132.    Defendants actions were likely also motivated by the fact that Defendant had spoken out over mismanagement at NMBHI, including but not necessarily limited to employee misbehavior and misclassification of residents/patients.

133.    The widespread misclassification of NMBHI residents/patients caused people who could not independently function to be assigned to the unit that Plaintiff oversaw.

134.    Said unit was not designed to house people who could not, for example, manage their own money or take their own medication.

135.    These failings were compounded by the lack of medical staff in the unit in which Plaintiff worked.

136.    The degree and type of action taken by Defendants against Plaintiff was sufficient to chill a person of ordinary firmness in the continued exercise of his or her First Amendment rights.

137.    The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for engaging in First Amendment protected activity.

138.    Said First Amendment retaliation by Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and/or Joe Chavez—was harmful and offensive, and Plaintiff was harmed and damaged by Defendants' First Amendment retaliation.

139.    Plaintiff is entitled to just and fair compensation in an amount to be established at trial.

140.    Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and/or Joe Chavez acted maliciously, willfully, intentionally, deliberately, and with intent to cause harm and they did, in fact, cause harm to Plaintiff through their participation in said First Amendment Retaliation.

141.    The assessment of punitive damages against Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and/or Joe Chavez—is also therefore appropriate in this case, in order to dissuade Defendants and others from committing the same or similar acts in the future.

## COUNT VI: RESPONDEAT SUPERIOR
## CLAIMS AGAINST DEFENDANT NMBHI (THE STATE OF NEW MEXICO)
## FOR TORT CLAIMS VIOLATION

Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

142.    Pursuant to the New Mexico Tort Claims Act, Defendant State of New Mexico, which operates the New Mexico Department of Health, and, in turn, the New Mexico Behavioral Health Institute is liable under the doctrine of *Respondeat Superior* for any violation of the New Mexico Tort Claims Act perpetrated by any state employee.

143.    No claim for punitive damages is made against Defendant State of New Mexico.

## COUNT VII: RESPONDEAT SUPERIOR CLAIMS (BOARD OF COUNTY
## COMMISSIONERS OF THE COUNTY OF SAN MIGUEL)
## FOR TORT CLAIMS VIOLATION

144.    Each and every foregoing allegation is herein incorporated by reference as if fully set forth

145.    Pursuant to the New Mexico Tort Claims Act, Defendant Board of County Commissioners of the County of San Miguel is liable under the doctrine of *Respondeat Superior* for any violation of the Act perpetrated by any county employee.

146.    No claim for punitive damages is made against Defendant County of San Miguel pursuant to the New Mexico Tort Claims Act.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A)    Award compensatory damages jointly and severally against all Defendants in an amount to be determined by the jury at trial;

B)     Award punitive and exemplary damages against Defendants Frances Tweed, Antonio Coca, Joe Chavez, Sean Armijo, Anthony Madrid, and Antoine Whitfield for violations of 42 U.S.C. § 1983 in a separate amount to be determined by the jury at trial;

C)     Award pre- and post-judgment interest on all monetary damages in an amount to be fixed by the Court;

D)     Award the costs incurred in bringing this action including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

E)     Award other and further relief as the Court deems proper under the circumstances.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,
ROMERO & WINDER, P.C.

**"Electronically Filed"**
By:     /s/ Joe M. Romero. Jr.
Attorney for Plaintiff
1905 Lomas Blvd. NW
Albuquerque, NM 87104
(505) 843-9776
joe@romeroandwinder.com

26