## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOHN VIGIL,**

    **Plaintiff,**

**v.**                                   **Case No. 1:18-CV-00829-SCY-JFR**

**FRANCES TWEED, in her individual capacity,**

**CORRINE DOMINGUEZ, in her individual capacity,**

**ANTONIO COCA, in his individual capacity,**

**JOE CHAVEZ, in his individual capacity,**

**NEW MEXICO BEHAVIORAL HEALTH
INSTITUTE, a political subdivision of the
NEW MEXICO DEPARTMENT OF HEALTH,
a division of the STATE OF NEW MEXICO,**

**DEPUTY SEAN ARMIJO, in his individual capacity
as a deputy employed by the San Miguel County Sheriff's Office,**

**UNDERSHERIFF ANTHONY MADRID, in his
individual capacity as a deputy employed by the
San Miguel County Sheriff's Office,**

**DEPUTY ANTOINE WHITFIELD, in his individual capacity
as a deputy employed by the San Miguel County Sheriff's Office, and**

**BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SAN MIGUEL,**

    **Defendants.**

### JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN

Pursuant to FED. R. CIV. P. 26(f), a meeting was held on October 17, 2019 by telephone

and was attended by:

    Joe M. Romero, Jr. for Plaintiff

    Mark E. Komer for State Defendants

    Christina L.G. Brennan for County Defendants.

## NATURE OF THE CASE

Plaintiff John Vigil complains in this litigation that he was subject to an unlawful search and seizure, malicious prosecution, and 1st Amendment retaliation. These claims are based upon alleged searches of a desk and lockers at the New Mexico Behavioral Health Institute and subsequent criminal prosecution of Plaintiff for felony possession of controlled substances (Hydrocodone), felony possession of dangerous drugs (Risperidone), and misdemeanor possession of Lorazepam/Ativan. Defendants deny what Plaintiff says about liability and deny wrongdoing.

## AMENDMENTS TO PLEADINGS AND JOINDER OF PARTIES

Plaintiff intends to file: None.

Plaintiff does not intend to move to amend the pleadings or to join additional parties in compliance with the requirements of Fed. R. Civ. P. 15(a).

County Defendants intend to file: None.

County Defendants should be allowed until December 7, 2019 to move to amend the pleadings and until December 7, 2019 to join additional parties in compliance with the requirements of Fed. R. Civ. P. 15(a).

State Defendants intend to file: None.

State Defendants should be allowed until December 7, 2019 to move to amend the pleadings and until December 7, 2019 to join additional parties in compliance with the requirements of Fed. R. Civ. P. 15(a).

## STIPULATIONS

The parties hereto stipulate and agree that venue is properly laid in this District; that the United States District Court for the District of New Mexico has jurisdiction of the parties and the subject matter.

The parties further stipulate and agree that the law governing this case is: 42 U.S.C. § 1983 and pertinent federal case law; New Mexico state law, including the New Mexico Tort Claims Act, as to state claims asserted.

## PLAINTIFF'S CONTENTIONS:

1.      Plaintiff contends that Patricia J. Vigil, Plaintiff's longtime domestic partner, brought suit against the New Mexico Behavioral Health Institute for discrimination and retaliation pursuant to the New Mexico Human Rights Act, for violations of the New Mexico Whistleblower Protection Act, and for violations of the New Mexico Fraud Against Taxpayers Act in June of 2012. See, Vigil vs. New Mexico Behavioral Health Institute, Case No. D-412-CV-2012-279.

2.      The allegations in Ms. Vigil's lawsuit—many of which included graphic sexual misconduct—went back to 2010 and 2011.

3.      Throughout the course of Ms. Vigil's litigation, Plaintiff supported her. Plaintiff was present at hearings and conferences in his personal capacity in support of Ms. Vigil.

4.      Plaintiff's employers and supervisors including, but not necessarily limited to Defendants Frances Tweed, Antonio Coca, and Joe Chavez were angered by Plaintiff's support of Ms. Vigil throughout her litigation against NMBHI.

5.      Upon information and belief, after Ms. Vigil's lawsuit was settled for a substantial sum, Defendants and others sought to retaliate against Plaintiff for his support of his partner.

6.      Specifically, on May 29, 2015, Plaintiff's superiors at the NMBHI, a state hospital, fabricated a typed letter alleging that Plaintiff had narcotics stored in his desk.

7.      The fabricated note stated: "I was told and everybody knows that supervisor john vigil has a lot of bottels of the patientes meds in his desk, and some are ativans and narcotics locked away. Also hundreds of dollars of there money to. John vigil is the psych tech supervisor at the arches. We will send to HR patient avocate and Investegations. You cannot tell him how you found out cuase he will know who send this letter."

8.      Five days later, three NMBHI employees—Defendants Frances Tweed, Antonio Coca, and Joe Chavez—conducted a search of Plaintiff's desk.

9.      At the time of the search, Defendants Frances Tweed, Antonio Coca, and Joe Chavez knew that Plaintiff was on vacation and would not be present.

10.     Prior to manufacturing the purported anonymous note Defendants Frances Tweed, Antonio Coca, and/or Joe Chavez used a key to access Plaintiff's locked office and accessed Plaintiff's locked desk cabinet because there "was enough play in the cabinet doors" to allow a single tablet of Clonazepam inside the cabinet.

11.     Defendants Frances Tweed, Antonio Coca, and Joe Chavez then searched Plaintiff's desk as a result of the fabricated note—knowing that they would find the Clonazepam that they had planted therein.

12.     During their search, Defendants Frances Tweed, Antonio Coca, and/or Joe Chavez found and photographed various items within the desk, some of which they moved, removed, or examined, and then Mr. Chavez placed a new lock on the desk.

13.     At the time of the aforementioned unlawful search, Defendant Corrine Dominguez was Plaintiff's supervisor. Upon information and belief, Defendant Corrine Dominguez consented to and/or authorized and/or agreed to the unlawful search of private areas of Plaintiffs workspace based upon the fabricated note.

14.     Two days later, at approximately 10:00am on June 5, 2015, Joe Chavez made contact with Deputy Sean Armijo of the San Miguel Sheriff's Department, claiming a possible narcotics larceny had occurred. Mr. Chavez gave Deputy Armijo a copy of the fabricated letter.

15.     Deputy Armijo obtained statements from both Mr. Chavez and Frances Tweed, and consequently learned that they had entered Plaintiff's secure office, cut off the lock he had on his desk, conducted a search, and placed a new lock on the desk. Mr. Chavez provided Deputy Armijo with pictures that had been taken in the course of the initial search.

16.     On the basis of the above information, Deputy Armijo and Undersheriff Anthony Madrid obtained and executed a search warrant on Plaintiff's desk. In order to enable their search, Joe Chavez removed the lock he had placed on the desk after cutting Plaintiff's own lock off.

17.     When their search concluded, the officers submitted a "Return and Inventory" claiming that all the items in the desk had been "found by Under Sheriff Anthony Madrid."

18.     These documents deliberately omitted any mention of the previous warrantless search or the individuals who had conducted it to disguise the use of the fabricated note to discover planted evidence previously.

19.     About two weeks after deputies conducted their search on Plaintiff's desk, Frances Tweed claimed to receive a second typed anonymous note.

20.     The second note was also fabricated to incriminate Plaintiff.

21.     The second fabricated note stated: "John paul vigil has 2 lokers in mesa an el paso unit 1 in mesa has a combination and 1 in el pasao has a yellow lock. I no the 1 in el paso has pills. He uses."

22.     After claiming to receive this purported anonymous note, Frances Tweed and other NMBHI employees conducted searches on Plaintiffs lockers in both El Paso and Mesa Cottages while Plaintiff was not present. Once again, they cut the locks off in order to perform their searches.

23.     The fabricated notes served as a pretext to conduct a search.

24.     The fabricated notes were not genuine.

25.     The searches perpetrated by Defendants Frances Tweed, Antonio Coca, and/or Joe Chavez were conducted pursuant to the NMBHI's longstanding though unwritten policy of retaliating against people who filed suit against NMBHI, like Plaintiff's longtime partner, or who supported those individuals, as Plaintiff did.

26.     The searches conducted by NMBHI employees, including Defendants Frances Tweed, Corrine Dominguez, and Antonio Coca were carried out in connection with their operation of NMBHI.

27.     On June 19, 2015, Frances Tweed contacted Undersheriff Madrid to claim that she had received another anonymous letter—this time regarding Plaintiffs personal lockers.

28.     Undersheriff Madrid arrived at the scene at approximately 11:00 a.m., and Ms. Tweed took him to Plaintiff's locker in Mesa Cottage.

29.     Defendant Tweed informed Undersheriff Madrid that the lock had been cut off and a search already performed. She itemized the pills allegedly found in the locker during her first search, claiming that she had "researched" them and identified them as narcotics.

30.     Undersheriff Madrid and Deputy Antoine Whitfield obtained a second search warrant on June 26, 2015, and executed it the same day—a week after Undersheriff Madrid investigated Plaintiff's cut-open locker with Frances Tweed. During this third examination of Plaintiff's locker, the second by law enforcement, Undersheriff Madrid seized several items.

31.     Undersheriff Madrid then submitted a "Return and Inventory" for the items seized, stating that he had executed a search of the locker pursuant to the June 5, 2015 search warrant— though that warrant was specifically for Plaintiff's desk in another building, and had been executed the same day it was issued.

32.     On July 8, 2015, Undersheriff Madrid submitted an affidavit for Plaintiff's arrest. This affidavit lists the items found during the searches of Plaintiff's lockers and desk, but deliberately omitted the warrantless, pretextual search of Plaintiff's desk in which the planted Clonazepam was found.

33.     Although NMBHI, as his government employer, did not have a written policy in place that diminished Plaintiff's expectation of privacy or alerted him to the possibility that it would

conduct unconsented searches while he was not present, Plaintiff has determined through the litigation of his State Personnel Office claim that the behavior of the NMBHI Defendants was perpetrated pursuant to their custom of retaliating against anyone who angered them by, for example, making a discrimination claim against NMBHI employees or supporting people who made such claims.

34.     According to the June 5, 2015 Affidavit for Search Warrant, the grounds for the deputies' search of Plaintiff's desk were:

a.     an anonymous note, written by a person who apparently remains unidentified;

b.     the statements of Joe Chavez and Frances Tweed as to what they had discovered in their previous illegal search;

c.      pictures of items retrieved in the previous illegal search; and

d.     Mr. Chavez's and Ms. Tweed's statements purporting to identify items discovered in said search as narcotics.

35.     When Deputy Armijo sought a search warrant for the desk, he was fully aware of the NMBHI search and chose to use information obtained from it. Without the fruits of that initial search, the only basis for the June 5, 2015 search warrant was a typed anonymous note.

36.     Deputy Armijo did not conduct the minimal investigation needed to discover that the note was fabricated.

37.     When Undersheriff Madrid responded to NMBHI on June 19, 2015, he too was aware that NMBHI had conducted repeated warrantless searches of Plaintiff's belongings. Undersheriff Madrid expressly admitted that he was able to view Plaintiff's locker in Mesa Cottage only because NMBHI employees had forcibly removed Plaintiff's personal lock.

38.     Undersheriff Madrid did not conduct the minimal investigation needed to discover that the note was fabricated.

39.     According to the Affidavit for Search Warrant that Undersheriff Madrid signed on June 26, 2015, a week after he first viewed Plaintiff's locker with Frances Tweed, the grounds for the second search warrant were:

a.     the previous law enforcement search on June 5, 2015;

b.     the second anonymous note;

c.      Frances Tweed's representation that Plaintiff's locker contained pills, which was based on NMBHI's search of the locker;

d.     Ms. Tweed's representation that "she had researched the pill's descriptors and found it to be Hydrocodone"; and

e.     Undersheriff Madrid's warrantless investigation of Plaintiff's cut-open locker on June 19, 2015. Without the fruits of NMBHI's prior searches—including their removal of Plaintiff's

lock, which allowed Undersheriff Madrid to view Plaintiff's locker without a warrant on June 19, 2015—the only basis for the second search warrant was the typed, fabricated, purportedly anonymous note.

40.     On November 6, 2015, Plaintiff was charged with felony Possession of a Controlled Substance; Misdemeanor Possession of a Controlled Substance; and a second felony alleging that he sold or possessed Dangerous Drugs.

41.     The Hydrocodone that Plaintiff was charged with possessing was prescribed to Plaintiff by his physician.

42.     Despite knowing that the Hydrocodone was lawfully prescribed to Plaintiff, Deputy Armijo and Undersheriff Madrid pressed charges against Plaintiff.

43.     Plaintiff was forced to defend himself against the unsupported charges. In so doing, he incurred substantial attorney's fees, lost wages, suffered emotional distress (of the type and sort that anyone in Plaintiff's situation would be expected to endure rather than of a specific, diagnosable nature) as a result of the fear and apprehension that Defendants' actions caused Plaintiff.

44.     Ultimately, Plaintiff was acquitted of two of the three charges at trial. The third charge was dismissed. Plaintiff was not convicted of any crime as a result of the allegations leveled against him by and/or because of Defendants.

45.     This suit is not barred as a collateral attack on a conviction.

46.     Plaintiff contends that the foregoing constituted unlawful search and seizure in violation of the U.S. Constitution; unlawful search and seizure in violation of the New Mexico Constitution—actionable under the New Mexico Tort Claims Act and Respondeat Superior for Tort Claims Counts; Malicious Prosecution in violation of the U.S. Constitution; Retaliation for engaging in protected speech in violation of the U.S. Constitution; and other claims set forth in Plaintiff's Second Amended Complaint.

47.     Plaintiff further contends that neither issue preclusion nor claim preclusion prevents him from making any claim herein. He was not convicted at trial and therefore could not appeal the erroneous pretrial and evidentiary decisions entered by Judge Sandoval, Fourth Judicial District Court, State of New Mexico.

## STATE DEFENDANTS' CONTENTIONS

The State Defendants generally deny the Plaintiff's allegations as set forth in their answer to the Plaintiff's Second Amended Complaint and their affirmative defenses. The Court previously dismissed Plaintiff's claims against these defendants based on qualified immunity; defendants contend that Plaintiff's Second Amended Complaint does not overcome their immunity. Upon current information and belief, the discovery may reveal the following facts, which defendants set forth to assist the Court in evaluating potential issues for discovery and case management:

The Defendant's work space was located in El Paso Cottage on the grounds of NMBHI. The Defendant was assigned his own desk and cabinet, but the work space was shared with two other co-workers who had their own desks. Access to the office was secured, but all three co-workers had keys to and were authorized to be in the work space. The co-workers worked different shifts than the Defendant and used the work space when the Defendant was not at work. The office furniture belonged to BHI, not to the individual employees.

The Defendant kept a lock on his work cabinet. The lock did not keep the cabinet completely closed; items inside the cabinet could be viewed while the lock was in place.

NMBHI has a number of policies relating to storage of medication and retrieving medication to dispense to patients. All medications, including all narcotics, are secured. The medications for the assisted living facility where the Defendant worked are kept in a locked medication cart in a secured medication room. The medications cannot be kept in any other location.

Psych tech supervisors are part of the nursing staff but are not registered nurses. They do not have the authority to administer medications to patients. Instead, they are authorized only to assist patients with the self-administration of medication. Psych techs can only have patient medication in their possession while removing the medication from the medication room for the purpose of assisting the patient with the self-administration of the medication at that time. Assistance with self-administration of medication is documented in a written NMBHI policy.

NMBHI staff are prohibited from retaining patient medication. In addition, NMBHI staff are prohibited from taking narcotics while on duty. NMBHI has a policy that subjects all employees to random drug testing. This policy is designed to ensure that hospital staff is not impaired while treating and assisting patients.

On May 29, 2015, an anonymous letter was hand-delivered by inter-office mail to administrators of NMBHI. The letter reported that the Defendant had patient medication and patient money locked in his desk.

Executive Nurse Administrator Frances Tweed contacted the human resource director in Santa Fe, and she was directed to search the Defendant's desk with security supervisor Joe Chavez and internal review director Antonio Coca. The purpose of the search was to determine whether the Defendant had violated hospital policies and whether he had exploited NMBHI patients.

On June 5, 2015, Mr. Chavez broke the lock on the Defendant's desk cabinet and opened it. Mr. Chavez, Ms. Tweed, and Mr. Coca found patient pill bottles inside the cabinet, as well as a pill in a pill box used for dispensing patient medication. Mr. Chavez took photographs of the interior of the cabinet and then secured the cabinet with a new lock.

Ms. Tweed again contacted the human resource director for further instructions. The human resource director, upon learning about the presence of patient prescription medication in the Defendant's desk, became concerned that a crime might have been committed. Ms. Tweed

was directed to contact the New Mexico State Police.

The San Miguel County Sheriff's Office responded to the call. After reviewing the anonymous letter and the photographs of the cabinet taken by NMBHI security, Deputy Sean Armijo and Undersheriff Anthony Madrid secured a search warrant and executed the warrant on June 5, 2015. The officers seized the patient medication and the cash in the Defendant's desk.

On June 19, 2015, Ms. Tweed received a second anonymous letter reporting that the Defendant had two lockers and there were pills in one of the lockers. Once again, Ms. Tweed contacted the human resource director, and she was directed to look inside the lockers.

Ms. Tweed, with assistance from two security personnel, Peter Schaeffer and Luann Gonzales, broke the locks and searched the lockers. They found hydrocodone pills in a Centrum vitamin bottle, as well as a patient's prescription pill bottle. Ms. Tweed contacted Undersheriff Madrid and reported the discovery of the pills in the Defendant's lockers.

Undersheriff Madrid obtained a second search warrant for the lockers and seized the pills from the lockers as authorized by the warrant.

The State Defendants specifically invoke the doctrines of qualified immunity to the Plaintiff's Second Amended Complaint as well as issue preclusion among the other affirmative defenses. Defendants will file one or more motions for judgment on the pleadings concerning their immunity from suit on the Plaintiff's allegations as well as the previous adjudication of the issues the Plaintiff seeks to raise here in his prior criminal proceeding.

Specifically, the Plaintiff previously moved to suppress evidence in the state court criminal case that is the subject of the present lawsuit. The Plaintiff contended that the searches of the desk and lockers on the premises constituted unreasonable workplace search, the employees of the New Mexico Behavioral Health Institute including the Defendants here were acting as law enforcement officers. There was briefing on this issue as well as a hearing and subsequent decision by State District Court Judge Matthew J. Sandoval denying the Plaintiff's motion to suppress, all of which was a necessary part of the later trial on these issues.

Judge Sandoval specifically found that Plaintiff Vigil had no subjective expectation of privacy that society is willing to recognize as reasonable in the desk, cabinet and locker that Behavioral Health Institute assigned to the Plaintiff. Judge Sandoval further found that the Defendants were not security personnel and that the searches at issue by the State Defendants were not at the behest or incurred as law enforcement officers. Further, Judge Sandoval determined that "given the operational realities of the workplace at BHI and the need to protect patients from exploitation in relation to medication and patient funds, BHI acted reasonably in searching the workplace and locker assigned to [Plaintiff Vigil] for work-related employee misconduct." Judge Sandoval determined and concluded that the BHI searches that occurred on June 3, 2015 and June 19, 2015 did not violate the Fourth Amendment or Article II, Section X of the New Mexico Constitution.

Because these issues were previously litigated and the Plaintiff had full and fair opportunity to participate, the District Court Judge's determinations which are subsumed in the resulting judgment now preclude any relitigation of these issues in this civil lawsuit. Further, the individual State Defendants are entitled to qualified immunity from this lawsuit in the present case related to Plaintiff's claims under Counts I, II and III of the Second Amended Complaint which appears to state claims for Fourth Amendment violations based on search and seizure and malicious prosecution under federal and state law. The defendants did not violate Plaintiff's constitutional rights and the laws related to the State Defendants in connection with search and seizure and malicious prosecution claims were not clearly established. The Court previously determined that Defendants were entitled to qualified immunity, and Plaintiff's attempt to amend around that decision is futile.

Further, Defendants are entitled to qualified immunity related to the Plaintiff's First Amendment claim as Plaintiff's complaint fails to outline speech on a matter of public concern as a necessary element of the action. Furthermore, to the extent that Plaintiff is complaining that the Defendants conducted unreasonable searches as a form of retaliation, that claim too is barred by the previous determination by the state court judge in the criminal matter, finding the searches reasonable. Further, the NMBHI has significant interests in monitoring controlled substances and its employees at the workplace. Defendants deny Plaintiff' claim of retaliation and state the NMBHI would have reached the same decisions concerning its workplace regardless of any alleged protected communications.

Finally, the portions of the complaint purporting to set forth state law claims are not cognizable as a matter of law in New Mexico. Specifically, the New Mexico Tort Claims Act does not permit claims for constitutional violations. Nor is there an applicable waiver of immunity for employees of the New Mexico Behavioral Health Institute in connection with search and seizure or malicious prosecution. In addition, there is no basis for a claim of *respondeat superior* against the New Mexico Behavioral Health Institute based on the New Mexico Tort Claims Act.

## COUNTY DEFENDANTS' CONTENTIONS

County Defendants deny what Plaintiff says about liability and damages.

County Defendants state that the sheriff's department was called out to investigate possible criminal conduct of Plaintiff Vigil. Deputy Armijo responded and was advised that Mr. Vigil's supervisors had received an anonymous note accusing Mr. Vigil of the theft and possession. As a result, his supervisors opened his locked work desk and found various bottles of pills and cash that was believed to belong to NMBHI clients.

Deputy Armijo saw the pills and cash in the opened desk and drafted an affidavit for search warrant. The warrant was granted and Deputy Armijo returned to NMBHI to conduct a more thorough search and inventory the items found.

A week or so later, the Sheriff's Department was contacted again as another anonymous note had been received by Mr. Vigil's supervisors. When Undersheriff Anthony Madrid responded, he

was informed that this note contained additional allegations that Mr. Vigil had contraband hidden in a locker. The lock from Plaintiff's locker had already been removed by NMBHI personnel and incriminating items had been discovered, specifically hydrocodone tablets stored in an empty vitamin bottle. Undersheriff Madrid saw the items in the already-opened locker, and requested another warrant. This, too, was granted and Madrid and Deputy Antoine Whitfield went and took an inventory of hydrocodone found inside. With the information gleaned from the desk and the locker, Madrid filed an Affidavit for Arrest.

The matter was bound over from Magistrate Court to District Court. Mr. Vigil was charged with one count of possession of a controlled substance (felony), possession of dangerous drugs (felony), and misdemeanor possession. The misdemeanor charge was dismissed. After trial, Mr. Vigil was acquitted of the two felony charges.

During the criminal proceedings against Vigil, his criminal defense attorney filed a Motion to Suppress the evidence found in the desk and locker. The District Court denied the Motion to Suppress and stated that Vigil had no expectation of privacy at work.

The County Defendants had no knowledge about Plaintiff's wife's alleged prior litigation or conflict with NMBHI. The Complaint was the first time they had heard of such a thing. County Defendants acted properly and with the requisite reasonable suspicion and probable cause.

County Defendants also reincorporate and reassert their defenses as stated in their Answer, Doc. 39.

## PROVISIONAL DISCOVERY PLAN

The parties jointly propose to the Court the following discovery plan:

State Defendants intend to move for judgment on the pleadings within 15 days. They may seek to invoke their qualified immunity from the lawsuit, including discovery, until the motion is determined.

List all witnesses who, at this time, you think will either testify or be deposed, giving their name, title, address and a brief summary of their testimony. It is insufficient to list witnesses' addresses, save for clients, "in care of counsel."

List all documents which you believe, at this time, will be exhibits at the trial.

List all experts who you believe, at this time, will testify at the trial, giving their name, address, area of expertise, and a brief summary of the anticipated testimony.

## PLAINTIFF'S WITNESSES

1. Plaintiff John Vigil
   c/o Joe M. Romero, Jr.
   Romero & Winder, P.C.
   1905 Lomas Blvd. NW
   Albuquerque, New Mexico 87104

Plaintiff Vigil will testify to the incidents in his Complaint, his damages, and may provide other relevant and admissible testimony in this matter.

2. Patricia Vigil
   c/o Joe M. Romero, Jr.
   Romero & Winder, P.C.
   1905 Lomas Blvd. NW
   Albuquerque, New Mexico 87104

Plaintiff's longtime partner Patricia Vigil will testify to the incidents in John Vigil's Complaint, his damages, and may provide other relevant and admissible testimony in this matter.

3. Sean Armijo
   Anthony Madrid
   Antoine Whitfield
   c/o Brennan & Sullivan, P.A.
   128 E. DeVargas Street
   Santa Fe, New Mexico 87501

Defendants will be called to testify as to their knowledge and actions with regard to Plaintiff's Complaint and may provide other relevant and admissible testimony in this matter.

4. Frances Tweed
   Corrine Dominguez
   Joe Chavez
   Antonio Coca
   c/o Mark Komer
   Long, Komer & Associates, P.A.
   Post Office Box 5098
   Santa Fe, NM 87502-5098

Defendants will be called to testify as to their knowledge and actions with regard to Plaintiff's Complaint and may provide other relevant and admissible testimony in this matter.

5. Any persons identified by any other party in this case;

6. Any other persons identified in Plaintiff's Complaint, any pleadings in prior litigation, and

reports pertaining to the incident;

7. Any persons identified in other reports and/or investigations that may be relevant to this case;

8. Prosecutors and District Attorney Investigators who worked on State of New Mexico v. John Vigil, D-412-CR-201500208;

9. Individuals identified in Plaintiff's Complaint;

10. Individuals identified in the reports pertaining to the incident;

11. NMBHI Patients and/or conservators as may be necessary;

12. Individuals identified in other reports and/or investigations involving Plaintiff including medical reports;

13. Any witness identified by any party to this lawsuit;

14. Such records custodians as may be necessary;

15. Witnesses necessary for impeachment, foundation, or rebuttal;

16. Any witness identified in discovery; and

17. Any expert witness identified by any party.

### STATE DEFENDANTS' WITNESSES

1. Plaintiff John Vigil
   c/o Joe M. Romero, Jr.
   Romero & Winder, P.C.
   1905 Lomas Blvd. NW
   Albuquerque, New Mexico 87104

Plaintiff Vigil may testify to the incidents alleged in the Complaint, his alleged damages, and all other areas necessary in the defense of this matter.

2. Sean Armijo
   Anthony Madrid
   Antoine Whitfield
   c/o Brennan & Sullivan, P.A.
   128 E. DeVargas Street
   Santa Fe, New Mexico 87501

Defendant Deputies may testify as to their interactions and observations of Plaintiff, the incident, criminal charges brought against Plaintiff and the reasons therefor, and all other areas necessary in the defense of this matter.

3. Frances Tweed
Corrine Dominguez
Joe Chavez
Antonio Coca
c/o Mark Komer
Long, Komer & Associates, P.A.
Post Office Box 5098
Santa Fe, NM 87502-5098

NMBHI Defendants may testify as to their interactions and observations of Plaintiff, the incident, their investigation prior to contacting the sheriff's department, criminal matters involving Plaintiff, and all other areas necessary in the defense of this matter.

4. Peter Schaeffer
Luann Gonzales
c/o Mark Komer
Long, Komer & Associates, P.A.
Post Office Box 5098
Santa Fe, NM 87502-5098

Peter Schaeffer and Luann Gonzales may testify as to their interactions and observations of Plaintiff, the incident, their investigation prior to contacting the sheriff's department, criminal matters involving Plaintiff, and all other areas necessary in the defense of this matter.

5. James Grayson
Deputy District Attorney
1800 New Mexico Avenue
Las Vegas, New Mexico 87701-3713

Mr. Grayson prosecuted the criminal charges against Plaintiff and may testify concerning the same, including but not limited to evidence against Plaintiff, legal posture, and all other areas necessary in the defense of this matter.

6. Representative of New Mexico Behavioral Health Institute
c/o Mark Komer
Long, Komer & Associates, P.A.
Post Office Box 5098
Santa Fe, NM 87502-5098

A representative of Defendant NMBHI may testify concerning Plaintiff's job duties, his actions relative to the incident, evidence concerning the criminal charges brought against Plaintiff, and

all other areas necessary to the defense of this matter.

7. Individuals identified in Plaintiff's Complaint;

8. Individuals identified in the reports pertaining to the incident;

9. Individuals identified in other reports and/or investigations involving Plaintiff

   including medical reports;

10. Any witness identified by any party to this lawsuit;

11. Such records custodians as may be necessary;

12. Witnesses necessary for impeachment, foundation, or rebuttal; 33. Any witness identified in discovery; and

13. Any expert witness identified by any party.


## COUNTY DEFENDANTS' WITNESSES

1. Plaintiff John Vigil
   c/o Joe M. Romero, Jr.
   Romero & Winder, P.C.
   1905 Lomas Blvd. NW
   Albuquerque, New Mexico 87104


Plaintiff Vigil may testify to the incidents alleged in the Complaint, his alleged damages, and all other areas necessary in the defense of this matter.

2. Sean Armijo
   Anthony Madrid
   Antoine Whitfield
   c/o Brennan & Sullivan, P.A.
   128 E. DeVargas Street
   Santa Fe, New Mexico 87501

   Defendant Deputies may testify as to their interactions and observations of Plaintiff, the incident, criminal charges brought against Plaintiff and the reasons therefor, and all other areas necessary in the defense of this matter.

3. Frances Tweed
   Corrine Dominguez
   Joe Chavez
   c/o Mark Komer
   Long, Komer & Associates, P.A.
   Post Office Box 5098
   Santa Fe, NM 87502-5098

   NMBHI Defendants may testify as to their interactions and observations of Plaintiff, the incident, their investigation prior to contacting the sheriff's department, criminal matters involving Plaintiff, and all other areas necessary in the defense of this matter.

4. Russell Lance Miller
   Deputy District Attorney
   1800 New Mexico Avenue
   Las Vegas, New Mexico 87701-3713

   Mr. Miller prosecuted the criminal charges against Plaintiff and may testify concerning the same, including but not limited to evidence against Plaintiff, legal posture, and all other areas necessary in the defense of this matter.

5. Representative of New Mexico Behavioral Health Institute
   c/o Mark Komer
   Long, Komer & Associates, P.A.
   Post Office Box 5098
   Santa Fe, NM 87502-5098

A representative of Defendant NMBHI may testify concerning Plaintiff's job duties, his actions relative to the incident, evidence concerning the criminal charges brought against Plaintiff, and all other areas necessary to the defense of this matter.

6. Individuals identified in Plaintiff's Complaint;

7. Individuals identified in the reports pertaining to the incident;

8. Individuals identified in other reports and/or investigations involving Plaintiff

   including medical reports;

9. Any witness identified by any party to this lawsuit;

10. Such records custodians as may be necessary;

11. Witnesses necessary for impeachment, foundation, or rebuttal; 33. Any witness identified in discovery; and

12. Any expert witness identified by any party.

## **PLAINTIFF'S EXHIBITS**

1. Pleadings, records, reports, orders/decisions, and transcripts of testimony from the State Personnel Board litigation (hereinafter "SPO litigation") that preceded this case;

2. Records from Plaintiff's entire period of employment;

3. Pleadings, records, reports, and orders/decisions from Patricia Vigil's lawsuit against NMBHI, *et al.*, including documents generated between NMBHI employees and their prior attorneys;

4. All of the documents described in Plaintiff's Complaint (to the extent not already listed);

5. Medical records produced in the prior SPO litigation and any other relevant medical records (if any);

6. Computer metadata for documents, reports, and/or email created on or allegedly created on or received on or allegedly received on NMBHI computers and/or by NMBHI staff, including but not necessarily limited to the named Defendants;

7. Any admissible and relevant pleadings or documents from the criminal prosecution that are not more prejudicial than probative to Plaintiff's claims;

8. Any document or other type of exhibit identified by any other party;

9. Any report, treatise, record, letter, email, and/or other type of document relied upon, consulted, reviewed or prepared in connection with any expert retained by any party, whether the expert is called to testify or not;

10. Criminal records of any Defendant or defense witness or defense expert; and

11. Any other admissible evidence identified through discovery.


## **STATE DEFENDANTS' EXHIBITS**

1. Records from *State of New Mexico v. John Vigil*, D-412-CR-201500208

2. Transcripts from the criminal prosecution of Plaintiff

3. Warrant for Arrest

4. Criminal Complaint

5. Affidavit for Arrest

6. Search Warrants

7. Affidavits for Search Warrants

8. Anonymous notes

9. Return and Inventory lists

10. Photographs taken by law enforcement

11. San Miguel County Sheriff's Office Incident Reports

12. Any additional criminal records of Plaintiff;

13. Plaintiff's medical records; and

14. Any exhibits identified by any party to this lawsuit.

## COUNTY DEFENDANTS' EXHIBITS

1.`Records from *State of New Mexico v. John Vigil*, D-412-CR-201500208

2. Transcripts from the criminal prosecution of Plaintiff

3. Warrant for Arrest

4. Criminal Complaint

5. Affidavit for Arrest

6. Search Warrants

7. Affidavits for Search Warrants

8. Anonymous notes

9. Return and Inventory lists

10. Photographs taken by law enforcement

11. San Miguel County Sheriff's Office Incident Reports

12.  Any additional criminal records of Plaintiff;

13.  Plaintiff's medical records; and

14.  Any exhibits identified by any party to this lawsuit.

**PLAINTIFF'S EXPERTS**

Plaintiff may call an expert witness on the search and/or proper procedures for the various Defendants' roles and responsibilities. No expert has yet been identified or retained.

**STATE DEFENDANTS' EXPERTS**

None anticipated at this time.

**COUNTY DEFENDANTS' EXPERTS**

County Defendants contemplate the use of a police expert.

Discovery will be needed on the following subjects:  The parties believe  discovery will be needed on all claims alleged by Plaintiff including his alleged  damages, and all defenses pled by Defendants.

Plaintiff requests 25 interrogatories, requests for production of documents, and requests for admissions by each party to any other party.

County Defendants and State Defendants request 50 interrogatories, requests for production of documents, and requests for admission per side.

Maximum of 15 depositions by Plaintiff and 15 by Defendants.

Each deposition (other than of named parties and experts) limited to maximum of 6 hours unless extended by agreement of parties.

Reports from retained experts under Rule 26(a)(2) due:

from Plaintiff by <u>January 15, 2020</u>

from Defendants by <u>February 14, 2020</u>

Supplementation under Rule 26(e) due <u>30 days after receipt of supplemental materials.</u>

All discovery commenced in time to be complete by <u>April 14, 2020.</u>  Discovery on *(issue for early discovery)* to be completed by <u>N/A</u>.

## PRETRIAL MOTIONS

Plaintiff intends to file: Motion(s) for summary judgment; motions in limine (as necessary); discovery motions (if necessary), and other motions permitted by the Federal Rules of Civil Procedure.

State Defendants intend to file: Motion for Judgment on the Pleadings based on qualified immunity; motion to stay discovery; motions for summary judgment; motions in limine.

County Defendants intend to file: motions to dismiss, motion for summary judgment on all or some of Plaintiff's claims, motions in limine, motions for qualified immunity, discovery motions, and other motions permitted by the Federal Rules of Civil Procedure.

## ESTIMATED TRIAL TIME

The parties estimate trial will require <u>eight </u>days.

<u>____</u> This is a non-jury case.

<u>X   </u> This is a jury case.

The parties request a pretrial conference in <u>September 2020, or 30 days prior to trial</u>.

## SETTLEMENT

The possibility of settlement in this case is considered cannot be evaluated prior to completion of discovery. The parties request a settlement conference in <u>May 2020</u>.

## EXCEPTIONS

None.

APPROVED WITH/WITHOUT EXCEPTIONS
(note exceptions above)

*/s/ Joe M. Romero, Jr.*_____
For Plaintiff

*/s/ Mark E. Komer*_____
For State Defendants

*/s/ Christina L.G. Brennan*_____
For County Defendants