**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JOHN VIGIL,**

**Plaintiff,**

**vs.** **No. 18-CV 00829 SCY/JKR**

**FRANCIS TWEED,**
**ANTONIO COCA,**
**JOE CHAVEZ,**
**NEW MEXICO DEPARTMENT OF HEALTH, a political subdivision of the New Mexico Department of Health,**

**DEPUTY SEAN ARMIJO, in his individual capacity as a deputy employed by the San Miguel County Sheriff's Office,**

**UNDERSHERIFF ANTHONY MADRID, in his individual capacity as a deputy employed by the San Miguel County Sheriff's Office,**

**DEPUTY ANTOINE WHITFIELD, in his individual capacity as a deputy employed by the San Miguel County Sheriff's Office, and**

**the BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SAN MIGUEL,**

**Defendants.**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANTS SEAN ARMIJO, ANTHONY MADRID, ANTOINE WHITFIELD, and BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SAN MIGUEL**

Plaintiff John Vigil, through counsel, Romero & Winder, P.C. (Joe M. Romero, Jr. ) in opposition to abovenamed Defendants' Motion to Dismiss, states:

**SUMMARY**

The San Miguel County Sheriff's Deputies who participated in the bad acts perpetrated against Plaintiff have asked the Court to dismiss the allegations brought against them in this case based upon four primary grounds.

First, these Defendants claim that Plaintiff's Second Amended Complaint is not specific enough to comply with the plausibility standard required of federal court pleadings. As set forth herein, the claims made against the Defendants who present this Motion are clear and meet the plausibility standard.

Second, these Defendants claim that they are shielded from liability for violating Plaintiff's Fourth Amendment protections because a pretrial hearing in the criminal court denied a motion to suppress. Thus, Defendants argue, the doctrine of *collateral estoppel*, also known as issue preclusion, bars Plaintiff's claims. Defendants' claim that Plaintiff was obligated to seek the discretionary permission of the criminal court to pursue an interlocutory appeal in order to prevent his claim that law enforcement could not use tainted, corrupted, planted and otherwise inadmissible evidence against him from being barred. Defendants acknowledge the facts that undermine this argument: a) there was no full and fair opportunity to litigate the matter and b) the limited effect that the Order denying the Motion to Suppress has must be weighed against the larger value of the full acquittal Mr. Vigil secured at trial.

Third, Defendants argue that Plaintiff's federal malicious abuse of process claims are barred by the existence of the magistrate's bindover order. For the same reasons, Plaintiff urges the Court to reject this argument.

Fourth, Defendants argue that because the underlying claims are barred by collateral estoppel, the *respondeat superior* claim made in Count VII must fail. Based upon the fact that the claims are not precluded, this argument itself must fail. \

**I. Defendants are aware of the allegations made against them in Plaintiff's Second Amended Complaint.**

***A. Standard on Motions to Dismiss***

As U.S. Magistrate Judge Laura Fashing explained in her Memorandum Opinion and Order (Doc. #63, filed January 18, 2018) in *Herrera v. Garcia*, No. 16-cv-01366 LF-JHR, in order to "withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Id*. (*citing Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir .2011) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint survives if it states a plausible claim for relief. *Id*. (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (internal citations omitted). "Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Id*. (*citing Berneike v. CitiMortgage, Inc*., 708 F.3d 1141, 1146 (10th Cir. 2013). But a court may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice." *Id*. (internal quotation marks omitted) (*citing Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)).

In determining whether to grant the motion, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. (*citing Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id. (citing Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Twombly*, 550 U.S. at 556)).

***B. Allegations in Plaintiff's Second Amended Complaint against Defendants Sean Armijo, Anthony Madrid, Antoine Whitfield, and the Board of County Commissioners of the County of San Miguel are clear.***

While the Motion to Dismiss summarizes the Second Amended Complaint in a manner that is meant to portray the charges against these Defendants in a sympathetic manner, the precise factual allegations against these Defendants are as follows:

> 26. Two days later, at approximately 10:00am on June 5, 2015, Joe Chavez made contact with Deputy Sean Armijo of the San Miguel Sheriff's Department, claiming a possible narcotics larceny had occurred. Mr. Chavez gave Deputy Armijo a copy of the fabricated letter.
>
> 27. Deputy Armijo obtained statements from both Mr. Chavez and Frances Tweed, and consequently learned that they had entered Plaintiff's secure office, cut off the lock he had on his desk, conducted a search, and placed a new lock on the desk. Mr. Chavez provided Deputy Armijo with pictures that had been taken in the course of the initial search.
>
> 28. On the basis of the above information, Deputy Armijo and Undersheriff Anthony Madrid obtained and executed a search warrant on Plaintiff's desk. In order to enable their search, Joe Chavez removed the lock he had placed on the desk after cutting Plaintiff's own lock off.
>
> 29. When their search concluded, the officers submitted a "Return and Inventory" claiming that all the items in the desk had been "found by Under Sheriff Anthony Madrid."
>
> 30. These documents deliberately omitted any mention of the previous warrantless search or the individuals who had conducted it to disguise the use of the fabricated note to discover planted evidence previously.
>
> 31. About two weeks after deputies conducted their search on Plaintiff's desk, Frances Tweed claimed to receive a second typed anonymous note.
>
> 32. The second note was also fabricated to incriminate Plaintiff.
>
> 33. The second fabricated note stated: "John paul vigil has 2 lokers in mesa an el paso unit 1 in mesa has a combination and 1 in el pasao has a yellow lock. I no the 1 in el paso has pills. He uses."
>
> 34. After claiming to receive this purported anonymous note, Frances Tweed and other NMBHI employees conducted searches on Plaintiffs lockers in both El Paso and Mesa Cottages while Plaintiff was not present. Once again, they cut the locks off in order to perform their searches.
>
> 35. The fabricated notes served as a pretext to conduct a search.

36. The fabricated notes were not genuine.

37. The searches perpetrated by Defendants Frances Tweed, Antonio Coca, and/or Joe Chavez were conducted pursuant to the NMBHI's longstanding though unwritten policy of retaliating against people who filed suit against NMBHI, like Plaintiff's longtime partner, or who supported those individuals, as Plaintiff did.

38. The searches conducted by NMBHI employees, including Defendants Frances Tweed, Corrine Dominguez, and Antonio Coca were carried out in connection with their operation of NMBHI.

39. On June 19, 2015, Frances Tweed contacted Undersheriff Madrid to claim that she had received another anonymous letter—this time regarding Plaintiffs personal lockers.

40. Undersheriff Madrid arrived at the scene at approximately 11:00 a.m., and Ms. Tweed took him to Plaintiff's locker in Mesa Cottage.

41. Defendant Tweed informed Undersheriff Madrid that the lock had been cut off and a search already performed. She itemized the pills allegedly found in the locker during her first search, claiming that she had "researched" them and identified them as narcotics.

42. Undersheriff Madrid and Deputy Antoine Whitfield obtained a second search warrant on June 26, 2015, and executed it the same day—a week after Undersheriff Madrid investigated Plaintiff's cut-open locker with Frances Tweed. During this third examination of Plaintiff's locker, the second by law enforcement, Undersheriff Madrid seized several items.

43. Undersheriff Madrid then submitted a "Return and Inventory" for the items seized, stating that he had executed a search of the locker pursuant to the June 5, 2015 search warrant—though that warrant was specifically for Plaintiff's desk in another building, and had been executed the same day it was issued.

44. On July 8, 2015, Undersheriff Madrid submitted an affidavit for Plaintiff's arrest. This affidavit lists the items found during the searches of Plaintiff's lockers and desk, but deliberately omitted the warrantless, pretextual search of Plaintiff's desk in which the planted Clonazepam was found.

45. Although NMBHI, as his government employer, did not have a written policy in place that diminished Plaintiff's expectation of privacy or alerted him to the possibility that it would conduct unconsented searches while he was not present, Plaintiff has determined through the litigation of his State Personnel Office claim that the behavior of the NMBHI Defendants was perpetrated pursuant to their custom of retaliating against anyone who angered them by, for example, making a discrimination claim against NMBHI employees or supporting people who made such claims.

46. According to the June 5, 2015 Affidavit for Search Warrant, the grounds for the deputies' search of Plaintiff's desk were:

a. an anonymous note, written by a person who apparently remains unidentified;

b. the statements of Joe Chavez and Frances Tweed as to what they had discovered in their previous illegal search;

c. pictures of items retrieved in the previous illegal search; and

d. Mr. Chavez's and Ms. Tweed's statements purporting to identify items discovered in said search as narcotics.

47. When Deputy Armijo sought a search warrant for the desk, he was fully aware of the NMBHI search and chose to use information obtained from it. Without the fruits of that initial search, the only basis for the June 5, 2015 search warrant was a typed anonymous note.

48. Deputy Armijo did not conduct the minimal investigation needed to discover that the note was fabricated.

49. When Undersheriff Madrid responded to NMBHI on June 19, 2015, he too was aware that NMBHI had conducted repeated warrantless searches of Plaintiff's belongings. Undersheriff Madrid expressly admitted that he was able to view Plaintiff's locker in Mesa Cottage only because NMBHI employees had forcibly removed Plaintiff's personal lock.

50. Undersheriff Madrid did not conduct the minimal investigation needed to discover that the note was fabricated.

51. According to the Affidavit for Search Warrant that Undersheriff Madrid signed on June 26, 2015, a week after he first viewed Plaintiff's locker with Frances Tweed, the grounds for the second search warrant were:

a. the previous law enforcement search on June 5, 2015;

b. the second anonymous note;

c. Frances Tweed's representation that Plaintiff's locker contained pills, which was based on NMBHI's search of the locker;

d. Ms. Tweed's representation that "she had researched the pill's descriptors and found it to be Hydrocodone"; and

e. Undersheriff Madrid's warrantless investigation of Plaintiff's cut-open locker on June 19, 2015. Without the fruits of NMBHI's prior searches—including their removal of Plaintiff's lock, which allowed Undersheriff Madrid to view Plaintiff's locker without a warrant on June 19, 2015—the only basis for the second search warrant was the typed, fabricated, purportedly anonymous note.

52. On November 6, 2015, Plaintiff was charged with felony Possession of a Controlled Substance; Misdemeanor Possession of a Controlled Substance; and a second felony alleging that he sold or possessed Dangerous Drugs.

> 53. The Hydrocodone that Plaintiff was charged with possessing was prescribed to Plaintiff by his physician.
>
> 54. Despite knowing that the Hydrocodone was lawfully prescribed to Plaintiff, Deputy Armijo and Undersheriff Madrid pressed charges against Plaintiff.
>
> 55. Plaintiff was forced to defend himself against the unsupported charges. In so doing, he incurred substantial attorney's fees, lost wages, suffered emotional distress (of the type and sort that anyone in Plaintiff's situation would be expected to endure rather than of a specific, diagnosable nature) as a result of the fear and apprehension that Defendants' actions caused Plaintiff.
>
> 56. Ultimately, Plaintiff was acquitted of two of the three charges at trial. The third charge was dismissed. Plaintiff was not convicted of any crime as a result of the allegations leveled against him by and/or because of Defendants.
>
> 57. This suit is not barred as a collateral attack on a conviction.

Based upon the aforementioned alleged facts, Defendants Sean Armijo, Anthony Madrid, and Antoine Whitfield, are alleged to have violated Plaintiff's right to be free from unlawful search and seizure under the U.S. Constitution, amend. IV (Count I); have violated Plaintiff's protections against unlawful search and seizure under N.M. Const. art. 2, § 10 (Count II); violated Plaintiff's right to be free from malicious prosecution, granted him under the U.S. Constitution, amend. IV (Count III); and the Board of Commissioners for San Miguel County is alleged to be liable to Plaintiff for the alleged violations of law actionable under the New Mexico Tort Claims Act, NMSA 1978, §41-4-1, *et seq*. (Count VII). There are additional details in each count identifying any acts that were conducted by only one group of Defendants.

Whenever the entirety of the individually named Defendants in this case are referred to jointly, the allegation is made against each Defendant. For example, Plaintiff's allegations in ¶¶ 114 and 115, include:

> 114. In addition, Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and/or Deputy Antoine Whitfield knew that were Plaintiff convicted of the charges brought against him, he would

> be unable to associate with his longtime partner. Defendants actions were therefore also designed to force a separation between the two.
>
> 115. Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez, Deputy Sean Armijo, Undersheriff Anthony Madrid, and/or Deputy Antoine Whitfield did not have a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that the claim could be established to the satisfaction of a court or jury.

There is no reasonable claim that Deputy Sean Armijo, Undersheriff Anthony Madrid, and/or Deputy Antoine Whitfield are not aware that Plaintiff claims that they "did not have a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that the claim could be established to the satisfaction of a court or jury." *Id*. They may not like the claims made against them. They may reject every claim. They may defend this matter in this case until a verdict and even through appeals thereafter. It is not reasonable, however, for them to claim that they do not know Plaintiff's claims against them.

The Complaint is sufficient to make these Defendant aware of the allegations against them and to allow the Court to find that Plaintiff's allegations set forth a plausible case against these Defendants. If the Court disagrees, Plaintiff request permission to provide any additional factual details that the Court finds to be lacking. Ultimately, however, Plaintiff believes that a fair read of his complaint should find that it is sufficient to meet the pleading standard of this Court. Defendants should not be heard to claim that they are confused or uncertain about the allegations made against them when, in fact, they are really only disputing those allegations. The Motion at bar is a Motion to Dismiss and not a Motion for Summary Judgment. Plaintiff requests that the Court deny these Defendants' request to dismiss as that request relates to their claim that they have not been provided with sufficient specificity to understand the claims made against them.

**II. There is no protection available for these Defendants under the Doctrine of Collateral Estoppel.**

***A. The non-attorney magistrate court's bindover order and the pretrial denial of a motion to suppress do not merit the relief sought by Defendants because the trial resulted in an acquittal. As a result of the acquittal, the "full and fair" opportunity test cannot be met. In addition, Plaintiff is not required to have requested an early, "interlocutory" appeal in order to preserve his claim that these Defendants violated his Fourth Amendment rights—his right to appeal that determination would have been rip after trial if he had not been acquitted. As Plaintiff was acquitted, he cannot be fairly said to have fully and fairly litigated the violation of his rights.***

Defendants' second argument is not supported in the law. Collateral estoppel is "the effect of a judgment in foreclosing relitigation of a matter that has been **litigated and decided**." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 376 n.1 (1985)(emphasis added). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine is intended to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id*.

Under New Mexico law, collateral estoppel is available only if the party seeking its application demonstrates that: (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation. *Rodriguez v. Smith*, 2019 WL 4419979, at *3 (N.M. Ct. App. Aug. 15, 2019)(*citing Ideal v. Burlington Res. Oil & Gas Co. LP*, 2010-NMSC-022, ¶ 9, 148 N.M. 228, 233 P.3d 362 (internal quotation marks and citation omitted)).

As noted above, Magistrate Judge Fashing's Opinion is illustrative of the failure of these Defendants' argument. In that case, Defendants in a civil rights sued against public officials who were alleged to have manufactured a prosecution against the then-civil rights Plaintiff, relied on:

> …*Angel v. Torrance County Sherriff's Dept*., No. 04-cv-195 BB/WPL, Doc. 53 (D.N.M. Aug. 23, 2005) to support their argument that "a Magistrate Court's bind-over order definitively establishes probable cause." Doc. 58 at 2. The Court in Angel, however, had sufficient information to determine that the party against whom estoppel was asserted—Mr. Angel—had a full and fair opportunity to litigate the issue of probable cause. Angel, No. 04-cv-195 BB/WPL, Doc. 53 at 6–7. There, the evidence was undisputed that the magistrate court held a preliminary hearing at which several witnesses testified under oath, and Mr. Angel cross-examined those witnesses and also introduced exhibits. *Id*. at 6. At the hearing, Mr. Angel "utilized the 'opportunity [to litigate the issue of probable cause]' to probe the alleged unreliability and bias of the informant, to elucidate the alleged inconsistencies of the State's witnesses, and to present his alibi defense." *Id*. At the conclusion of the preliminary hearing, the magistrate judge "made a formal written finding of probable cause that the charged crimes had been committed and that [Mr. Angel] had committed them, and bound him over for trial." *Id*. at 6–7. Based on this factual record, Judge Black concluded that Mr. Angel was precluded from relitigating the issue of probable cause.
>
> In contrast to the evidence before Judge Black, the only information here is that a preliminary hearing was held, that the state appeared through Tim Scheiderer, and that Mr. Herrera appeared in person and was represented by his attorney, Ben Andrew Mondragon. Doc. 58-1. At the conclusion of the hearing, Magistrate Judge Felix Peña found probable cause that the third egree felony offense of embezzlement over $2500, but not more than $20,000 was committed, and that Herrera committed it, and bound him over for trial. *Id*. But the Court has no information as to who testified, whether Herrera cross-examined the witnesses, what evidence was presented, whether Herrera truly had a full and fair opportunity to litigate the probable cause issue, and any countervailing equities. In short, Garcia and Mares have not met their burden of introducing sufficient evidence for the Court to determine that defensive collateral estoppel applies.

The Court went on in the *Herrera v. Garcia* case to note that,

> Defendants also rely on Judge Browning's decision in *Ysasi v. Brown*, 3 F. Supp. 3d 1088, 1159–65 (D.N.M. 2014) for their assertion that a New Mexico magistrate judge's bindover order precludes Herrera from relitigating the issue of probable cause in this Court. See Doc. 58 at 2–3. In *Ysasi*, however, Judge Browning expressed serious reservations regarding Judge Black's decision in *Angel*, as well as the Tenth Circuit's unpublished opinion affirming that decision. *See Ysasi*, 3 F. Supp. 3d at 1160–65. Judge Browning did "not believe that New Mexico courts would apply collateral estoppel to the Magistrate Judge's determination of probable

> cause at the preliminary hearing, but rather . . . would view the Magistrate Judge's finding of probable cause ***as evidence*** of the existence of probable cause . . . ." *Id*. at 1165. Judge Browning nonetheless applied collateral estoppel against *Ysasi* and granted summary judgment in favor of the defendants "because the Tenth Circuit's determination [in Angel] indicates that it would apply collateral estoppel in [the situation at issue therein]." *Id*.

In similar fashion, in her analysis, Magistrate Judge Fashing turned to a case that provides a more direct analogy to this one. *Herrera, Id*. at p. 10, to wit: *Mata v. Anderson*, 760 F. Supp. 2d 1068, 1105–09 (D.N.M. 2009). In *Mata,* the court held that Plaintiff Juan Mata was not precluded from suing for false arrest and other civil rights violations ***even where*** he had been convicted by jury in New Mexico magistrate court. That conviction was appealed *de novo* and Juan Mata was acquitted in the district court. The result in the district court was sufficient to offset the prior conviction and the prior conviction did not, as a matter of law conclusively establish probable cause to initiate criminal proceedings against Mr. Mata. Given plaintiff's subsequent acquittal on de novo trial in district court, he was not precluded from bringing suit under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, *et seq*. Thus, it seems that the existence of an Order denying a Motion to Suppress is *evidence* of the existence of probable cause, but the jury outright acquittal is evidence that should outweigh that decision—particularly when the acquittal meant Plaintiff Vigil had no mechanism to appeal the pretrial denial of the suppression motion.

Defendants' claim that "[t]he same analysis is conducted in state malicious abuse of process cases. In *Weststar Mortgage Corp. v. Jackson*, 2003-NMSC-002, 'The fact that a plaintiff has been bound over for trial on the criminal matter constitutes prima facie evidence of the existence of probable cause for the detention[,]'" is unfounded. The court's decision in *Westar* relied upon the fact that there was a civil court finding on the issue of the ownership of money in an account, a pretrial decision that probable cause existed to prosecute the criminal defendant, and

the criminal case against the criminal defendant was dismissed on procedural grounds and not on the merits. *Id.*, 2003-NMSC-002, ¶¶ 19-20. In this case, the criminal charges resulted in an acquittal at trial—a decision against the officers who conspired against Plaintiff John Vigil on the merits.

Defendants claim that Mr. Vigil may not file suit over the lack of probable cause and the improper motives of these law enforcement officers because the existence of probable cause is, in these Defendants' view, fully and inarguably established by the non-attorney magistrate's bind-over order, and the criminal trial court's denial of a Motion to Suppress. The Tenth Circuit has held that in considering a motion based upon issue preclusion, the opportunity to appeal a state court's decision is required in order to show that a party had a "full and fair opportunity to litigate" that decision. *Dixon v. Richer*, 922 F.2d 1456, 1459.

In *Dixon v. Richer*, the court explained that after an acquittal all potential appeals are rendered moot. 922 F.2d at 1459. Therefore, the court held that a Colorado court's denial of a pretrial motion to suppress did not preclude relitigation on whether there was probable cause for the arrest in the subsequent civil rights action because the plaintiff was acquitted of all criminal charges and therefore could not appeal the decision. *Id*. A number of courts outside the Tenth Circuit have applied similar reasoning, holding that the inability to appeal a pretrial decision following an acquittal means that the winning party has not been provided a full and fair opportunity to litigate the issues underlying that decision and, as a result, issue preclusion should not be applied. *See Fletcher v. Atex, Inc*., 68 F.3d 1451, 1458 (2d Cir. 1995)("Under New York law, a party has not had a full and fair opportunity to litigate an issue if it has had no opportunity to appeal the adverse finding."); *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989) ("As our court has recognized on prior occasions, a 'full and fair opportunity to litigate' includes the right to

appeal an adverse decision."), *cert. denied*, 494 U.S. 1029 (1990); *Block v. United States Int'l Trade Comm'n*, 777 F.2d 1568, 1572 (Fed. Cir. 1985) (concluding that an order is not preclusive when "there has been no opportunity for appellate review"); *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983) ("[W]e are convinced that the Government did not have a 'full and fair opportunity to litigate' its claim because it could not appeal the interlocutory memorandum.")

Consequently, the Court should deny these Defendants' Motion to Dismiss as it relates to the claim of collateral estoppel. There exists no way for an acquitted criminal court defendant to appeal an interlocutory order on suppression following an acquittal. There is no right to an interlocutory appeal. Had the criminal court jury convicted Mr. Vigil, he would have been required to appeal—and to be successful in that appeal. Having been acquitted, the Court should recognize the acquittal as evidence that outweighs the pretrial decisions and, furthermore, the Court should take note that there is no such animal as an appeal of an acquittal.

***B. Neither Claim Preclusion nor Issue Preclusion Bar Plaintiff's Claims***

There is some confusion in the case law between the concepts of claim preclusion and issue preclusion. Plaintiff contends that neither issue preclusion nor claim preclusion support dismissal. The primary difference is that claim preclusion precludes a claim when there has been a full and fair opportunity to litigate all of the issues arising out of a claim, while issue preclusion is focused on specific issues within one claim. *Kirby v. Guardian Life Ins. Co. of Am.*, 2010–NMSC–014, ¶ 61, 231 P.3d 87 (internal quotation marks and citation omitted)). The purpose of applying claim preclusion "is to protect individuals from multiple lawsuits, to promote judicial economy, and to minimize the possibility of inconsistent judgments." *Moffat v. Branch*, 2002-NMCA-067, ¶ 14, 49 P.3d 673. A party asserting claim preclusion "must establish that (1) there was a final judgment in

an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." *Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54. Clearly the procedural requirements are not met under the case law regarding claim preclusion. Therefore, Plaintiff requests that the Court deny these Defendants' request for dismissal based upon either issue or claim preclusion.

**IV. Dismissal of respondeat superior claims in Count VI should be denied, based upon the existence of underlying tort claims violations.**

Defendants' argument that San Miguel County's Board of Commissioners should not be held liable under the doctrine of respondeat superior relies on the claim that the underlying tort claims counts against these Defendants would be dismissed. For the same reasons that Plaintiff argues that these counts should not be dismissed, the respondeat superior claim made in Count VII should not be dismissed either.

**V. Conclusion**

For all of the reasons set forth herein, Plaintiff prays that the Court deny these Defendants' Motion or, in the alternative, that the Court grant Plaintiff an opportunity to provide additional factual specification in his Complaint, and for such further and additional relief as the Court deems necessary, appropriate, and/or advisable.

Respectfully submitted,
ROMERO & WINDER, P.C.

"**Electronically Filed**"
By: /s/ Joe M. Romero. Jr.
Attorney for Plaintiff
1905 Lomas Blvd. NW
Albuquerque, NM 87104
(505) 843-9776
joe@romeroandwinder.com

I certify that a true and correct copy of the foregoing pleading was delivered to all counsel of record via the Court's CM/ECF electronic document filing and delivery service on the date indicated in the Court-affixed header on this pleading.

"**Electronically Filed**"
By: /s/ Joe M. Romero. Jr.