IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN VIGIL,
      Plaintiff,

v.                                                                             18-CV-00829-SCY-JFR

FRANCES TWEED, in her individual capacity,
CORRINE DOMINGUEZ, in her individual capacity,
ANTONIO COCA, in his individual capacity,
JOE CHAVEZ, in his individual capacity,
NEW MEXICO BEHAVIORAL HEALTH
INSTITUTE, a political subdivision of the
NEW MEXICO DEPARTMENT OF HEALTH,
a division of the STATE OF NEW MEXICO,

DEPUTY SEAN ARMIJO, in his individual capacity
as a deputy employed by the San Miguel County Sheriff's Office,
UNDERSHERIFF ANTHONY MADRID, in his
individual capacity as a deputy employed by the
San Miguel County Sheriff's Office,
DEPUTY ANTOINE WHITFIELD, in his individual capacity
as a deputy employed by the San Miguel County Sheriff's Office, and
BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SAN MIGUEL,

      Defendants.

**PLAINTIFF JOHN VIGIL'S RESPONSE IN OPPOSITION TO MOTION FOR
JUDGMENT ON THE PLEADINGS BY THE STATE DEFENDANTS (DOC. #50)**

Plaintiff John Vigil, through counsel, Romero & Winder, P.C. (Joe M. Romero, Jr.), hereby propounds his Response in Opposition to Motion for Judgment on the Pleadings by the State Defendants (Doc. #50). In opposition thereto, Plaintiff states:

**LEGAL STANDARD[1]**

A Rule 12(b)(6) request to dismiss for failure to state a claim upon which relief can be granted requires the Court to test the legal sufficiency of a party's claim for relief. "[I]f, viewing

---

[1] Taken from this Court's Order in *Mejia v. Pelamati, et al.*, 17cv00095, Doc. #71, available through DRS at: https://www.nmcourt.fed.us/Drs-Web/view-file?unique-identifier=0008628127-0000000000

the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face,'" dismissal is proper. *MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1064 (10th Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's factual allegations against a defendant "must be enough to raise a right to relief above the speculative level." *See Christy Sports, LLC. v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citation omitted). Stated differently, a plaintiff must provide sufficient allegations to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief", *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), the federal pleading duty is not trivial. Rule 8 pleading requirements "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-89.

In deciding a Rule 12(b)(6) motion, a court disregards conclusory statements of law and considers if the remaining factual allegations plausibly suggest the defendant is liable. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In sum, the Tenth Circuit has concluded that the Twombly/Iqbal standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citation omitted). Determining

whether a complaint states a plausible claim for relief "is context specific, requiring the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

## ANALYSIS OF THE MOTION

### I. *Basis for Dismissal Argued by Defendants*

The Motion for Judgment on the Pleadings begins with a factual recitation, with errors that Plaintiff substantially disputes, before making what appears to be seven (7) arguments.

1. The "factual allegations related to the Fourth Amendment claims about a broad conspiracy to plant a pill and fabricate notes are not timely." *Mtn*. at p. 4 As a result, the "applicable statutes of limitations bars any claims based on this new factual scenario." *Id*.;

2. Plaintiff's "conclusory allegations are entirely speculative and implausible, lacking the requisite factual sufficiency to state a claim pursuant to Rule 12(b)(6);" *Id*.;

3. Next, the "four individual defendants are [] entitled to qualified immunity because [Plaintiff's] allegations do not establish Fourth Amendment violations against the state defendants under clearly established law." *Id*.;

4. Defendants also argue that they may not be sued for violations of the New Mexico Constitution, as alleged in Counts I and IV, because such claims are not recognized in the law and are therefore "futile." *Id*.;

5. There is no *respondeat superior* claim available against the New Mexico Behavioral Health Institute of the state under the Tort Claims Act. *Id*.;

6. Defendants further claim that Plaintiff's Revisions in Count V are not sufficient to prevent its dismissal for the same reason that the Court dismissed Count V of the First Amended Complaint. *Id*.; and

7. Finally, Defendants claim that they are entitled to qualified immunity as to the allegations in Count V, even if it were to survive the basis for dismissal that the Court cited in dismissing Count V of the First Amended Complaint.

### II. *As Noted, Defendants' Purported Facts Ignore the Requirement that their Motion Requires the Court to Accept All Well-Pleaded Facts as True. Attempt to Mischaracterize Factual Claims as "Legal Conclusions" Does Not Allow Defendants to Have the Facts as they Wish Them Rather than as Plaintiff Pleads them.*

3

Defendants Motion complains that Plaintiff's Second Amended Complaint relies not on facts, but on "legal conclusions." *Mtn*. at p. 6. While the Court and the parties are all well-versed in the pleading standard, Defendants nevertheless claim that facts that they do not like are not actually facts. This is not the standard. For example, Defendants claim that "the allegations in [Plaintiff's] Second Amended Complaint do not credibly dispute probable cause" (*Mtn*. at 3) because Plaintiff was not charged with the possession of one tablet of Clonazepam, but instead charged with "possession of other drugs including Risperadone" and "possession of Hydrocodone." *Id*.

Defendants cast aspersions on Plaintiff's testimony at trial, see *id*., but still claim that Plaintiff's explanations at trial and his defense in the criminal trial does "not vitiate the existence of probable cause underlying [Plaintiff's arrest]." *Id*. Similarly, Defendants complain that "the Second Amended Complaint does not allege that any of the state defendants were aware of the old prescriptions when the searches occurred." *Mtn*. at p. 4. From the Second Amended Complaint, the Facts that Must be Considered True are:

> 12. In June of 2012, Patricia J. Vigil brought suit against the New Mexico Behavioral Health Institute for discrimination and retaliation pursuant to the New Mexico Human Rights Act, for violations of the New Mexico Whistleblower Protection Act, and for violations of the New Mexico Fraud Against Taxpayers Act. *See, Vigil vs. New Mexico Behavioral Health Institute*, Case No. D-412-CV-2012-279.
>
> 13. Patricia J. Vigil is Plaintiff's longtime domestic partner and this fact was well-known by the named Defendants in this action.
>
> 14. The allegations in Ms. Vigil's lawsuit—many of which included graphic sexual misconduct—went back to 2010 and 2011.
>
> 15. Throughout the course of Ms. Vigil's litigation, Plaintiff supported her. Plaintiff was present at hearings and conferences in his personal capacity in support of Ms. Vigil.

4

16. Plaintiff's employers and supervisors including, but not necessarily limited to Defendants Frances Tweed, Antonio Coca, and Joe Chavez were angered by Plaintiff's support of Ms. Vigil throughout her litigation against NMBHI.

17. Upon information and belief, after Ms. Vigil's lawsuit was settled for a substantial sum, Defendants and others sought to retaliate against Plaintiff for his support of his partner.

18. Specifically, on May 29, 2015, Plaintiff's superiors at the NMBHI, a state hospital, fabricated a typed letter alleging that Plaintiff had narcotics stored in his desk.

19. The fabricated note stated: "I was told and everybody knows that supervisor john vigil has a lot of bottels of the patientes meds in his desk, and some are ativans and narcotics locked away. Also hundreds of dollars of there money to. John vigil is the psych tech supervisor at the arches. We will send to HR patient avocate and Investegations. You cannot tell him how you found out cuase he will know who send this letter."

20. Five days later, three NMBHI employees—Defendants Frances Tweed, Antonio Coca, and Joe Chavez—conducted a search of Plaintiff's desk.

21. At the time of the search, Defendants Frances Tweed, Antonio Coca, and Joe Chavez knew that Plaintiff was on vacation and would not be present.

22. Prior to manufacturing the purported anonymous note Defendants Frances Tweed, Antonio Coca, and/or Joe Chavez used a key to access Plaintiff's locked office and accessed Plaintiff's locked desk cabinet because there "was enough play in the cabinet doors" to allow a single tablet of Clonazepam inside the cabinet.

23. Defendants Frances Tweed, Antonio Coca, and Joe Chavez then searched Plaintiff's desk as a result of the fabricated note—knowing that they would find the Clonazepam that they had planted therein.

24. During their search, Defendants Frances Tweed, Antonio Coca, and/or Joe Chavez found and photographed various items within the desk, some of which they moved, removed, or examined, and then Mr. Chavez placed a new lock on the desk.

25. At the time of the aforementioned unlawful search, Defendant Corrine Dominguez was Plaintiff's supervisor. Upon information and belief, Defendant Corrine Dominguez consented to and/or authorized and/or agreed to the unlawful search of private areas of Plaintiffs workspace based upon the fabricated note.

26. Two days later, at approximately 10:00am on June 5, 2015, Joe Chavez made contact with Deputy Sean Armijo of the San Miguel Sheriff's

5

Department, claiming a possible narcotics larceny had occurred. Mr. Chavez gave Deputy Armijo a copy of the fabricated letter.

27. Deputy Armijo obtained statements from both Mr. Chavez and Frances Tweed, and consequently learned that they had entered Plaintiff's secure office, cut off the lock he had on his desk, conducted a search, and placed a new lock on the desk. Mr. Chavez provided Deputy Armijo with pictures that had been taken in the course of the initial search.

28. On the basis of the above information, Deputy Armijo and Undersheriff Anthony Madrid obtained and executed a search warrant on Plaintiff's desk. In order to enable their search, Joe Chavez removed the lock he had placed on the desk after cutting Plaintiff's own lock off.

29. When their search concluded, the officers submitted a "Return and Inventory" claiming that all the items in the desk had been "found by Under Sheriff Anthony Madrid."

30. These documents deliberately omitted any mention of the previous warrantless search or the individuals who had conducted it to disguise the use of the fabricated note to discover planted evidence previously.

31. About two weeks after deputies conducted their search on Plaintiff's desk, Frances Tweed claimed to receive a second typed anonymous note.

32. The second note was also fabricated to incriminate Plaintiff.

33. The second fabricated note stated: "John paul vigil has 2 lokers in mesa an el paso unit 1 in mesa has a combination and 1 in el pasao has a yellow lock. I no the 1 in el paso has pills. He uses."

34. After claiming to receive this purported anonymous note, Frances Tweed and other NMBHI employees conducted searches on Plaintiffs lockers in both El Paso and Mesa Cottages while Plaintiff was not present. Once again, they cut the locks off in order to perform their searches.

35. The fabricated notes served as a pretext to conduct a search.

36. The fabricated notes were not genuine.

37. The searches perpetrated by Defendants Frances Tweed, Antonio Coca, and/or Joe Chavez were conducted pursuant to the NMBHI's longstanding though unwritten policy of retaliating against people who filed suit against NMBHI, like Plaintiff's longtime partner, or who supported those individuals, as Plaintiff did.

38. The searches conducted by NMBHI employees, including Defendants Frances Tweed, Corrine Dominguez, and Antonio Coca were carried out in connection with their operation of NMBHI.

39. On June 19, 2015, Frances Tweed contacted Undersheriff Madrid to claim that she had received another anonymous letter—this time regarding Plaintiffs personal lockers.

40. Undersheriff Madrid arrived at the scene at approximately 11:00 a.m., and Ms. Tweed took him to Plaintiff's locker in Mesa Cottage.

41. Defendant Tweed informed Undersheriff Madrid that the lock had been cut off and a search already performed. She itemized the pills allegedly found in the locker during her first search, claiming that she had "researched" them and identified them as narcotics.

42. Undersheriff Madrid and Deputy Antoine Whitfield obtained a second search warrant on June 26, 2015, and executed it the same day—a week after Undersheriff Madrid investigated Plaintiff's cut-open locker with Frances Tweed. During this third examination of Plaintiff's locker, the second by law enforcement, Undersheriff Madrid seized several items.

43. Undersheriff Madrid then submitted a "Return and Inventory" for the items seized, stating that he had executed a search of the locker pursuant to the June 5, 2015 search warrant—though that warrant was specifically for Plaintiff's desk in another building, and had been executed the same day it was issued.

44. On July 8, 2015, Undersheriff Madrid submitted an affidavit for Plaintiff's arrest. This affidavit lists the items found during the searches of Plaintiff's lockers and desk, but deliberately omitted the warrantless, pretextual search of Plaintiff's desk in which the planted Clonazepam was found.

45. Although NMBHI, as his government employer, did not have a written policy in place that diminished Plaintiff's expectation of privacy or alerted him to the possibility that it would conduct unconsented searches while he was not present, Plaintiff has determined through the litigation of his State Personnel Office claim that the behavior of the NMBHI Defendants was perpetrated pursuant to their custom of retaliating against anyone who angered them by, for example, making a discrimination claim against NMBHI employees or supporting people who made such claims.

46. According to the June 5, 2015 Affidavit for Search Warrant, the grounds for the deputies' search of Plaintiff's desk were:

   a. an anonymous note, written by a person who apparently remains unidentified;

    b. the statements of Joe Chavez and Frances Tweed as to what they had discovered in their previous illegal search;

    c. pictures of items retrieved in the previous illegal search; and

    d. Mr. Chavez's and Ms. Tweed's statements purporting to identify items discovered in said search as narcotics.

47. When Deputy Armijo sought a search warrant for the desk, he was fully aware of the NMBHI search and chose to use information obtained from it. Without the fruits of that initial search, the only basis for the June 5, 2015 search warrant was a typed anonymous note.

48. Deputy Armijo did not conduct the minimal investigation needed to discover that the note was fabricated.

49. When Undersheriff Madrid responded to NMBHI on June 19, 2015, he too was aware that NMBHI had conducted repeated warrantless searches of Plaintiff's belongings. Undersheriff Madrid expressly admitted that he was able to view Plaintiff's locker in Mesa Cottage only because NMBHI employees had forcibly removed Plaintiff's personal lock.

50. Undersheriff Madrid did not conduct the minimal investigation needed to discover that the note was fabricated.

51. According to the Affidavit for Search Warrant that Undersheriff Madrid signed on June 26, 2015, a week after he first viewed Plaintiff's locker with Frances Tweed, the grounds for the second search warrant were:

    a. the previous law enforcement search on June 5, 2015;

    b. the second anonymous note;

    c. Frances Tweed's representation that Plaintiff's locker contained pills, which was based on NMBHI's search of the locker;

    d. Ms. Tweed's representation that "she had researched the pill's descriptors and found it to be Hydrocodone"; and

    e. Undersheriff Madrid's warrantless investigation of Plaintiff's cut-open locker on June 19, 2015. Without the fruits of NMBHI's prior searches—including their removal of Plaintiff's lock, which allowed Undersheriff Madrid to view Plaintiff's locker without a warrant on June 19, 2015—the only basis for the second search warrant was the typed, fabricated, purportedly anonymous note.

52. On November 6, 2015, Plaintiff was charged with felony Possession of a Controlled Substance; Misdemeanor Possession of a Controlled Substance; and a second felony alleging that he sold or possessed Dangerous Drugs.

53. The Hydrocodone that Plaintiff was charged with possessing was prescribed to Plaintiff by his physician.

54. Despite knowing that the Hydrocodone was lawfully prescribed to Plaintiff, Deputy Armijo and Undersheriff Madrid pressed charges against Plaintiff.

55. Plaintiff was forced to defend himself against the unsupported charges. In so doing, he incurred substantial attorney's fees, lost wages, suffered emotional distress (of the type and sort that anyone in Plaintiff's situation would be expected to endure rather than of a specific, diagnosable nature) as a result of the fear and apprehension that Defendants' actions caused Plaintiff.

56. Ultimately, Plaintiff was acquitted of two of the three charges at trial. The third charge was dismissed. Plaintiff was not convicted of any crime as a result of the allegations leveled against him by and/or because of Defendants.

### III. Defendants' First Argument (Statute of Limitations) Must Fail. This Court has Jurisdiction over the Clarified Allegations in Plaintiff's Second Amended Complaint. The Fact that the State Defendants were Previously Put on Notice that they were Being Sued for Searching Plaintiff's Office Desk was Sufficient for the Relate Back Doctrine to be Invoked.

Defendants' argument that the statute of limitations for the Fourth Amendment violations has run and their attempt to preempt the relation back analysis is not well-founded and should be rejected. The state Defendants who fabricated specific evidence against Plaintiff, manufactured a search that found that—and other—evidence, and sought Plaintiff's criminal prosecution based upon their acts have been provided with all of the notice necessary for the relation-back doctrine to apply. *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379 (1986) is instructive, holding:

> [r]elation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone*, 477 U.S. at 29 (superseded by rule on other grounds).

9

In this case, the parties are the same and the third prong is therefore not at issue. The purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548, 130 S. Ct. 2485 (2010). Though defendants have a "strong interest in repose," repose should not be a "windfall" for those defendants who possesses sufficient notice of impending claims. *Id.* "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Cntr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

Plaintiff further notes that, because the statute of limitations is an affirmative defense, dismissal of claims for failure to file within the statute of limitations is inappropriate unless the Complaint contains within its four corners allegations of sufficient facts to show the existence and applicability of the defense. *Wilson v. Bodnar*, 750 F. Supp. 2d 186 (D. Me. 2010). If there are factual disputes as to either when the limitation period began to run or whether the limitation period was tolled, the affirmative defense that the claims are time barred should not be decided at the motion to dismiss stage. *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56 (S.D.N.Y. 2013). Only where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling should the Court grant a motion to dismiss based upon a statute-of-limitations defense. *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 686 (E.D. Tex. 2009)(*quoting Davis v. Dallas County*, 541 F.Supp.2d 844, 856 (N.D.Tex.2008)).

> IV.   **Defendants' Second Argument, to wit: that Plaintiff's "conclusory allegations are entirely speculative and implausible, lacking the requisite factual sufficiency to state a claim pursuant to Rule 12(b)(6) Must also Fail. Plaintiff has Shown Specific Facts to Allege Conspiracy. Plaintiff is Not Required to Identify which Conspiring**

> ***Defendant Performed Each Discrete Act at the Pleading Stage. Such a Standard is Appropriate only after Discovery and in the context of a Motion for Summary Judgment.***

A great deal of effort is expended to try to set the bar for pleadings higher than it is—this is a Motion for Judgment on the Pleadings and not a Motion for Summary Judgment. Defendants admit that Mr. Vigil "alleges that his domestic partner, Patricia Vigil, brought suit in 2012 against the NMBHI and that Mr. Vigil's support for her in that lawsuit is the genesis for defendants' alleged retaliatory motive. [Doc 38 at ¶15]." *Mtn.* at 12 [internal irony punctuation omitted]. Plaintiff then gives an example of an instance of that support, which Defendants use to argue that he only identified that single activity. *Mtn*. at 12. Plaintiff is not required to identify, in his Complaint, every instance in which he supported Patricia in order to meet the plausibility standard in pleading. He is, instead, required to identify the claim: that he was targeted for his support of his partner and then demonstrate the plausibility of his claim: one activity he was punished for was attending Patricia's court mandated settlement conference. To hold to the contrary would mandate an unreasonably exhaustive narrative in every case.

At the Rule 12(b)(6) stage, the plaintiffs need only plausibility, and the defendant need not know every detail of the claims. *Cf. Twombly*, 550 U.S. at 556 (the requirement for plausibility "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."); *Grubbs v. Kanneganti*, 565 F.3d 180, 190-91 (requiring a plaintiff to know all of the exact details of his claim "is one small step shy of requiring production of actual documentation with the complaint, a level of proof not demanded to win at trial and significantly more than any federal pleading rule contemplates.")

Likewise, Plaintiff is not required to allege facts that demonstrate how each Defendant "about him attending these hearings, when they acquired that knowledge, how they knew why he

was there, why any defendant became angry or why they would decide to retaliate against him years later." *Mtn*. at 13. Plaintiff is required to allege the claims in his Complaint in a manner that "contain[s] sufficient factual matter, accepted as true, to state a claim to relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A plaintiff seeking redress need not prove that each participant in a conspiracy knew the "exact limits of the illegal plan or the identity of all the participants therein." *Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir. 1971). "An express agreement among all the conspirators is not a necessary element of a civil conspiracy. The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result. To demonstrate the existence of a conspiratorial agreement it simply must be shown that there was 'a single plan, the essential nature and general scope of which [was] know to each person who is to be held responsible for its consequences." *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980); *see also Cameo Convalescent Ctr.*, 738 R2d at 841.

Frequently, a conspiracy must be proven with circumstantial evidence because "[r]arely … will there be direct evidence of an express agreement among all the conspirators to conspire." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1260 (7th Cir. 1984). The concerted actions of Defendants throughout their plan to secure Plaintiff's wrongful arrest and prosecution to achieve a specific goal is strong circumstantial evidence there existed an agreement between them.

> **V.     Defendants' Third Argument must also Fail. It is Clearly Established that Intentionally Fabricating and Planting Evidence and Providing Materially False Information in a Criminal Prosecution is Actionable Under 42 U.S.C. § 1983. Defendants are Not Entitled to Qualified Immunity.**

Plaintiff's Second Amended Complaint makes clear allegations against these Defendants: they coordinated and conspired to plant evidence and providing materially false information to law enforcement in order to see John Vigil prosecuted—his innocence notwithstanding. *Chavez. v. Bd. of County Commissioners*, 2001-NMCA-065, 31 P.3d 1027 (Fourth Amendment right to be free from unreasonable searches and seizures.); *also Specht v. Jensen*, 832 F.2d 1516, 1523-24 (10th Cir. 1987) (police officers who search an office and home were not entitled to qualified immunity from civil damages arising out of illegal searches because a writ of assistance is not a search warrant, and it was directed to the sheriff rather than to a police officer); *also Train v. City of Albuquerque*, 629 F. Supp. 2d 1243, 1253 (D.N.M. *6 2009)(rejecting the argument that the claim that a plaintiff was guilty of the underlying criminal charge and was released only because of the exclusionary rule prevents suit). There is no question that it was clearly established at the time of Mr. Vigil's arrest that providing false information make a state actor liable under § 1983. *Norton v. Liddel*, 620 F.2d 1375 (10th Cir. 1980). "No one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth was firmly established as of 1986, in the context of information supplied to support a warrant for arrest." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). Plaintiff has plausibly alleged that the NMBHI Defendants engaged in acts that are actionable under 42 U.S.C. § 1983. "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.' " *Lobozzo v. Colo. Dep't of Corr.*, 429 F. App'x 707, 710 (10th Cir. 2011)(unpublished)(quoting *Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983)).

  **VI.**  ***Defendants' Fourth Argument is Partially Correct, Tort Claims Act Counts Require an Applicable Tort Claims Act Waiver, but Defendants Misapprehend the Waiver at NMSA 1978 § 41-4-9.***

Defendants are correct that suit against a public employee under the New Mexico Tort Claims Act is only permissible when a plaintiff identifies a valid waiver of the statutory immunity afforded by the Act. Plaintiff identifies the waiver that permits suit against these Defendants at ¶¶ 94-95 ("…Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and Joe Chavez, were operating and maintaining a mental institution or clinic within the meaning of the New Mexico Tort Claims Act § 41-4-9. Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and Joe Chavez, were operating the institution negligently and, consequently, immunity is waived for the actions complained of herein. Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and Joe Chavez have admitted that their actions with respect to Plaintiff were undertaken in conjunction with the operation and maintenance of NMBHI.") Plaintiff contends that it is clear from his Complaint that the actions of these Defendants fall within the parameters of the 41-4-9 waiver.

### VII. Defendants' Fifth Argument Must also Fail: where there is a Valid Tort Claim there will be a Respondeat Superior Claim

Plaintiff submits that the existence of *respondeat superior* turns on whether there is an underlying claim. It is not necessary to demonstrate that the entity was the moving force, as in a Monell claim. Plaintiff incorporates the argument about the Tort Claims Act, above, as if fully stated herein.

### VIII. While Plaintiff is Unable to Concur in the Dismissal sought by Defendants' Sixth Argument, Plaintiff Agrees that the First Amendment Claims are not Substantially Different in the Second Amended Complaint.

Plaintiff incorporates the arguments made in support of his First Amendment Counts made in defending his First Amended Complaint for the purpose of avoiding any argument that he has waived his claims. Plaintiff does not seek to belabor the point and accepts that the Court will dismiss this claim. Plaintiff does not address the claim that qualified immunity requires the

dismissal of the First Amendment Claim for the simple reason that he is not able to meet the Court's stated position with regard to the dismissal of Plaintiff's First Amendment Claims in his prior Complaint.

For all of the reasons set forth herein, Plaintiff prays that the Court deny these Defendants' Motion or, in the alternative, that the Court grant Plaintiff an opportunity to provide additional factual specification in his Complaint, and for such further and additional relief as the Court deems necessary, appropriate, and/or advisable.

Respectfully submitted,
**ROMERO & WINDER, P.C.**

"**Electronically Filed**"
By:   /s/ Joe M. Romero. Jr.
Attorney for Plaintiff
1905 Lomas Blvd. NW
Albuquerque, NM 87104
(505) 843-9776
joe@romeroandwinder.com

I certify that a true and correct copy of the foregoing pleading was delivered to all counsel of record via the Court's CM/ECF electronic document filing and delivery service on the date indicated in the Court-affixed header on this pleading.

"**Electronically Filed**"
/s/ Joe M. Romero. Jr.