IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN VIGIL,

    Plaintiff,

v.                                                  Case No. 1:18-CV-00829-SCY-JFR

FRANCES TWEED, et al.,

    Defendants.

### STATE DEFENDANTS' REPLY IN SUPPORT OF
### MOTION FOR JUDGMENT ON THE PLEADINGS (Doc 50)

Defendants Frances Tweed, Antonio Coca, Joe Chavez, Corrine Dominguez and the New Mexico Behavioral Health Institute ("State Defendants") submit their reply to Plaintiff John Vigil's Response in Opposition to their Motion for Judgment on the Pleadings (Doc 55). As explained below, the Court should dismiss the Plaintiff's Second Amended Complaint for numerous reasons.

1. **Plaintiff's Response Fails to Overcome the Statute of Limitation Defense**

Plaintiff's Second Amended Complaint (Doc 38) attempts to amend around the Court's previous order of dismissal by materially changing the conduct underlying Vigil's Fourth Amendment claims. In his response brief, Vigil contends that these amendments merely "clarify" the allegations and that the defendants are still "being sued for searching Plaintiff's office desk …" (Response, Doc 55 at 9) Yet, the new complaint goes far beyond "clarifying" the earlier complaints.

The original and first amended complaints claimed that the defendants had "received" anonymous notes of unknown origin and initiated searches based on those notes. (*See, e.g.,* Doc 1-1 at ¶19) The plaintiff asserted that the searches were unreasonable because the notes were unreliable. (Doc 23 at 9) The defendants "had no idea who wrote the notes." (*Id.*) Vigil also conceded that the state defendants' alleged conduct did not support a malicious prosecution claim. (*Id.* at 10)

The second amended complaint now alleges that the defendants "planted" evidence and "fabricated" the notes themselves to create a pretext for the searches and a criminal prosecution. (Doc 38 at ¶18) This is not a "clarification." "Received" does not mean "planted" and "fabricated". Vigil has simply resorted to claiming that the state defendants deliberately framed him to fend off qualified immunity.

All of plaintiff's current claims are not timely under the applicable statute of limitations based on the four corners of the new complaint. (*See* Response, Doc 55 at 10, arguing that the defense must appear within the four corners of the complaint) The newly alleged conduct preceding the search occurred on or before May 29, 2015 according to the complaint. (*See* Doc 38 at ¶18) Any claim under the New Mexico Tort Claims Act, based on conduct in May 2015, lapsed by the time that Vigil filed his original complaint on April 26, 2018. (Doc 1-1) *See* NMSA 1978, §41-4-15 (A) (two-year statute of limitation). The only remaining question is whether the new allegations in the second amended complaint relate back to the original complaint to salvage the Section 1983 claims. They do not.

As Vigil's response points out, relation back of an amendment is dependent upon four factors, all of which must be satisfied including that "the basic claim must have arisen out of the conduct set forth in the original pleading ..." (*See* Response, Doc 55 at 9, citing *Schiavone v. Fortune,* 477 U.S. 21 at 29 (1986)). Here, the amendments do not relate back because the alleged conduct of planting evidence and fabricating notes does not arise out of the conduct in the original pleading, which had to do with receiving and unreasonably relying upon notes of unknown origin.

This Court has already determined that the defendants are entitled to qualified immunity under the conduct that Vigil alleged in the original complaint. (Doc 30) Vigil's effort to avoid that ruling goes too far by asserting entirely new conduct. The statute of limitations bars any claims based on such new allegations. Accordingly, the Court should dismiss the second amended complaint as a matter of law.

## 2. Plaintiff's Response Fails to Show that the Second Amended Complaint Asserts a Viable Claim Against Each Defendant

Vigil argues that the defendants seek "to set the bar for pleadings higher than it is," that the plaintiff needs only plausibility, and that defendants do not require every detail of the claims. (Response at 11) However, the problem remains that the plaintiff's second amended complaint does not meet the plausibility standard for each of the four defendants.

Take Defendant Corrine Dominguez, for example. Vigil alleges that Ms. Dominguez supervised the defendants, Tweed, Chavez and Coca. Ms. Dominguez

allegedly consented to or ratified the officer searches, which appears to be an effort to assert a claim for supervisory liability against her under Section 1983. However, Vigil's complaint fails to set out plausible factual allegations to support supervisory liability under Section 1983. The Response fails to argue otherwise. (*Compare* Motion, Doc 50, at 14-15, demonstrating the lack of factual allegations to support personal involvement in a constitutional violation or retaliatory motive *with* Response, Doc 55, at 11-12, failing to mention Defendant Dominguez at all.)

Similarly, Vigil does not mention Defendant Antonio Coca in his response. The state defendants' motion pointed out that Defendant Coca's name appeared in the complaint in the disjunctive phrases with other defendants in paragraphs stating conclusory allegations. (*See* Motion, Doc 50, at 15) There is no allegation that Coca had any involvement with any law enforcement, let alone commenced a criminal prosecution, which is the gravamen of the complaint. Again, Vigil does not respond to this argument.

As to Vigil's broad allegations against all defendants, the pleading standards, particularly those applicable to conspiracy claims, require the plaintiff to do more than set forth conclusions that merely show a possible claim; rather, a plaintiff has the burden of showing the right to relief is based on plausible facts. In order to give a defendant proper notice of a conspiracy claim, a plaintiff is well-advised to include, at a minimum, some indication as to who conspired, what they conspired about, where they conspired, when they conspired, and how they conspired. *Wilson v. City of Lafayette*, 2008 U.S. Dist. LEXIS 72384 *27. Vigil contends that

"concerted actions of Defendants throughout their plan to secure Plaintiff's wrongful arrest and prosecution to achieve a specific goal" is sufficient to support an inference of an agreement between them. (Response, Doc 55 at 12) However, parallel action is not enough. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-67 (2007) ("Without more, parallel conduct does not suggest conspiracy . . . ."). There must be a "meeting of the minds" among the alleged conspirators. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152-58 (1970).

Here there is no direct allegation of any particular agreement nor plausible facts about how an agreement was made, when it was made and so forth. Moreover, the allegations of malice or retaliatory motive are entirely nebulous and conclusory. Vigil argues that he does not need to "allege facts that demonstrate how each defendant [knew] 'about him attending these hearings, when they acquired that knowledge, how they knew why he was there, why any defendant became angry or why they would decide to retaliate against him years later.'" (Response, Doc. 55 at 11-12, citing Motion, Doc. 50 at 13) Yet, Vigil's argument loses sight of his burden of setting forth plausible facts supporting all elements of his claims, including malice or retaliatory motive. *E.g., Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017) (elements of malicious prosecution claim). The complaint merely offers an undifferentiated conclusion that that multiple defendants were angered by Mr. Vigil's "support" of Patricia Vigil's lawsuit, without explaining the alleged "support" or why and how any defendant may have become "angered" or even when and how any defendant became aware of Vigil's alleged conduct.

In sum, Vigil's complaint fails to set forth plausible allegations of a conspiracy among all defendants to violate his Fourth Amendment rights, nor does it allege sufficient facts of participation by each state defendant.

## 3. Vigil Has Not Satisfied Either Prong of the Qualified Immunity Analysis

The Plaintiff's Response misapprehends the Defendants' argument on qualified immunity. The gist of the Plaintiff's allegations is that multiple defendants conspired to create false evidence to trigger a police investigation and prosecution. Although there may be common law remedies for this alleged conduct by a civilian, such claims do not automatically become constitutional violations under Section 1983 merely because a government employee is involved. *See Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995). Rather, a plaintiff asserting a Section 1983 violation must first show that each defendant acted under some kind of governmental authority, that is, under color of law, and that the law was clearly established that the employee's alleged conduct violated the plaintiff's constitutional or statutory rights. The traditional definition of acting under color of state law requires that a defendant in a Section 1983 action exercise power "acquired by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). "[I]t is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *Jojola*, 55 F.3d at 494.

Plaintiff's complaint makes no allegation that any defendant's conduct occurred under the color of law. The defendants pointed out these deficiencies in their motion. (Doc 50 at 17) Again, plaintiff did not rebut this argument in his response.

Although Vigil's response cites to various authority on malicious prosecution, nearly all of the cases he cites concern defendants acting as law enforcement officers, not civilians. (*See* Response at 13) The sole exception is *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004); however, the defendant in that case, Joyce Gilchrist, was nevertheless employed with the Oklahoma Police Department as a forensic chemist. Gilchrist not only falsified evidence to link the plaintiff Jeffery Pierce to an alleged rape, she also withheld DNA evidence that conclusively exonerated Pierce from the crime. Though not a police officer, Gilchrist was obviously acting under color of law: she was working as the police department chemist, and in that official capacity, she supplied false scientific evidence and withheld exonerating evidence that caused Pierce's wrongful rape conviction.

In the present case, the four defendants are all civilians. None work for law enforcement or have any affiliation with law enforcement. There is no allegation that any defendant was acting under the color of law in any contact they may have had with law enforcement. Indeed, two of the defendants, Dominguez and Coca, did not even allegedly have contact with law enforcement. Plaintiff has not provided the Court with any clearly established authority supporting Fourth Amendment liability under Section 1983 against each of the four defendants in such a scenario.

Moreover, qualified immunity also applies when, as here, the Plaintiff has not demonstrated a lack of probable cause for the underlying arrest. Regardless of any allegedly planted pill (which the Court may set aside in this context per *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996)), there was unquestionably probable cause for Mr. Vigil's arrest due to possession of other controlled substances, including Hydrocodone. (*See* Doc 50 at 17-18) There were also mishandled patient funds, suggesting theft. (*Id.*)

Neither Vigil's second amended complaint nor his response shows that probable cause did not exist under these circumstances as outlined in criminal informations, affidavits and probable cause determinations. (*See* Doc 50 at 29-34; 42-45) Instead, he suggests that defendants are "casting aspersions" on his proffered trial defense of "old prescriptions" to explain his personal possession of narcotics at the hospital. (Doc 55 at 4) But this argument misses the point. The fact that Vigil later offered explanations at trial does not undo the probable cause that originally existed for a search or arrest warrant. *See Wolford*, 78 F.3d at 489. This is particularly true because he did not offer his prescription defense initially; there is also no allegation that any defendant knew that Vigil had old, expired prescriptions when the searches occurred.

Finally, the defendants also pointed out that issue preclusion also bars Mr. Vigil's claims based on Tenth Circuit authority in *Angel v. Torrance County Sheriff's Department*, 183 Fed.Appx. 707 (10th Cir. 2006). The State District Court Judge's determination of probable cause is preclusive or at the very least creates a

*Reply in Support of*
*Motion for Judgment on the Pleadings*                        8

presumption of probable cause that Vigil has failed to contest. The Plaintiff has also not rebutted these arguments.

4. **Plaintiff's State Law Claims Are Unavailing**

Aside from the statute of limitation defect, Plaintiff Vigil does not challenge the Defendants' argument that he may not assert violations of the New Mexico Constitution under the New Mexico Tort Claims Act. (*See* Doc 50 at 20-21) Accordingly, Count II and any putative Count IV based on alleged violations of the New Mexico Constitution should be dismissed for failure to state a claim.

Vigil contends that he has identified a valid waiver of the NMTCA against the defendants under Section 41-4-9 of the NMTCA for operating the NMBHI "negligently." Other than making a conclusory statement that it "is clear from his complaint that the actions of these defendants fall within the parameters of the 41-4-9 waiver," Vigil does not rebut the defendants' arguments. Specifically, the defendants pointed out that the explicit terms of the waiver must involve claims for "bodily injury, wrongful death or property damage," none of which were implicated in the present case. Furthermore, the allegations of civil rights violations are not plausible negligence against any of the four individual defendants. Vigil also did not receive any medical services from the defendants, which is the subject matter of the NMTCA waiver. Thus, there is nothing within 41-4-9 that waives immunity for negligent actions against these defendants. For these same reasons, the *respondeat superior* claim in Count VI against the employer, NMBHI, also fails. And here again, these NMTCA claims are untimely.

### 5. Vigil Concedes the First Amendment Claim in Count V

Finally, Vigil recognizes that his current allegations do little more than simply restate the allegations he made in the First Amended Complaint that the Court previously dismissed. Vigil states that he "accepts that the Court would dismiss his claim" and makes no effort to contest the defendants' assertion of qualified immunity concerning this count." (Doc. 55 at 14-15)

### 6. Conclusion

For all these reasons, the Court should dismiss Vigil's complaint against the State Defendants entirely as a matter of law as well as determine that defendants are entitled to qualified immunity.

Respectfully submitted,

**LONG, KOMER & ASSOCIATES, P.A.**

*Attorneys for Defendants Tweed, Dominguez, Coca, Chavez and New Mexico Behavioral Health Institute*

*/s/ Mark E. Komer*
MARK E. KOMER
P. O. Box 5098
Santa Fe, NM  87502-5098
505-982-8405
mark@longkomer.com
email@longkomer.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of January 2020, I filed the foregoing **Reply in Support of Motion for Judgment on the Pleadings** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Joe M. Romero, Jr.
joe@romeroandwinder.com

*Attorneys for Plaintiffs*


Christina L.G. Brennan
James P. Sullivan
christina@brennsull.com
jamie@brennsull.com

*Attorneys for State Defendants*


                                        By:    *s/ Mark E. Komer*
                                                      Mark E. Komer