# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOHN VIGIL,

      Plaintiff,

      v.                                        Civ. No. 18-829 SCY/JFR

FRANCES TWEED et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER[1]

      Plaintiff is an employee of a state-run psychiatric hospital in Las Vegas, New Mexico. He brings suit against the hospital, San Miguel County, and an assortment of individual defendants, claiming that a series of searches conducted of his belongings at his workplace was unlawful. Plaintiff's original complaint alleged that his superiors at the hospital conducted a series of unconstitutional, warrantless searches based on an anonymous, typewritten note claiming that Plaintiff stored cash and narcotics in his desk. After the Court found that the individual hospital defendants (hereinafter "State Defendants") had qualified immunity from that claim, Plaintiff amended his complaint to allege that the State Defendants fabricated those anonymous notes and planted the evidence uncovered in his desk and lockers at work. The Court agrees with the State Defendants that the relevant statute of limitations bars these new allegations and that the new allegations do not relate back to the claims in the original complaint. The Court does not, however, dismiss Plaintiff's First Amendment claim, as he has repleaded it to sufficiently allege speech on a matter of public interest. Finally, the Court finds that sovereign immunity protects

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 15, 21, & 22.

the State Defendants from Plaintiff's state law claims. As a result, the Court GRANTS IN PART and DENIES IN PART the Motion For Judgment On The Pleadings By State Defendants (Doc. 50).

The San Miguel County Sheriff's Department and its officers (hereinafter "County Defendants"), like the State Defendants, move to dismiss the claims against them in the amended complaint on grounds that Plaintiff may not relitigate issues a state court has already decided. The Court concurs that Plaintiff may not relitigate the precise issues that the state court decided; however, the state court did not previously decide all issues related to the County Defendants. Therefore, collateral estoppel only bars some of Plaintiff's claims against the County Defendants. As a result, the Court GRANTS IN PART and DENIES IN PART the County Defendant's Motion To Dismiss (Doc. 49).

## BACKGROUND

Plaintiff filed suit in state court on April 26, 2018. Doc. 1-1. On May 30, 2018, while the case was still in state court, he filed a First Amended Complaint. Doc. 1-4. The First Amended Complaint brought causes of action under the Fourth and First Amendments to the United States Constitution, as well as assorted state law claims. Defendants Frances Tweed, Antonio Coca, Joe Chavez, and Corrine Dominguez are sued in their individual capacities as employees of the State of New Mexico. Doc. 1-4 at 2-3 ¶¶ 5-8. Together with Defendant New Mexico Department of Health, who operates the New Mexico Behavioral Health Institute ("NMBHI"), *id.* at 4 ¶ 9, these Defendants are collectively the "State Defendants." Additionally, the First Amended Complaint named Deputies Sean Armijo and Antoine Whitfield, and Undersheriff Anthony Madrid, of San Miguel County, in their individual capacities. *Id.* at 3-4 ¶ 10-12. Together with Defendant Board of County Commissioners of San Miguel County, *id.* at 5 ¶ 13, these Defendants are collectively

the "County Defendants."

The County Defendants removed this case to federal court on August 30, 2018, alleging that this Court has original jurisdiction over the federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367. *See* Doc. 1 ¶¶ 9-10. On August 31, 2018, the State Defendants filed a notice of consent to removal. Doc. 5. The County Defendants filed an Answer on October 5, 2018. Doc. 13.

The First Amended Complaint alleged that a series of searches conducted of Plaintiff's belongings at his workplace was unlawful. The hospital and its employees moved to dismiss the constitutional claims against them, arguing that they are entitled to qualified immunity because the law did not clearly establish any prohibition on workplace searches based on anonymous notes. The Court granted the motion, finding that the State Defendants were entitled to qualified immunity on Plaintiff's federal constitutional claims, and that Plaintiff did not state a claim under the New Mexico Tort Claims Act ("NMTCA"). Doc. 30. The Court also ordered that "Plaintiff will have thirty days to move to amend his complaint to the extent that he is able to do so consistent with this opinion." Doc. 30 at 28.

Plaintiff timely filed the Motion to Amend and the Court granted it. *See* Docs. 31 & 36. Plaintiff filed his Second Amended Complaint ("SAC") on September 22, 2019. Doc. 38. The SAC alleges that the State Defendants fabricated the anonymous note suggesting that Plaintiff kept cash and drugs in his desk at work and, further, that they then planted evidence in Plaintiff's desk during the subsequent search that was based on this fabricated anonymous note. The SAC alleges that the County Defendants were aware the warrantless searches of Plaintiff's belongings were illegal, that they failed to conduct the minimal investigation necessary to determine the anonymous notes were fabricated, and that they knew that Plaintiff had a lawful prescription for

the drugs found in his desk and locker.

The County Defendants filed a motion to dismiss the SAC on December 2, 2019. Doc. 49. In their motion, the County Defendants first argue that Plaintiff claims must be dismissed because Plaintiff fails to properly identify the personal involvement of each individual Sheriff's deputy. Next, the County Defendants argue Plaintiff is precluded from bringing these claims because he litigated and lost on the issue of probable cause in his criminal prosecution, that the prior finding of probable cause prevents Plaintiff from bringing malicious prosecution claims, and that, because Plaintiff's individual claims fail, so do his respondeat superior state claims against the County Board of Commissioners. Plaintiff filed a response in opposition on December 18, 2019. Doc. 51. The County Defendants filed their reply on January 16, 2020. Doc. 56.

The State Defendants filed a motion for judgment on the pleadings on December 6, 2019. Doc. 50. The State Defendants move to dismiss the new factual allegations in the SAC as barred by the relevant statute of limitations. They also argue that Plaintiff does not meet the pleading standard to overcome a defense of qualified immunity; that the Defendants are entitled to qualified immunity even if the claims are properly pled; that issue preclusion applies (they join the County Defendants' motion on this issue); and that the state-law claims should be dismissed on the basis of sovereign immunity. Plaintiff filed a response in opposition on January 14, 2020.[2]

---

[2] Plaintiff filed late responses to both the County Defendants' and State Defendants' motions to dismiss. Although Plaintiff may have obtained consent to file these responses late, the Court could not know that because Plaintiff did not file a notice that the parties had agreed to an extension, as Local Rule 7.4(a) requires. This is why the Court specifically ordered Plaintiff to file a notice explaining his untimely Response to the State Defendants' motion. Doc. 52. Plaintiff did not comply with the Court's Order. Although neither set of Defendants raise a timeliness objection, Plaintiff's counsel is reminded of the requirement to file notices of extensions of briefing. Further, Plaintiffs' counsel is cautioned that even an agreed-to briefing extension does

Doc. 55. The State Defendants filed a reply on January 28, 2020. Doc. 58.

The Court held a hearing on both motions on May 20, 2020. Doc. 65 (Hearing Transcript). Briefing is complete and both motions are ready for decision.

## STANDARD OF REVIEW

The County Defendants filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). Doc. 49 at 1, 5. The State Defendants filed a motion for judgment on the pleadings under Rule 12(c) which, as they note, is addressed under the same standards as a motion filed under Rule 12(b)(6). Doc. 50 at 1, 5. Because both sets of defendants filed answers to the SAC, Docs. 39 & 41, a Rule 12(c) motion is appropriate rather than a motion to dismiss under Rule 12(b)(6). Rule 12(c) permits a litigant to file a motion for judgment on the pleadings after the pleadings have closed, that is, after the filing of the complaint and answer. The Court will construe the County Defendants' motion to dismiss as a motion for judgment on the pleadings, because the difference is not material. "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it

---

not alleviate him from complying with a Court's independent directive to file a notice explaining the reason for a late filing.

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A court considering a challenge under Rule 12(b)(6) may proceed according to a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For purposes of this second prong, the Court "accept[s] the well-pled factual allegations in the complaint as true, resolve[s] all reasonable inferences in the plaintiff's favor, and ask[s] whether it is plausible that the plaintiff is entitled to relief." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (internal citations and quotation marks omitted). "A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the Court required to accept as true legal conclusions that are masquerading as factual allegations. *See Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000). The Court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

**DISCUSSION**

I.     **The State Defendants' Motion**

    A.     Fourth Amendment Claims

In the SAC, Plaintiff alleges that "Defendants Frances Tweed, Antonio Coca, and/or Joe Chavez" fabricated anonymous notes and planted contraband in his desk because they held a grudge against him for his domestic partner's lawsuit against the Hospital. Doc. 31-1 ¶¶ 12-22. This is a different claim than the one in his original complaint; namely, these defendants used unreliable, anonymous notes to conduct searches of his workplace belongings. Doc. 1-1 at 5-7 ¶¶ 19-20, 24-25. In other words, the original claim was for unconstitutional, warrantless searches— not fabrication of evidence. *Id.* at 9-16.

The State Defendants argue that this new evidence-fabrication claim is untimely. As they point out, the first alleged instance of fabrication occurred in May 2015 and the second occurred in June 2015. Doc. 38 ¶¶ 18, 20, 26, 31, 34. The statute of limitations for Plaintiff's § 1983 claims of fabrication of evidence thus expired sometime in May or June of 2018. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (New Mexico's three-year personal-injury statute of limitations applies to § 1983 claims). Plaintiff filed the original complaint on April 26, 2018, Doc. 1-1, and filed the FAC on May 30, 2018, Doc. 1-4, but did not file the SAC until September 22, 2019, Doc. 38. Any new claims in the SAC are untimely under the relevant statute of limitations unless the new claims relate back to an earlier complaint.

"In limited circumstances, Rule 15(c) saves an otherwise untimely amendment by deeming it to 'relate back' to the conduct alleged in the timely original complaint." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 961 (10th Cir. 2012). The rule states:

    An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Applying Subsection (B),[3] the State Defendants argue that the fabrication of evidence claim is not premised on the same "conduct, transaction, or occurrence" as the claims asserted in the original complaint. Doc. 50 at 10. "Interpreting this language, the Supreme Court has held that relation back is improper when the amended claim 'asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'" *Hernandez*, 684 F.3d at 962 (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)). "A new pleading cannot relate back if the effect of the new pleading is to fault the defendants for conduct different from that identified in the original complaint, even if the new pleading shares some elements and some facts in common with the original claim." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (internal quotation marks and alterations omitted); *Hernandez*, 684 F.3d at 962 ("factual allegations that were new and discrete from the facts [the plaintiff] originally pled" did not relate back to an original complaint).

---

[3] Neither party presents any arguments related to Subsections (A) or (C).

Here, although Plaintiff's new claims do not differ in time from his original claims, they differ in type. Plaintiff's amendment transformed a claim of an unconstitutional warrantless search into a claim that the defendants fabricated and planted evidence. Although neither the Tenth Circuit nor the Supreme Court appear to have confronted such a situation, other district courts, including Judge Parker in this district, have held that fabrication-of-evidence claims are so distinct that they do not relate back to claims of other unconstitutional conduct in an original complaint. *Ripley v. Childress*, 695 F. Supp. 507 (D.N.M. 1988). In *Ripley*, Judge Parker noted a preference for resolving cases on their merits and, in furtherance of this goal, stated, "[t]he liberal purpose underlying Rule 15(c) is best protected by allowing an amended complaint in circumstances where defendants have been timely put on notice of the basis of a claim against them." *Id.* at 510. He then applied Rule 15(c) to allow Plaintiff to amend his original allegations that "defendants negligently or in bad faith violated his civil rights by failing to conduct a proper law enforcement investigation which resulted in plaintiff's wrongful arrest" with a several additional allegations, including allegations that the defendants acted maliciously and without probable cause. *Id.* at 507-08, 510. But Judge Parker denied the plaintiff's motion to add allegations that defendants procured "groundless charges against plaintiff based on false, distorted or fabricated evidence." *Id.* at 510-12. Judge Parker determined allegations that defendants themselves falsified, fabricated, or distorted evidence were "qualitatively different" from allegations that the defendant law enforcement officers failed to investigate properly the reliability of information on which they based their charges against plaintiff. *Id.* at 512. Because allegations that defendants themselves falsified and fabricated evidence did not relate back to

allegations that defendants failed to conduct a proper investigation, Judge Parker denied the

plaintiff's Rule 15(c) motion to add these additional charges to the complaint. *Id*.[4]

Similarly, in this case, Plaintiff's SAC alleges that the State Defendants all "conspired to

fabricate the notes and plant the Clonazepam and then to initiate the filing of criminal charges

against Plaintiff, Defendants were fully aware that there was no probable cause to support the

aforementioned allegations." Doc. 38 at ¶ 102.[5] Because Plaintiff's FAC claims that the State

Defendants wrongly relied on anonymous notes to justify their search are significantly dissimilar

from Plaintiff's SAC claims that the State Defendants actually fabricated those notes and planted

evidence, the new allegations in the SAC do not relate back. Plaintiff's response does not address

whether "the amendment asserts a claim or defense that arose out of the conduct, transaction, or

occurrence" set forth in the original pleading, and so provides no reasoned argument against this

conclusion. Like the Tenth Circuit in *Hernandez*, the Court concludes that the amendment

---

[4] Although the Court does not permit the claim as against the State Defendants, the County Defendants are in a different situation. As noted, Judge Parker recognized allegations that defendants themselves falsified, fabricated, or distorted evidence were "qualitatively different" from allegations that the defendant law enforcement officers failed to investigate properly the reliability of information on which they based their charges against plaintiff. *Id*. at 512. Following Judge Parker's reasoning, while Plaintiff's new allegations that the State Defendants fabricated evidence are too dissimilar from Plaintiff's previous claims against the State Defendants to relate back, Plaintiff's new allegations that the County Defendants failed to conduct an investigation adequate enough to discover this fabrication is not too dissimilar from the Plaintiff's previous allegations that the County Defendants failed to adequately investigate the State Defendants' reliance on the anonymous notes. Moreover, the Court's reasoning does not apply to the County Defendants because, unlike the State Defendants, the County Defendants do not argue that the statute of limitations bars Plaintiff's new claims against them.

[5] When alleging the State Defendants "conspired to fabricate the notes and plant the Clonazepam and then to initiate the filing of criminal charges against Plaintiff," Plaintiff summarily includes the County Defendants in this conspiracy. Doc. 38 at 102. Plaintiff, however, offers no facts to support the remarkable allegation that, before the State Defendants ever contacted law enforcement, law enforcement conspired with the State Defendants to fabricate evidence against Plaintiff. Plaintiff clarified at the hearing that his claim against the County Defendants was a failure-to-adequately-investigate claim, not a fabrication-of-evidence claim. Doc. 65 at 45-47.

presents factual allegations that are "new and discrete from the facts originally pled," and finds

additional support for this conclusion in the fact that the plaintiff "does not argue otherwise." 684

F.3d at 962.

The argument Plaintiff does make takes a different tact. Plaintiff argues that a statute-of-

limitations defense is inappropriate "unless the Complaint contains within its four corners

allegations of sufficient facts to show the existence and applicability of the defense." Doc. 55 at

10. But Plaintiff alleges in the SAC that the fabrication of evidence took place in May or June of

2015—outside the statute of limitations period. Doc. 38 ¶¶ 18, 20, 26, 31, 39, 42, 44, 46-51. This

is all that is needed for a motion to dismiss based on untimeliness. There are no "factual disputes

as to either when the limitation period began to run or whether the limitation period was tolled."

*Cf.* Doc. 55 at 10.[6]

Therefore, the Court dismisses Plaintiff's Fourth Amendment claims against the State

Defendants based on the statute of limitations. *See also Washington v. Kenan*, No. 06-cv-156,

2008 WL 5397387, at *7 (C.D. Cal. Dec. 22, 2008) (allegations that "the prosecutor falsified

evidence and fabricated stories" did not relate back to claims in the original complaint that "the

prosecutor acted vindictively by dismissing the case and then refiling the charges"). Specifically,

---

[6] In his current briefing, Plaintiff does not argue for tolling of the relevant statute of limitations under a theory that he only recently discovered evidence supporting his allegations of evidence fabrication. When moving for leave to file the SAC, Plaintiff did allege that he learned the State Defendants fabricated the anonymous notes "through the litigation of Plaintiff's State Personnel Office in which Plaintiff's termination was ultimately rescinded." Doc. 31 at 2. Plaintiff, however, did not elaborate and did not provide any information that would permit the Court to evaluate when this information came to light and whether it would render Plaintiff's claims timely. By contrast, the State Defendants argued in response to Plaintiff's motion to amend that "[t]he record from the State Personnel Board appeal does not support [Plaintiff's] assertion," and they attached much of the record from the State Personnel Board appeal to demonstrate. Doc. 34 at 2-3; *see also* Docs. 34-1, 34-2 & 34-3. Because Plaintiff neither argues that the statute of limitations period should be tolled nor identifies any specific evidence on which a tolling argument could be premised, the issue of tolling is not before the Court.

the Court grants the State Defendants' motion to dismiss Count III (malicious prosecution based on planted and/or fabricated evidence) of the SAC. Further, given the Court's determination that Plaintiff's fabrication claims against the State Defendants are untimely, Plaintiff's claims in Count I (unlawful search and seizure under § 1983) are in the same posture as they were on June 7, 2019, when the Court issued its previous Memorandum Opinion and Order. Thus, for the reasons stated in its previous Memorandum Opinion and Order, the Court grants, on the basis of qualified immunity, the State Defendants' Motion to Dismiss Count I.

      B.    <u>First Amendment Claims</u>

In its previous Memorandum Opinion and Order, the Court held that Plaintiff had not overcome the hurdle of the State Defendants' assertion of qualified immunity because "[t]he descriptions of Plaintiff's speech in the FAC are not sufficient to enable the Court to determine to what extent Plaintiff was complaining about his own employment conditions, and to what extent Plaintiff was speaking for those who cannot speak for themselves due to neglect and mismanagement at a public institution." Doc. 30 at 21.

In response to the Court's order, Plaintiff added the following allegations in the SAC that were not present in the FAC:

- Plaintiff specifically complained to NMBHI employees, including but not limited to Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and/or Joe Chavez that patients were suffering as a result of placing patients who had extremely limited cognitive skills into placements designed for patients who were able to take care of themselves.

- Plaintiff spoke out about other instances involving the mistreatment of patients in his unit at NMBHI.

- He was motivated to do so to bring attention to the patient[s'] well-being and their plight at NMBHI.

Doc. 38 ¶¶ 123-25.

The Court finds that these additions cure the concern over whether Plaintiff was speaking on a matter of public concern, or simply making complaints about the conditions of his own employment. Defendants do not argue that the act of speaking on behalf of institutionalized persons who cannot speak for themselves is not a matter of public concern.

Instead, Defendants argue that "[t]he public concern requirement limits the protection of speech by an employee to speech that the employee makes in his capacity as a citizen, rather than simply as an employee." Doc. 50 at 26. In support, Defendants cite *Garcetti v. Ceballos*, which held that a public employee who speaks "because that is part of what he . . . was employed to do" does not enjoy First Amendment protection. 547 U.S. 410, 421 (2006). In *Garcetti*, the plaintiff was employed to write a memo, and allegedly fired for what he wrote in the memo. Here, no indication exists that Plaintiff's employment duties included discussing the placement of his patients with his supervisors. The Court further disagrees with the argument the State Defendants made at the hearing (Doc. 65 at 11-12): Plaintiff's speech consisted of private complaints to his supervisors rather than a public editorial; therefore, under *Garcetti*, the First Amendment does not protect it. The Supreme Court in *Garcetti* actually rejected such an absolute bar when it wrote: "That Ceballos expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work." *Id.* at 420; *see also Lee v. Nicholl*, 197 F.3d 1291, 1295-96 (10th Cir. 1999) ("Indeed, the weight of case law demonstrates the choice to speak through a private forum, rather than a public one, does not remove the speech from First Amendment protection.").

The State Defendants' next argument is that "the complaint also lacks the other necessary facts to show a plausible First Amendment violation: the dates the protected speech occurred, the actual substance of the communications, the audience for plaintiff's speech, how any of the

defendants were aware of the plaintiff's speech, when they became aware of it and so forth."

Doc. 50 at 27. Defendants, however, do not cite a case saying that a plaintiff must cover each of

these bases to state a First Amendment claim.[7]

Here, Plaintiff alleged that he "specifically complained to NMBHI employees, including

but not limited to Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and/or Joe

Chavez that patients were suffering as a result of placing patients who had extremely limited

cognitive skills into placements designed for patients who were able to take care of themselves."

Doc. 38 at ¶ 123. He further alleged,

> 133. The widespread misclassification of NMBHI residents/patients caused
> people who could not independently function to be assigned to the unit that
> Plaintiff oversaw.
>
> 134. Said unit was not designed to house people who could not, for example,
> manage their own money or take their own medication.
>
> 135. These failings were compounded by the lack of medical staff in the unit in
> which Plaintiff worked.

Doc. 38. Thus, Plaintiff describes the protected speech (misclassification of NMBHI

patients/residents and the harm this was causing) and asserts that he made his comments to each

of the State Defendants. Although Plaintiff does not provide the exact date or dates he made this

speech, Defendants provide no case that says such a lack of precision is fatal to a plaintiff's

---

[7] To succeed on a public-employment First Amendment retaliation claim, "the employee must
show that (1) the speech in question involves a matter of public concern; (2) his interest in
engaging in the speech outweighs the government employer's interest in regulating it; and (3)
that the speech was a substantial motivating factor behind the government's decision to take an
adverse employment action against the employee." *Baca v. Sklar*, 398 F.3d 1210, 1218-19 (10th
Cir. 2005). However, even after 2009 when the United States Supreme Court issued *Iqbal*, the
Tenth Circuit published an opinion stating that a plaintiff is not required to allege each element
of a prima facie case to render his claims plausible. *Khalik v. United Air Lines*, 671 F.3d 1188,
1191-92 (10th Cir. 2012).

claim on a motion to dismiss. The Court finds the allegations in Plaintiff's SAC sufficient to assert a First Amendment claim.

Plaintiff's lack of devotion to this topic in his response brief does not change that result. *See* Doc. 55 at 14-15 ("Plaintiff does not address the claim that qualified immunity requires the dismissal of the First Amendment Claim for the simple reason that he is not able to meet the Court's stated position with regard to the dismissal of Plaintiff's First Amendment Claims in his prior Complaint."). The Court has a *sua sponte* duty to consider whether dismissal is proper, even if a plaintiff files no response at all. *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003). Here, Plaintiff did not concede that his First Amendment claim has no merit. Instead, he explicitly stated he was not waiving his argument but then conceded that the Court would likely determine that he failed to sufficiently allege speech on a public matter. Plaintiff's incorrect prediction that the Court would find the new allegations insufficient to state a claim, however, does not doom his First Amendment claim. Accordingly, the Court will not dismiss Count V (First Amendment retaliation against the State Defendants).

    C.    <u>State-Law Claims</u>

In the Second Amended Complaint, Plaintiff brings claims for unlawful search and seizure under the New Mexico State Constitution (Count II), a state-law tort of malicious abuse of process (Count IV),[8] and a claim for respondeat superior (Count VI). The State Defendants move to dismiss these claims against them, on the grounds that the State has sovereign immunity and Plaintiff fails to plead facts that would fit within a waiver of that immunity. Doc. 50 at 20-24.

---

[8] The state-law tort claim of malicious abuse of process is lacking a header in the SAC. Doc. 38 at 20. Because the Complaint goes from Count III to Count V, the Court infers that paragraphs 108 through 118 comprise Count IV and the header was inadvertently omitted.

In New Mexico, there is no section 1983 equivalent for enforcing provisions of the state constitution. *Barreras v. State of New Mexico Corr. Dep't*, 2003-NMCA-027, ¶ 24, 62 P.3d 770, 776. Therefore, "the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution." *Id.* Instead, litigants must identify "an express waiver of immunity under the [New Mexico] Tort Claims Act." *Id.*

Plaintiff here points to a provision in the New Mexico Tort Claims Act ("NMTCA") that waives the state's sovereign immunity for damage "caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital." NMSA § 41-4-9; *see* Doc. 55 at 14. In its previous Memorandum Opinion, the Court found that the FAC "contains no facts plausibly alleging that State Defendants were engaged in the 'operation' of the hospital when they conducted the search and seizures at issue, or that any operational-level negligence led to the conduct at issue." Doc. 30 at 27.

In his SAC, Plaintiff adds the following allegations:

- The searches conducted by NMBHI employees, including Defendants Frances Tweed, Corrine Dominguez, and Antonio Coca were carried out in connection with their operation of NMBHI.

- At times relevant to the Tort Claims and State Constitutional Violations alleged in this Complaint, Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and Joe Chavez, were operating and maintaining a mental institution or clinic within the meaning of the New Mexico Tort Claims Act § 41-4-9. Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and Joe Chavez, were operating the institution negligently and, consequently, immunity is waived for the actions complained of herein.

- Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, and Joe Chavez have admitted that their actions with respect to Plaintiff were undertaken in conjunction with the operation and maintenance of NMBHI.

Doc. 38 ¶¶ 38, 94-95.

16

The State Defendants argue that Plaintiff's NMTCA claim is still subject to dismissal because Plaintiff makes no allegations of negligence. Doc. 50 at 22-23. To be sure, Plaintiff alleges that the State Defendants "were operating the institution negligently." Doc. 38 ¶ 94. Although this statement has value in that it sets forth a legal theory under which Plaintiff is proceeding, it is a conclusion, not a fact. Because this conclusory statement is not "entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), Plaintiff must support this legal theory with factual allegations. But, even assuming searches were part of the State Defendants' operation of the facility, as Plaintiff alleges, Plaintiff does not explain how that operation was negligent. Instead of alleging facts that could support a finding of negligence, Plaintiff alleges the State Defendants fabricated a letter as cover to perform an illegal search.[9] In other words, Plaintiff supports an allegation of negligent conduct through the assertion of intentional conduct. The state-law claims in the SAC all include allegations of intentional conduct: illegally searching Plaintiff's belongings and maliciously prosecuting him. Doc. 38 ¶¶ 66-97, 108-18. And intentional conduct is outside the scope of the waiver in NMSA § 41-4-9.[10] Therefore, the Court grants the motion to dismiss Count II (claims under the New Mexico constitution) and Count VI (respondeat superior claim under the NMTCA) as against the State Defendants on the ground of sovereign immunity.

---

[9] The relevant section of Plaintiff's response cites only paragraphs 94 and 95 of the Second Amended Complaint, quoted in full above. Doc. 55 at 14.

[10] Section 41-4-9 also requires a plaintiff to allege bodily injury, wrongful death, or property damage. Although the allegations of physical damage to Plaintiff's property are miniscule, the SAC does allege that one of the State Defendants destroyed his lock. Doc. 38 ¶¶ 24, 27-28.

## II.     The County Defendants' Motion

### A.     The SAC Contains Individual Allegations.

In support of their motion to dismiss the claims against them in the SAC, the County Defendants argue that Plaintiff "fails to properly identify the direct and personal involvement of each individual Sheriff's deputy." Doc. 49 at 6 (heading); *see also* Doc. 49 at 6-7 (the SAC "asserts blanket allegations against 'defendants' which are insufficient to state a claim upon which relief can be granted."). In support of this argument, the County Defendants cite the Tenth Circuit's decision in *Robbins v. Oklahoma*, which states, when the defense of qualified immunity is at stake, "it is particularly important that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). The court proscribed the "use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom." *Id.* Although *Robbins* happens to be a qualified immunity case, the County Defendants cite it for what it says about pleading standards, not for what it has to say about qualified immunity. To the contrary, County Defendants attack the sufficiency of Plaintiff's SAC without raising the defense of qualified immunity.[11] This point is crucial to the Court's present analysis, which is limited to the question the County Defendants' argument raises: did Plaintiff identify specific conduct in which the individual County

---

[11] The County Defendants' brief is primarily devoted to discussing the issue of collateral estoppel and does not delve into qualified immunity. In their brief, the County Defendants do not use the term "qualified immunity," do not set forth the legal framework for a qualified immunity analysis, do not address whether alleged individual actions were constitutional and, if they were not, whether clearly established law at the time existed to put the County Defendants on notice that their actions were unconstitutional.

Defendants allegedly engaged. If the answer to this question is "yes," the Court goes no further. In other words, the Court only considers whether Plaintiff made allegations of individual conduct, not whether County Defendants would enjoy qualified immunity for such conduct.

The County Defendants correctly point out that the SAC frequently makes collective allegations in which all County and State Defendants are lumped together. Doc. 38 ¶¶ 58-146; Doc. 49 at 6 (referring to the allegations accusing all Defendants of "planting evidence, fabricating evidence, and otherwise fabricating claims that Plaintiff broke the law as well as the decision to forward that information to the prosecutor's office" in Doc. 38, ¶¶ 60, 62; and the federal malicious abuse of process claim brought pursuant to § 1983 against all defendants collectively for "false claims, planted evidence" in Doc. 38, ¶ 104). Such allegations are not entitled to the assumption of truth. Nor are Plaintiff's conclusory allegations of conspiracy. *E.g.*, Doc. 38 ¶ 102 (County Defendants "conspired to fabricate the notes and plant the Clonazepam and then to initiate the filing of criminal charges against Plaintiff"); *id.* ¶ 113 (accusing County Defendants of "fabricating claims with a primary motive to achieve the illegitimate end of punishing Plaintiff for speaking out in support of his partner and/or against mismanagement and other protected activities"). Moreover, setting aside these conclusory allegations, the SAC contains no factual support for any "conspiracy" claims against the County Defendants.

Yet, the Court cannot grant the County Defendants' motion, because a portion of the SAC *does* specify which defendants did what to whom. Doc. 38 ¶¶ 26-56. For example, the SAC alleges that Undersheriff Anthony Madrid conducted a warrantless search on June 19, 2012. Doc. 38 ¶¶ 39-41, 46. He and Deputy Antoine Whitfield then used the fruits of that allegedly illegal search to obtain a second search warrant on June 26, 2015 and executed it the same day. *Id.* ¶ 42. In addition, the SAC alleges that Deputy Sean Armijo and Undersheriff Madrid "did not conduct

the minimal investigation needed to discover that the [anonymous] note was fabricated." *Id.* ¶¶ 48, 50. It also alleges that Deputy Armijo and Undersheriff Madrid "pressed charges" against Plaintiff for possessing Hydrocodone even though they knew that Hydrocodone had been lawfully prescribed to him. *Id.* ¶¶ 53-54.

The County Defendants do not address these, or any of the other individual allegations, Plaintiff sets forth in paragraphs 26-56. Section IV(A) of the County Defendants' motion to dismiss, Doc. 49 at 6-7, is based on the premise that Plaintiff failed to properly identify the direct and personal involvement of each individual Sheriff's deputy. Because this premise fails, so does the portion of the County Defendants' motion to dismiss that is based on this premise.

B.   <u>Collateral Estoppel Prevents Plaintiff From Relitigating The Legality Of The State Defendants' Searches Or Whether Probable Cause Supported The Criminal Prosecution, But The Court Does Not Grant The County Defendants' Motion To Dismiss In Full.</u>

The County Defendants move to dismiss Plaintiff's claims of unlawful search and seizure and malicious prosecution against them (Counts I, II, III, and IV) on the grounds that these claims are barred by collateral estoppel. Doc. 49 at 7-13.[12] The County Defendants argue that because Plaintiff unsuccessfully litigated these issues in prior criminal proceedings, he cannot relitigate them now. The Court agrees that the precise issues decided by the state court cannot be relitigated. However, the state court did not make any determinations about whether the County Defendants' actions were legal, and collateral estoppel therefore does not preclude the claims against the County Defendants in Counts I and II. In addition, the finding that probable cause

---

[12] The State Defendants also adopt this collateral estoppel argument to argue that the malicious prosecution claim against them should be dismissed. Doc. 50 at 19-20. As explained above, the Court dismisses the malicious prosecution claim against the State Defendants on other grounds. Therefore, this section only addresses whether the claims in the SAC against the County Defendants should be dismissed on the basis of collateral estoppel.

existed bars federal malicious prosecution claims, it does not bar *state* malicious prosecution

claims. Therefore, the Court dismisses Count III but not Count IV.

During Plaintiff's criminal case, a state magistrate judge conducted a preliminary

examination[13] and issued a bind-over order finding probable cause for the three charges. Doc.

49-1. In subsequent proceedings before a state district judge, Plaintiff filed a motion to suppress.

Doc. 49-2. The motion argued that all evidence seized from Plaintiff's desk, locker, and office

between June 3 and June 26, 2015 had to be suppressed because the workplace searches were

unconstitutional. *Id.* at 1-11. The district court held an evidentiary hearing, listened to argument

from both counsel, permitted direct and cross-examination of multiple witnesses, and ordered

further briefing. Doc. 49-3. After supplemental briefing, the district court entered an order

denying the motion, finding that Plaintiff had no reasonable expectation of privacy in his

workplace desk, cabinet, and locker. Doc. 49-4 at 1. The court additionally found that the State

Defendants acted reasonably in searching these areas for work-related employee misconduct. *Id.*

at 2.

The County Defendants therefore argue that Plaintiff is precluded from bringing any

claims "that they used the fruits of . . . allegedly illegal searches conducted by [the State]

Defendants to justify their applications for search warrants," because Plaintiff already litigated

this claim in state court and lost. Doc. 49 at 7-11.

1.    Collateral estoppel

"Under proper circumstances, federal courts accord preclusive effect to issues decided by

state courts." *Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir. 1991) (internal quotation marks

---

[13] "[T]he purpose of the preliminary hearing [i]s to determine whether 'there was probable cause
to believe that the defendant committed an offense.'" *State v. Lopez*, 2011-NMSC-035, ¶ 8, 258
P.3d 458, 462 (quoting NMRA 5-302(C); alteration omitted).

omitted). "[T]he Supreme Court held a federal court considering a section 1983 action must give preclusive effect to a state court judgment to the same extent a court in that state would." *Hubbert v. City of Moore, Okla.*, 923 F.2d 769, 772 (10th Cir. 1991) (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). "[T]he preclusive effect of a prior state court judgment is defined by that state's law." *Id.* (applying Oklahoma law).

Looking to New Mexico law, "[t]he doctrine of collateral estoppel fosters judicial economy by preventing the relitigation of ultimate facts or issues actually and necessarily decided in a prior suit." *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 10, 115 N.M. 293, 297 (internal quotation marks omitted). To successfully invoke issue preclusion, the moving party must demonstrate that:

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Id.* Even if all of these elements are met, the court must still "determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation." *Id.* It is the burden of the party opposing collateral estoppel to bring any considerations under this factor to the court's attention. *DeLisle v. Avallone*, 1994-NMCA-012, ¶ 16, 117 N.M. 602, 606 ("[T]he party opposing estoppel would ordinarily be in the better position to know if there were grounds showing unfairness."). The trial court should apply collateral estoppel in a manner which furthers the aim of preventing relitigation of issues. *Id.* ¶ 9.

Plaintiff does not contest the four elements of collateral estoppel. Doc. 51 at 9-13. Plaintiff was a party to the criminal proceedings, the cause of action (criminal charges) was different from the cause of action in this case (§ 1983), and the issue of the legality of the warrantless searches and the issue of probable cause were both litigated (Docs. 49-1, 49-2 & 49-

3) and determined (Docs. 49-1 & 49-4). Nonetheless, Plaintiff argues he did not have a "full and fair opportunity to litigate" either the warrantless searches or the probable cause determination. The Court considers in turn arguments related to each issue.

### 2.    State-court denial of the motion to suppress

The Court agrees that Plaintiff is precluded from relitigating the constitutionality of the workplace searches. This, however, does not lead to the dismissal of any of the claims against the County Defendants, who conducted law enforcement searches.

Plaintiff argues that the application of collateral estoppel on the suppression issue would be unfair because he did not have the right to appeal the denial of his suppression motion given his ultimate acquittal. Doc. 51 at 12-13. In New Mexico, a criminal defendant may take an interlocutory appeal of any order that "involves a controlling question of law as to which there is substantial ground for difference of opinion" and where an immediate appeal "may materially advance the ultimate termination of the litigation." NMSA § 39-3-3(A)(3). The language of the rule makes clear that the court retains discretion to accept such an appeal. *Id.* Thus, although Plaintiff is correct that he did not have an automatic right to appeal, he did have an avenue to *request* an appeal.[14]

---

[14] The New Mexico Court of Appeals "rarely grants an interlocutory appeal from the denial of a motion to suppress evidence in a criminal case." *State v. Vallejo*, No. 32,845, 2013 WL 5743612, at *1 (N.M. Ct. App. Sept. 30, 2013). But that it is rare does not mean that it never happens. *Id.* (granting the interlocutory appeal in that case over the state's objections). There have been a handful of cases where the court of appeals or supreme court grant such interlocutory appeals. *State v. Ortega*, No. 33,117, 2013 WL 6663413 (N.M. Ct. App. Nov. 12, 2013); *State v. Haidle*, 2012-NMSC-033, 285 P.3d 668; *State v. Evans*, 2009-NMSC-027, 210 P.3d 216; *State v. Coyazo*, 1997-NMCA-029, 936 P.2d 882; *State v. Affsprung*, 1993-NMCA-056, 854 P.2d 873; *State v. Clark*, 1991-NMCA-082, 112 N.M. 500, 816 P.2d 1122; *State v. Gutierrez*, 1985-NMCA-034, ¶ 4, 699 P.2d 1078, 1080; *State v. Boeglin*, 1983-NMCA-075, 666 P.2d 1274; *State v. Gonzales*, 1981-NMCA-131, 637 P.2d 1237; *State v. Powell*, 1981-NMCA-090, 632 P.2d 1207; *State v. Aguirre*, 1978-NMCA-029, 579 P.2d 798; *State v. Duran*, 1977-NMCA-087, 568 P.2d 267; *State v. Galvan*, 1977-NMCA-013, 560 P.2d 550; *State v. Santillanes*, 1976-NMCA-

In connection with his assertion that he had no opportunity to appeal, Plaintiff points to *Dixon v. Richer*, where the Tenth Circuit found collateral estoppel to be improper due to the lack of appeal right. 922 F.2d 1456, 1459 (10th Cir. 1991). The court explained that the plaintiffs in that case "did not have an opportunity to appeal the court's ruling on their motion to suppress." *Id.* "Before a final judgment, such an interlocutory appeal would have been improper, and after the judgment (the Dixons were acquitted), an appeal was rendered moot." *Id.* Unfortunately for Plaintiff, *Dixon* does not control here. While it is a published opinion and contains a very clear pronouncement on the topic, it is an application of Colorado law, not New Mexico law. In Colorado, defendants may not file an interlocutory appeal of the denial of a motion to suppress under any circumstances. *People v. Bland*, 884 P.2d 312, 322 (Colo. 1994) (en banc). By contrast, as discussed above, New Mexico provides a statutory opportunity to at least request that the court exercise its discretion to allow an appeal. The record does not show whether Plaintiff made such a request. Nonetheless, because such requests are rarely granted, the Court assumes for the sake of argument that Plaintiff had no opportunity to appeal.

Nonetheless, unlike Colorado, New Mexico has indicated that the opportunity to appeal is not dispositive in the "full and fair" calculus. In *Shovelin v. Central New Mexico Electric Co-op., Inc.*, the defendant argued that, because the other party had the opportunity to appeal the adverse decision, the court should be "particularly inclined" to apply collateral estoppel. 1993-NMSC-015, ¶ 18 n.5, 115 N.M. 293, 301 n.5. The court agreed that "whether a party availed himself of the opportunity to appeal an administrative decision is an important factor to consider when determining whether collateral estoppel is applicable," but disagreed with the premise that it was

---

112, 557 P.2d 576; *Matter of Doe*, 1976-NMCA-011, 547 P.2d 566; *State v. Ledbetter*, 1975-NMCA-107, 540 P.2d 824.

"particularly" important: instead, "this is merely one factor that we must consider in the calculus of whether a party had the full and fair opportunity to litigate." *Id.*

Similarly, in *Rex, Inc. v. Manufactured Housing Committee of the State of New Mexico, Manufactured Housing Division*, the court found that arbitration proceedings should, in general, have preclusive effect. 1995-NMSC-023, ¶¶ 12-14, 119 N.M. 500, 504-05. In that case, the court found that the parties had a "full and fair opportunity to litigate" during arbitration, but noted resolution of this issue may be context dependent. *Id.* ¶¶ 14, 29. The court did not address the right to appeal as being a factor but, in general, the right to appeal an arbitration is even more limited than the conditional right granted in § 39-3-3. *See K.R. Swerdfeger Constr. v. UNM Bd. of Regents*, 2006-NMCA-117, ¶ 13, 140 N.M. 374, 378, 142 P.3d 962, 966 ("there are strict limitations on judicial review of arbitration awards"). Therefore, while lack of a meaningful opportunity to appeal is a factor in New Mexico, it is not a dispositive factor.

Thus, the Court finds that New Mexico has rejected Plaintiff's position that the lack of an appeal right conclusively means collateral estoppel is unfair. Instead, New Mexico has instructed trial courts to consider the party's "prior incentive for vigorous defense, inconsistencies [with one or more previous judgments in favor of the defendant], procedural opportunities, and inconvenience of forum." *Silva v. State*, 1987-NMSC-107, ¶ 12, 106 N.M. 472, 476. None of these factors weigh in Plaintiff's favor. In the prior proceeding he faced criminal felony charges and, therefore, had extremely vigorous incentive to litigate this issue. He points to no inconsistent prior judgments or inconveniences of the forum. And he had full procedural rights in the proceeding—experienced counsel, an evidentiary hearing under the rules of evidence, the right of cross-examination, and ample supplemental briefing. By contrast, *Shovelin* found collateral estoppel inappropriate where the prior adjudication took place before a non-lawyer

hearing officer and without the benefit of the rules of evidence, rules of procedure, or discovery. 1993-NMSC-015, ¶¶ 17-20. The Court finds that Plaintiff here received a "full and fair" opportunity to litigate the validity of the workplace searches in his criminal case.

In sum, the Court finds that Plaintiff may not relitigate the legality of the searches conducted by the State Defendants. However, this does not mean that Plaintiff is precluded from relitigating the legality of the *County Defendants'* searches. The state court found that the State Defendants' searches of Plaintiff's workplace belongings were constitutional under *O'Connor v. Ortega*, 480 U.S. 709, 725-26 (1987) (plurality op.)). The *O'Connor* standard does not apply to the conduct of law enforcement officers. 480 U.S. at 724-25. The County Defendants do not explain their assertion that "Plaintiff's claims against the sheriff's deputies are wholly premised on the supposed illegality of the NMBHI searches." Doc. 49 at 11. This assertion fails to acknowledge allegations in the SAC that the County Defendants negligently failed to investigate the anonymous notes, criminally prosecuted plaintiff for conduct they knew was legal, and conducted at least one warrantless search. Therefore, although the Court will not permit Plaintiff to re-litigate the issue of whether the workplace searches were legal, this restriction does not preclude Plaintiff for arguing that the law enforcement searches were illegal for other reasons. Therefore, the doctrine of issue preclusion does not bar the claims in Counts I and II against the County Defendants.

### 3.   The magistrate judge's bind-over order

The analysis is slightly different with respect to the probable cause determination by the magistrate judge during Plaintiff's preliminary hearing. Doc. 49-1. Defendants cite to an unpublished Tenth Circuit decision applying collateral estoppel under New Mexico law in identical circumstances. *Angel v. Torrance Cnty. Sheriff's Dep't*, 183 F. App'x 707 (10th Cir. 2006). The decision, however, lacks substantive reasoning on the issue, and there is not much to

analyze with respect to its persuasiveness. For his part, Plaintiff cites to an opinion from this

Court declining to follow *Angel*. Doc. 51 at 10-11; *Herrera v. Garcia*, No. 16-cv-1366 LF-JHR,

2018 WL 481877, at *4-6 (D.N.M. Jan. 18, 2018).[15] In *Herrera*, Judge Fashing declined to apply

collateral estoppel in the same circumstances:

> the only information here is that a preliminary hearing was held, that the state
> appeared through Tim Scheiderer, and that Mr. Herrera appeared in person and
> was represented by his attorney, Ben Andrew Mondragon. At the conclusion of
> the hearing, Magistrate Judge Felix Peña found probable cause that the third
> degree felony offense of embezzlement over $2500, but not more than $20,000
> was committed, and that Herrera committed it, and bound him over for trial. But
> the Court has no information as to who testified, whether Herrera cross-examined
> the witnesses, what evidence was presented, whether Herrera truly had a full and
> fair opportunity to litigate the probable cause issue, and any countervailing
> equities.

2018 WL 481877, at *5. The County Defendants acknowledge that, likewise, in this case they

will never be able to present information of this type because "the Magistrate Court only retained

records until 2017 and the Complaint was first filed in April 2018." Doc. 56 at 6.

But the Court disagrees that information of this sort is necessary. Defendants do not have

to prove that Plaintiff actually called witnesses, cross-examined them, or presented evidence.

The relevant question is whether he had the *opportunity* to do so. *Cf. Martinez v. Hooker*, 601 F.

App'x 644, 649 (10th Cir. 2015) ("As such, she had a full and fair opportunity to litigate—

opportunity being the operative word."). New Mexico state law provides criminal defendants

with all the procedural rights necessary for a "full and fair" opportunity to litigate probable cause

at the preliminary hearing. At a preliminary hearing, defendants have the right to counsel, they

---

[15] Plaintiff also relies on an opinion by Judge Browning, *Mata v. Anderson*, 760 F. Supp. 2d
1068 (D.N.M. 2009). Doc. 51 at 11. However, Judge Browning has since revisited this issue and
determined that it is more appropriate to follow the Tenth Circuit's decision in *Angel v. Torrance
County Sheriff's Department*, and application of collateral estoppel in these circumstances is
appropriate. *Ysasi v. Brown*, 3 F. Supp. 3d 1088, 1159-65 (D.N.M. 2014).

have the right to call witnesses and cross-examine the state's witnesses, and the rules of evidence apply. *State v. Massengill*, 1983-NMCA-001, ¶ 7, 99 N.M. 283, 284-85; *State v. Gonzales*, 1992-NMSC-003, ¶ 20, 113 N.M. 221, 227, 824 P.2d 1023, 1029, *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 20, 306 P.3d 426; *see also* NMRA 6-202(B)(5). The "opportunity" and the "motive to develop testimony" at trial and at a preliminary hearing are similar. *Massengill*, 1983-NMCA-001, ¶ 8; *Lopez*, 2011-NMSC-035, ¶¶ 8-9. It is the opportunities that matter, not Plaintiff's voluntary choice (if he made one) not to avail himself of those opportunities. *Martinez*, 601 F. App'x at 649.

Plaintiff also argues that a "jury outright acquittal is evidence that should outweigh" the magistrate's determination of probable cause. Doc. 51 at 11. The problem with this argument is that these two legal standards are vastly different. Probable cause is a relatively low burden for the state. "Probable cause exists when the facts and circumstances warrant a belief that the accused had committed an offense . . . ." *State v. Ochoa*, 2004-NMSC-023, ¶ 9, 93 P.3d 1286. "[T]he degree of proof necessary to establish probable cause is more than a suspicion or possibility but less than a certainty of proof." *State v. Evans*, 2009-NMSC-27, ¶ 11, 210 P.3d 216 (internal quotation marks omitted). "Thus, the existence of probable cause is reviewed within the realm of probabilities rather than in the realm of certainty." *State v. Sanchez*, 2015-NMCA-084, ¶ 14, 355 P.3d 795, 800. In contrast, a jury may convict only if it is satisfied the defendant committed the crime beyond a reasonable doubt. NMRA UJI 14-5060. A jury does not determine probable cause. A jury acquittal simply says nothing about the existence of probable cause to bring the prosecution. And it is certainly not evidence that Plaintiff lacked a "full and fair" opportunity to contest probable cause in his criminal proceedings.

Plaintiff also notes that a non-attorney made the probable cause determination in his case. Doc. 51 at 9-10. In *Ysasi v. Brown*, Judge Browning raises concerns that preclusive effect may not be appropriate for proceedings conducted by non-lawyers. 3 F. Supp. 3d 1088, 1165 (D.N.M. 2014). Ultimately, however, Judge Browning decided that the Tenth Circuit would nonetheless apply collateral estopped in these circumstances. *Id.* The Court shares Judge Browning's concern about giving preclusive effect to the legal decision of a non-lawyer but, like Judge Browning, ultimately determines that collateral estoppel is appropriate. First, New Mexico does not appear to require that an attorney conduct the prior proceeding in order to apply collateral estoppel. For example, *Mascarenas v. City of Albuquerque* gives preclusive effect to a City of Albuquerque personnel board hearing in which the presiding officer is not required to be an attorney; he or she can be an attorney *or* "a person experienced in employer-employee relations or personnel administration." 2012-NMCA-031, ¶ 36, 274 P.3d 781, 790-91 (citing Albuquerque Code of Ordinances § 3-1-26(C)). The Court also notes that while the magistrates in New Mexico who make the preliminary probable cause determination in a criminal case can be non-attorneys, criminal defendants can effectively appeal their decisions by filing a motion to dismiss the prosecution for lack of probable cause. In deciding this motion to dismiss, the district court judge will conduct a de novo review of the probable cause determination. *See* Doc. 65 at 67. In situations such as this where a criminal defendant has the opportunity to have a state district court judge review a magistrate judge's decision, the Court is less concerned about the equities of applying collateral estoppel based on the decision of a non-lawyer.[16]

---

[16] This analysis does not apply when law enforcement fabricates the probable cause evidence presented to both the magistrate judge and district court judge. For instance, if the state dismissed charges against a criminal defendant because it learned that police had fabricated the evidence against him, it would be fundamentally unfair to collaterally estop him from bringing a malicious prosecution claim against the police based on the earlier, tainted determination of

In sum, the Court finds that Plaintiff may not relitigate: (1) the legality of the State Defendants' searches; and (2) whether probable cause supported the criminal prosecution against him. As a result, the Court dismisses Count III (federal malicious prosecution) in its entirety with prejudice. The finding that probable cause supported the prosecution necessarily bars Plaintiff from bringing federal malicious or retaliatory prosecution claims. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006); *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007).

Unlike its federal counterpart, however, under New Mexico law, "a misuse of process may be established by showing *either* a lack of probable cause *or* a procedural impropriety." *Weststar Mortgage Corp. v. Jackson*, 2003-NMSC-002, ¶ 15, 133 N.M. 114, 122 (emphasis added). Thus, the County Defendants' are incorrect that in New Mexico "the lack of probable cause is an essential element for plaintiff to prove his claim . . ." *See* Doc. 49 at 13. Although the County Defendants have demonstrated that Plaintiff's state-law misuse of process claim cannot succeed by way of the first potential avenue – lack of probable cause – the County Defendants did not address whether Plaintiff's state-law misuse of process claim could proceed through the second potential avenue – procedural impropriety. The Court therefore does not dismiss Count IV (state malicious prosecution) based on collateral estopped.

Finally, the County Defendants ask for dismissal of Count VII (respondeat superior claims), on the ground that vicarious liability cannot attach where there is no underlying tort. Doc. 14 at 13-14. This argument fails because the Court is not dismissing every state claim in the

---

probable cause. The criminal defendant, unable to prove fabrication in the early stages of his case, would not have had a full and fair opportunity to litigate the probable case determination. But that is not this case. Plaintiff does not cite specific facts establishing that the County Defendants fabricated evidence. Instead, the SAC accuses the State Defendants of doing so, Doc. 39 ¶ 18, and at the hearing, Plaintiff admitted the SAC does not really accuse the County Defendants of conspiring with the State Defendants to do so before they were even called to the hospital on June 5, 2015. Doc. 65 at 47:14-25.

Second Amended Complaint against the County Defendants. Therefore, the Court denies the request to dismiss the claims in Count VII against the County Defendants.

## **CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART the Motion For Judgment On The Pleadings By State Defendants (Doc. 50) and GRANTS IN PART and DENIES IN PART the County Defendant's Motion To Dismiss (Doc. 49). The Court dismisses:

- Count I (federal Fourth Amendment claim) as against the State Defendants.

- Count II (state-law unlawful search claim) as against the State Defendants.

- Count III (federal malicious prosecution claim) as against all Defendants.

- Count IV as against the State Defendants, to the extent Plaintiff intended to plead a state-law tort claim of malicious abuse of process as Count IV.

- Count VI (respondeat superior state-law claims against the State Defendants).

The remaining claims in the Second Amended Complaint are:

- Count I (federal Fourth Amendment claim) as against the County Defendants.

- Count II (state-law unlawful search claim) as against the County Defendants.

- Count IV as against the County Defendants, to the extent Plaintiff intended to plead a state-law tort claim of malicious abuse of process as Count IV.

- Count V (federal First Amendment claim) against the State Defendants.

- Count VII (respondeat superior state-law claims against the County Defendants).

SO ORDERED.

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent