**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JOHN VIGIL,

       Plaintiff,

    v.                                         Civ. No. 18-829 SCY/JFR

FRANCES TWEED et al.,

       Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING RULE 54(b) MOTION[1]**

       The Court has issued two interlocutory Memorandum Opinion and Orders in this case. The first opinion issued on June 7, 2019 and dismissed Plaintiff's claims in the First Amended Complaint against Defendants Frances Tweed, Corrine Dominguez, Antonio Coca, Joe Chavez and the New Mexico Department of Health (the "State Defendants"), with leave to replead those claims. Doc. 30. After Plaintiff filed his Second Amended Complaint, the second Memorandum Opinion issued on June 16, 2020 and dismissed a number of claims against the State Defendants (but not all), and declined to dismiss the claims against Defendants Sean Armijo, Antoine Whitfield, Anthony Madrid, and the Board of County Commissioners of San Miguel County (the "County Defendants"). Doc. 66.

       Plaintiff now moves for entry of partial final judgment under Federal Rule of Civil Procedure 54, to allow Plaintiff to appeal the dismissal of the claims against the State Defendants. *See* Doc. 74 at 5 ("Plaintiff does not intend to appeal the portion of the Court's Memorandum Opinion and Order that related to the County Defendants."). If the Rule 54(b)

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 15, 21, & 22.

request is granted, Plaintiff requests that the Court also stay its proceedings pending resolution of the appeal. Doc. 74 at 3-4.

About an hour after filing the Rule 54(b) motion, Plaintiff filed a Notice of Appeal. Doc. 75. The Tenth Circuit has granted Plaintiff an extension of time through August 31, 2020 to pay the filing fee and file a docketing statement. *See* Order, *Vigil v. Tweed*, No. 20-2100 (10th Cir. July 31, 2020). In his reply brief, Plaintiff therefore requests this Court issue a decision on his motion prior to August 31. Doc. 80 at 3-4.

Although the filing of a Notice of Appeal normally divests a district court of jurisdiction, the Court finds it retains jurisdiction at least for the purpose of ruling on the present motion. *See Kersh v. Gen. Council of the Assemblies of God*, 804 F.2d 804 F.2d 546, 547 n.1 (9th Cir. 1986) (district court retains jurisdiction to issue a Rule 54(b) certification after a notice of appeal is filed); *Gabarick v. Laurin Mar. (Am.), Inc.*, 650 F.3d 545, 551 (5th Cir. 2011) ("Although the filing of a notice of appeal ordinarily divests the district court of jurisdiction over those aspects of the case involved in the appeal, the district court retains jurisdiction to enter a Rule 54(b) certification." (citations omitted)).

In the Tenth Circuit, "if the appellant obtains a 54(b) certification after the notice of appeal was filed, we will deem the notice of appeal to ripen as of the date of certification and will accept the jurisdiction pursuant to the savings provision of Fed. R. App. P. 4(a)(2)." *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645 (10th Cir. 1988). If, however, no certification has been obtained, "the case will be dismissed summarily for lack of appellate jurisdiction." *Id.* at 646. Logically, when a district court denies a plaintiff's Rule 54(b) motion, it will not enter a partial final judgment and the Tenth Circuit may summarily dismiss the appeal. In such a situation, the district court will reacquire jurisdiction over the case.

A.      Legal Standard

Because both Memorandum Opinions adjudicated less than all claims against less than all the parties, the orders were interlocutory and not immediately appealable. Rule 54(b), however, provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). "Rule 54(b) entries are not to be made routinely." *Oklahoma Tpk. Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001) (internal quotation marks omitted). "[A] certification under Rule 54(b) is only appropriate when a district court adheres strictly to the rule's requirement that a court make two express determinations." *Id.*

"First, the district court must determine that the order it is certifying is a final order." *Id.* This determination "is subject to *de novo* review because it is a question of law." *Id.* "To be considered 'final,'" an order must be 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980)). "[A] 'claim' is generally understood to include all factually or legally connected elements of a case." *Id.* "Thus, a judgment is not final for the purposes of Rule 54(b) unless the claims resolved are distinct and separable from the claims left unresolved." *Id.* at 1243. "To determine whether separate appeals will be redundant, courts consider whether the allegedly separate claims turn on the same factual questions, whether they involve common legal issues, and whether separate recovery is possible." *Jordan v. Pugh*, 425 F.3d 820, 827 (10th Cir. 2005).

"Second, the district court must determine that there is no just reason to delay review of the final order until it has conclusively ruled on all claims presented by the parties to the case." *Id.* at 1242. This determination "is reviewed only for abuse of discretion." *Id.* "In making these determinations, the district court should act as a 'dispatcher' weighing Rule 54(b)'s policy of

3

preventing piecemeal appeals against the inequities that could result from delaying an appeal." *Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005). "[T]he task of weighing and balancing the contending factors is peculiarly one for the trial judge, who can explore all the facets of a case." *Curtiss-Wright Corp.*, 446 U.S. at 12.

      B.      <u>The Orders Were Not Final.</u>

      The claims Plaintiff wishes to appeal are not "distinct and separable from the claims left unresolved." *Cf. Oklahoma Tpk. Auth.*, 259 F.3d at 1242.

      There are three general categories of resolved claims against the State Defendants:

      (1) The Court granted qualified immunity to the State Defendants on Plaintiff's Fourth Amendment claims in the First Amended Complaint that the workplace search of his desk and lockers was unreasonable under *O'Connor v. Ortega*, 480 U.S. 709, 725-26 (1987) (plurality op.). *See* Doc. 30 at 8-19.

      (2) The Court dismissed Plaintiff's claims in the Second Amended Complaint that the State Defendants fabricated evidence against him, because the Court found that the new claims did not "relate back" to the date of the filing of the First Amended Complaint. The statute of limitations therefore barred these claims. Doc. 66 at 7-12. Based on this reasoning, the Court dismissed Plaintiff's malicious prosecution claim, and noted that the unlawful search claims were in the same posture as they were on June 7, 2019. *Id.* at 12. The Court dismissed these claims for the same reasons as stated in the first Memorandum Opinion. *Id.*

      (3) The Court dismissed the state-law claims against the State Defendants on the basis of sovereign immunity and because Plaintiff failed to plead facts that would fit within a waiver of that immunity. Doc. 66 at 15-17. The relevant waiver of sovereign immunity requires a showing of operational-level negligence, and the Court found that Plaintiff asserted only intentional

conduct in the Second Amended Complaint (namely, fabricating a letter as cover to perform an illegal search). *Id.* at 17.

In comparison, there is one unresolved claim against the State Defendants and one general category of unresolved claims against the County Defendants:

(1) The Court denied the State Defendant's motion for qualified immunity on the First Amendment claim as repleaded in the Second Amended Complaint. Doc. 66 at 12-15. The Court found that Plaintiff sufficiently alleged he was speaking on a matter of public concern and that he made his comments to each of the State Defendants. *Id.*

(2) The Court denied the County Defendants' motion to dismiss the illegal search, malicious prosecution, and state-law claims in the Second Amended Complaint. *Id.* at 18-29. The Court summarized Plaintiff's claims against the County Defendants as follows: Undersheriff Anthony Madrid conducted a warrantless search on June 19, 2012; Undersheriff Madrid and Deputy Antoine Whitfield then used the fruits of that allegedly illegal search to obtain a second search warrant on June 26, 2015 and executed it the same day; Deputy Sean Armijo and Undersheriff Madrid did not conduct the minimal investigation needed to discover that the anonymous note was fabricated; and Deputy Armijo and Undersheriff Madrid pressed charges against Plaintiff for possessing Hydrocodone even though they knew that Hydrocodone had been lawfully prescribed to him. Doc. 66 at 19-20. Notably, the County Defendants chose not to assert the defense of qualified immunity as part of their motion to dismiss.

The resolved claims are factually and legally intertwined with the unresolved claims. "One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). Presenting "alternative theories for recovery" based on "the same nucleus of facts" does not

transform one claim into two separate claims. *Jordan*, 425 F.3d at 827-29; *accord Baca Land & Cattle Co. v. New Mexico Timber, Inc.*, 384 F.2d 701, 702 (10th Cir. 1967) (multiple counts setting forth "a different legal theory," each "based on the same transactions," do not present multiple claims); *Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222, 1225 (10th Cir. 2002) ("claims were based on identical facts" are not separable or distinct). In order to be eligible for certification, claims based on "a common factual predicate" must be "fully separable." *McKibben v. Chubb*, 840 F.2d 1525, 1529 (10th Cir. 1988).

The State Defendants' conduct is not "fully separable" from the County Defendants' conduct. For one thing, Plaintiff's own Second Amended Complaint expressly links the two sets of claims. For example, Plaintiff alleges that "[w]hen Deputy Armijo sought a search warrant for the desk, he was fully aware of the [State Defendants'] search and chose to use information obtained from it." Doc. 38 at ¶ 47. "Deputy Armijo did not conduct the minimal investigation needed to discover that the note was fabricated [by the State Defendants]." *Id.* ¶ 48. "When Undersheriff Madrid responded to NMBHI on June 19, 2015, he too was aware that [the State Defendants] had conducted repeated warrantless searches of Plaintiff's belongings. Undersheriff Madrid expressly admitted that he was able to view Plaintiff's locker in Mesa Cottage only because [the State Defendants] had forcibly removed Plaintiff's personal lock." *Id.* ¶ 49. "Undersheriff Madrid did not conduct the minimal investigation needed to discover that the note was fabricated [by the State Defendants]." *Id.* ¶ 50.

The Court's conclusion as to the lawfulness of the State Defendants' conduct thus affects the lawfulness of the County Defendants' conduct. Although a different legal standard applies to the different searches—and the Court expressly declined to find that "Plaintiff's claims against the sheriff's deputies are *wholly* premised on the supposed illegality of the [State Defendants']

6

searches" (Doc. 66 at 26; emphasis added)—these claims are clearly neither distinct nor separable.

A quick hypothetical will suffice to illustrate this point. As the case currently stands, the State Defendants are not required to litigate the question of whether they fabricated the anonymous notes. The County Defendants, however, may be obliged to litigate Plaintiff's claim that they failed to investigate whether the notes were reliable and/or fabricated.[2] Doc. 66 at 10 n.4. Thus, the question of whether the notes were in fact fabricated could be relevant to the case as it proceeds in district court. If the Tenth Circuit—in parallel with district court proceedings— were to disagree with this Court and find that the State Defendants are not entitled to a statute-of-limitations defense, the State Defendants could return to district court only to find themselves in the middle of litigation—conducted by the two other parties who do not represent their interests—on whether the State Defendants fabricated the anonymous notes. Such a result would be inefficient, and moreover, unfair.

Furthermore, as the State Defendants point out, the unresolved First Amendment claim against them is not separable from the resolved illegal-search and state-law claims. Although the First Amendment claim presents distinct issues of law, it is factually intertwined with the illegal-search and state-law claims because the searches and prosecution Plaintiff alleges were illegal also form the conduct Plaintiff alleges was done in retaliation for his exercise of free speech. Doc. 38 ¶¶ 126-27, 130, 138. Thus, although the First Amendment, Fourth Amendment, and state-law claims present distinct *legal* questions, those legal questions arise from "the same nucleus of facts" and so *Jordan*, 425 F.3d at 827-29, precludes the Court from granting Plaintiff's Rule 54(b) motion.

---

[2] To be clear, this is a hypothetical situation. The Court is not ruling on any potential defenses the County Defendants might raise with respect to this claim.

C.      The Facts Do Not Support A No-Just-Reason-For-Delay Finding.

On the second prong of the Rule 54(b) test (that there be no just reason to delay entering a final judgment) the Court balances the policy against piecemeal appeals with the hardships that the lack of an immediate appeal would cause Plaintiff. Plaintiff has not shown that lack of an immediate appeal will cause him undue hardship. True, having the Tenth Circuit resolve the Court's decisions on an interlocutory basis reduces the risk that there will be multiple trials because the issues that might be appealed will be resolved before, rather than after, trial. But this is true whenever a district court dismisses some, but not all, of a plaintiff's claims. And, while the risk of multiple trials would be reduced, this benefit would come at the expense of having one very delayed trial that would come after issues were appealed on a piecemeal basis. The Tenth Circuit precedent cited above makes clear that the interest in avoiding piecemeal appellate litigation and a delayed trial on the merits outweighs the interest in reducing the risk of multiple trials. Reducing the risk of multiple trials, then, is not in itself a sufficient reason to grant a Rule 54(b) motion.

Plaintiff also argues that "reasonable minds may disagree" about the outcome of the legal questions resolved in the June 2020 Memorandum Opinion. Doc. 74 at 2. Even if this were the relevant standard—which it is not, as reasonable minds often disagree about the outcome of legal issues—it appears that Plaintiff has misunderstood the basis for the Court's ruling in this Memorandum Opinion. Plaintiff states that "A core portion of the Court's ruling was the determination that in order to pursue a civil rights claim for the initial search of his desk, Plaintiff was required to request a disfavored and discretionary request for interlocutory appeal." Doc. 74 at 1. The Court interprets Plaintiff as referring to the issue of whether a criminal defendant in New Mexico who unsuccessfully moves to suppress evidence allegedly discovered during an illegal search must seek a discretionary state interlocutory appeal in order to preserve the right to

later pursue a civil claim based on the allegedly illegal search. Plaintiff apparently understands the Court's ruling to be that collateral estoppel applies because Plaintiff, as a state criminal defendant, did not seek a state interlocutory appeal. If this is Plaintiff's understanding, Plaintiff misapprehends the Court's Memorandum Opinion; the Court actually assumed the opposite of what Plaintiff appears to believe the Court held. In other words, the Court used an assumption in its analysis that resolved this issue *in favor* of Plaintiff. Specifically, the Court assumed the award of a state interlocutory appeal from the denial of a motion to suppress evidence was so rare that it did not constitute a meaningful opportunity for appeal. Doc. 66 at 24 ("because such [interlocutory appeal] requests are rarely granted, the Court assumes for the sake of argument that Plaintiff had no opportunity to appeal"). The Court then considered whether, assuming Plaintiff had no opportunity to appeal, collateral estoppel would nonetheless apply under New Mexico law. *Id.* at 24-25.

Although, for reasons unrelated to whether Plaintiff sought interlocutory appeal as a state criminal defendant, the Court ultimately decided the overarching collateral estoppel issue unfavorably to Plaintiff, it decided the specific issue Plaintiff indicates he wants to appeal to the Tenth Circuit in a manner favorable to Plaintiff. Thus, the primary issue it appears Plaintiff wants to appeal is an issue that was actually resolved (through an assumption) in his favor. The Court declines to certify for appeal an issue that it decided in favor of the party seeking the Rule 54(b) certification.

Finally, the Court notes that Plaintiff's stay request undermines the equities of his position. When a district court grants a Rule 54(b) motion, some claims typically go forward in district court while other distinct claims simultaneously go forward on appeal. In such a situation, no delay occurs because the claims, being distinct, can simultaneously and efficiently

move forward in the separate forums. Here, however, Plaintiff does not propose that his appellate claims move forward with his claims that remain before this Court. Instead, Plaintiff requests that the Court stay its proceedings pending a decision from the Tenth Circuit. Such a result would run afoul of a key component to Rule 54(b) certification; namely, that no just reason exists to delay entering a final judgment on the dismissed claims. Importantly, not only would resolution of the non-appealed claims against the State Defendants (who would be parties in the appellate action) be delayed under Plaintiff's proposal, resolution of the claims against the County Defendants, who would not even be parties in the appellate action, would also be delayed. Thus, under the second prong of the Rule 54(b) test, the Court finds that the equities do not weigh in favor of entering the requested partial final judgment.

The Court **DENIES** Plaintiff's Motion For Entry Of Partial Judgment Pursuant To Fed.R.Civ.P.54 And Request To Stay The Instant Case Pending The Outcome Of The Appeal (Doc. 74).

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE