# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JOHN VIGIL,

    Plaintiff,

vs.                                                 Cause No. 18-CV 00829 SCY/JFR

FRANCIS TWEED,
ANTONIO COCA,
JOE CHAVEZ,
NEW MEXICO DEPARTMENT OF HEALTH,
a political subdivision of the New Mexico Department of Health,
DEPUTY SEAN ARMIJO, in his individual capacity
as a deputy employed by the San Miguel County Sheriff's Office,
UNDERSHERIFF ANTHONY MADRID, in his individual capacity
as a deputy employed by the San Miguel County Sheriff's Office,
DEPUTY ANTOINE WHITFIELD, in his individual capacity
as a deputy employed by the San Miguel County Sheriff's Office,
and the BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SAN MIGUEL

    Defendants.

## COUNTY DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS ON THE BASIS OF QUALIFIED IMMUNITY AND OTHER GROUNDS

**COME NOW** Defendants, Antoine Whitfield, Board of County Commissioners of the County of San Miguel, Sean Armijo, and Anthony Madrid, by and through their attorneys of record, Brennan & Sullivan, and pursuant Fed. R. Civ. P. 12(c) and the doctrine of qualified immunity submits the instant motion. Pursuant to D. N.M. LR-Civ. 7.1(a), a copy of this motion was provided to Plaintiff's counsel and Plaintiff's counsel opposes this motion. In support of this motion, County Defendants state as follows:

## I. SUMMARY OF PERTINENT ALLEGATIONS IN THE COMPLAINT

1. On May 29, 2015, Plaintiff's superiors at NMBHI fabricated a typed letter that asserted that Plaintiff had narcotics stored in his work desk. Second Am. Comp., Doc. 38, ¶ 18.

2. NMBHI employees then conducted a search of Plaintiff's work desk and planted a pill of Clonazepam therein. Doc. 38, ¶ 23. NMBHI employees searched and photographed Plaintiff's desk and then placed a new lock on it. Doc. 38, ¶ 24.

3. An NMBHI employee contacted the San Miguel County Sheriff's Department and reported a possible narcotics larceny. Deputy Armijo was provided with statements from two NMBHI employees and was shown photographs from NMBHI's initial search of the desk. Doc. 38, ¶ 28.

4. A search warrant was then obtained by Deputy Armijo for Plaintiff's desk. A search warrant was issued and NMBHI removed the lock they had placed on Plaintiff's desk for the deputies. Doc. 38, ¶ 28

5. The search warrant identified the specific place to be searched, the items anticipated to be found, the factual sources for the belief that a crime may have been committed, Plaintiff's suspected control of the areas to be searched and items anticipated to be found, and how the items anticipated to be found were suspected evidence of a crime. *See* Search Warrant and Aff. For Search Warrant, June 8, 2015, attached hereto as **Exhibit A**.

6. Plaintiff contends that the search warrant was deficient as it failed to mention the previous search by NMBHI. Doc. 38, ¶ 30

7. A second anonymous note was received by NMBHI which stated that Plaintiff had pills stored in his workplace locker and is a drug user. Doc. 38, ¶ 33.

8. This prompted NMBHI to enter and search Plaintiff's workplace lockers where additional narcotic pills were found. Doc. 38, ¶¶ 34, 41.

9. NMBHI again contacted the sheriff's office to report their findings. NMBHI allowed Undersherriff Madrid to view the contents of Plaintiff's locker. With this information, Undersheriff Madrid and Antoine Whitfield obtained a second search warrant. Doc. 38, ¶¶ 42, 51(e).

10. Like the first, this second search warrant identified the specific place to be searched, the items anticipated to be found, the factual sources for the belief that a crime may have been committed, Plaintiff's suspected control of the areas to be searched and items anticipated to be found, and how the items anticipated to be found were suspected evidence of a crime. *See* Search Warrant and Aff. For Search Warrant, June 26, 2015, attached hereto as **Exhibit B**.

11. The grounds for both search warrants were the anonymous notes, the statements of NMBHI employees, photographers by NMBHI of the searches, identification of pills as narcotics by NMBHI. Doc. 38, ¶¶ 46, 51.

12. The searches revealed the presence of Hydrocodone, Risperidone, and Lorazepam/Ativan in Plaintiff's work areas. *See* Criminal Information, 11/6/2015, attached as **Exhibit C.**

13. Plaintiff further complaints that Deputy Armijo and Undersherriff Madrid failed to conduct an investigation into the anonymous note's authenticity. Doc. 38, ¶ 48, 40.

14. Plaintiff asserts that Deputy Armijo and Undersheriff Madrid pressed charges against him, despite knowledge that the Hydrocodone was lawfully prescribed. Doc. 38, ¶ 54.

15. Plaintiff was charged with felony possession of a controlled substance, misdemeanor

possession of a controlled substance, and selling/possession of dangerous drugs. Doc. 38, ¶ 52

16. Plaintiff was acquitted of two of the three charges after a full jury trial. The third charge was dismissed. Doc. 38, ¶ 56.

17. Plaintiff asserts that Defendant Deputies Armijo, Madrid, and Whitfield violated Plaintiff's 4th Amendment rights and New Mexico Constitutional rights searching his workplace areas. Doc. 38, Count I, ¶ 62,

18. Plaintiff asserts that his New Mexico Constitutional rights were violated when Deputies Armijo, Madrid, and Whitfield failed to conduct an "independent police investigation into the anonymous notes" and relied upon the fruits of allegedly illegal NMBHI searches. Doc. 38, Count II, ¶¶ 70, 88, 89.

19. Plaintiff asserts a state-law tort claim against Deputies Armijo, Madrid, and Whitfield for malicious abuse of process by initiating criminal proceedings against Plaintiff without probable cause. Doc. 38, Count III, ¶¶ 102, 109, 115.[1]

20. Plaintiff asserts a claim for respondeat superior against Defendant County for state tort claims. Doc. 38, Count VII, ¶ 145.

21. The searches of Plaintiff's workplaces by NMBHI were legal. *See* Mem. Op. and Order, Doc. 66, June 16, 2020, p. 30.

22. The criminal prosecution of Plaintiff was supported by probable cause. *See* Mem. Op. and Order, Doc 66, June 16, 2020, p. 30.

---

[1] Plaintiff's Second Amended Complaint contains no Count IV; it appears that the Court's order with respect to the remaining state law claim for abuse of process is meant to refer to Count III. *See* Mem. Op. and Order, Doc. 66, June 16, 2020, p. 31.

## II. ARGUMENT

### A. STANDARD OF REVIEW: QUALIFIED IMMUNITY

According to the Tenth Circuit, to survive a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008), citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). However, conclusory allegations, naked assertions, and recitations of the elements of a cause of action fail to meet federal Complaint pleading standards. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

The doctrine of qualified immunity protects government officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable government office would have known. *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010). Qualified immunity provides "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity serves to prevent undue interference with public affairs by cutting short baseless litigation against public officials. Because allowing a case to go to trial effectively results in the loss of qualified immunity, the issue "should be resolved as early as possible." *Oliver v. Woods*, 209, F.3d 1179, 1185 (10th Cir. 2000).

Where a defendant has asserted qualified immunity, a plaintiff seeking to overcome the defense, "must satisfy a heavy two-part burden by showing: (1) the defendant violated a constitutional or statutory right, and (2) the right was clearly established" at the time of the conduct in question. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007). If the plaintiff fails to carry

either part of the two part burden, the defendant is entitled to qualified immunity. *Albright v. Rodriquez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

The second part of the plaintiff's burden, showing that the law was clearly established, "must be undertaken in light of the specific context of the case, not as a broad proposition." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), reversed on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that courts have the option to decide the law was not clearly established before reaching the issue of whether a constitutional violation occurred). Qualified immunity operates to protect public officials by ensuring that before they are subjected to suit, they are put on notice that their conduct is unlawful. *Saucier* at 533 U.S. 194, 206.

In determining whether a defendant is entitled to qualified immunity, a court cannot assume that a constitutional violation exists. See *Kirkland v. St. Vrain Valley School Dist. No. RE-1J*, 464 F.3d 1182, 1188-89 (10th Cir. 2006). Instead, the Supreme Court has instructed that the contours of the right that was allegedly violated must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton,* 483 U.S. 635, 639 (1987). In 2011, the Supreme Court issued a pointed reminder that generalized claims alleging a constitutional violation are insufficient to show that the law is clearly established.

> We have repeatedly told courts … not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.

*Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2084 (2011) (citations omitted).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every "reasonable official

would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* at 131 S. Ct. 2083 (citations and internal quotation marks omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Becker v. Bateman,* 709 F.3d 1019, 1022 (10th Cir. 2013) (citation and internal quotation marks omitted).

### B. FOURTH AMENDMENT SEARCH

#### 1. THE OFFICERS' SEARCH OF PLAINTIFF'S WORKPLACE DID NOT VIOLATE THE FOURTH AMENDMENT OR THE NEW MEXICO CONSTITUTION

The Fourth Amendment of the United States Constitution protects the right of people to be secure in their person, houses, papers and effects, against unreasonable searches and seizures. *Untied States v. Thompson*, 524 F.3d 1126, 1132 (10th Cir 2008). The touchstone of the Fourth Amendment is not whether the place searched is a constitutionally protected area, but rather whether there was an objectively reasonable expectation of privacy in the place searched. *Katz v. U.S.*, 389 U.S. 347, 351 (1967).

The Fourth Amendment is not implicated when a police officer is merely discovering evidence in plain view. The "plain-view doctrine" states that evidence or items of contraband discovered in plain view by an officer who is legitimately on the premises are admissible as evidence. *United States v. Chavez*, No. CR 12-2060 JB, 2013 U.S. Dist. LEXIS 35628, *82, 2013 WL 1007727 (D. N.M. March 6, 2013), citing *Georgia v. Randolph*, 547 U.S. 103, 137-38 (2006). Evidence which is recovered during a cursory inspection – merely looking at what is already exposed to view, without disturbing it—is not a "search" for Fourth Amendment purposes, and

therefore does not even require reasonable suspicion. *Id.* citing *Arizona v. Hicks*, 480 U.S. 321, 328 (1987). There is no violation of a person's Fourth Amendment rights if the officer is not executing a search warrant, but discovers evidence in plain view. *Id.*.

Applying this jurisprudence to the case at hand, the Defendant deputies did not violate the United States Constitution during their searches of Plaintiff's work areas. According to the allegations in the Complaint, the sheriff's office was summoned after NMBHI had already opened Plaintiff's work desk and work locker. These prior searches conducted by NMBHI were lawful. NMBHI then showed photographs of suspected contraband found in Plaintiff's desk and allowed Undersheriff Madrid to view Plaintiff's locker. The deputies, who were lawfully on the premises, merely saw what was in plain view which included prescription drugs and cash. The use of is not a search that implicates the Fourth Amendment at all. Accordingly, Count I of the Complaint fails as a matter of law and also pursuant to the qualified immunity doctrine, as Plaintiff cannot establish that a clearly established constitutional right was violated.

## 2. 4TH AMENDMENT NOT IMPLICATED AS THERE WAS CONSENT TO SEARCH.

However, even if the initial viewings of Plaintiff's work areas are considered searches for which the Fourth Amendment is implicated, the deputies were within their lawful or apparent authority. The law instructs that police may search a suspect's property without a warrant if there is third-party consent, either actual or apparent, to do so. See *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004). Actual third-party authority has the power to consent when there is either (1) a mutual use of the property by virtue of joint access, or (2) control for most purposes over it. *U S. v. Cos*, 498 F.3d 1115, 1126 (10th Cir. 2007). Apparent third-party authority arises from the reasonable, albeit erroneous, belief that the third party has the authority to provide valid

consent. *United States v. Sanchez*, 608 F.3d 685, 689 (10th Cir. 2010). A third party has apparent authority "If the officer has a reasonable belief that the third party has (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it." *U.S. v. Cos*, 498 F.3d at 1128. The "reasonableness" requirement allows for officers to be mistaken in their assessment of a situation when executing their duties, as long as their mistakes are "those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Williams v. U.S.*, 323 F.2d 90, 94 n.5 (10th Cir. 1963).

Here, the officers were reasonably justified in relying on the actual or apparent authority of NMBHI in viewing and searching the desk. NMBHI had actual or apparent control over the work areas, as they had lawfully opened Plaintiff's desk and locker that was located on NMBHI premises. Even if the officers were incorrect in their reliance on the authority of NMBHI, it certainly was reasonable given the facts before them: NMBHI had received a tip, NMBHI acted on the tip, opened Plaintiff's desk and locker, NMBHI determined that the tip was corroborated, NMBHI contacted the sheriff's office and showed the deputies what they had found and why it was a concern. It would be reasonable for law enforcement to believe that there was actual or apparent authority for NMBHI to search their own premises and investigate allegations of crime in the workplace, and the information from NMBHI was then properly used to support further application for search warrants. Again, Plaintiff's 4th Amendment rights were not violated by the deputies' searches of his work areas or applications for search warrants or, at the very least, their conduct did not violate clearly established law as required to defeat an assertion of qualified immunity. Count I of the Complaint fails.

### 3. EVEN THOUGH A WARRANT WAS NOT REQUIRED, THE SEARCH WARRANTS WERE SUPPORTED BY PROBABLE CAUSE.

Due to the foregoing plain view and consent doctrines, the officers were not required to obtain a search warrant. However, they decided in an abundance of caution to do so. Plaintiff may contend that the search warrants were deficient, as they did not fully investigate the veracity of the anonymous notes received by NMBHI which precipitated NMBHI's search of his desk and locker. This contention is not supported by the law.

When an affidavit contains sufficient accurate statements to support the issuance of a warrant, immaterial misstatements do not invalidate it. *Kaiser v. Lief*, 874 F.2d 732, 734 (10th Cir. 1989). citing *United States v. Riccio*, 726 F.2d 638, 641 (10th Cir. 1984). For example, an affidavit that erroneously attested that a witness identified a suspect was not material, as there were sufficient correct statements to vitiate the warrant. *United States v. Riccio*, 726 F.2d 638, 641 (10th Cir. 1984), citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978).

In the present case, Plaintiff complains that the anonymous notes should have been investigated further to determine whether or not they were fabricated. This omission, however, is immaterial. The anonymous source provided information to NMBHI, which was then corroborated by NMBHI when they legally opened Plaintiff's work areas. The officers then reported in the warrant the information obtained by NMBHI: that Plaintiff was in possession of suspected contraband in his work areas. Even if the note *was* a fabrication, the facts obtained from NMBHI's searches, NMBHI's statements, and the plain viewing of the work areas are sufficient to meet the rigors of the 4th Amendment. Certainly, there is no clearly established law that reliance on the anonymous note in addition to other, independent corroborating facts would negate the

otherwise valid search warrants.  For this alternative reason, Count I of Plaintiff's Complaint fails and Defendant Deputies are cloaked in qualified immunity.

Plaintiff claims in support of this 4th Amendment claim that the deputies conducted an inadequate investigation prior to requesting search warrants by failing to discover the identity of the anonymous tipster or other "inadequate investigation" into Plaintiff's innocence.  The law on qualified immunity, however, would not support such a theory. As explained above, even if the anonymous notes were not authentic, it would not materially affect the lawfulness of the search warrants.

As a preliminary matter, Plaintiff's Complaint does not specifically allege that the *arrest warrant* was unlawful.  Nor could he, as probable cause has already been definitively established.  *See* Memo. Op. and Order, Doc. 66, June 16, 2020, p. 30.  Moreover, "an arrest is valid and does not violate the Fourth Amendment if the warrant underlying it was supported by probable cause at the time of its issuance; this holds true even if later events establish that the target of the warrant should not have been arrested."  *Cruz v. City of Albuquerque*, No. CIV 17-676 JAP/SCY, 2019 U.S. Dist. LEXIS 36475, *22-23, 2019 WL 1085160 (D. N.M. March 6, 2019), citing *Beard v. City of Northglenn, Colo*, 24 F.3d 110, 114 (10th Cir. 1994).  Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime.  *Id*. citing *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). A neutral magistrate judge's issuance of a warrant is the clearest indication that the officers acted in an objectively reasonable manner or in objective good faith. *Id*. *23, citing *Messerschmidt v. Millender*, 565 U.S. 535 (2012).

Claims arising out of so-called incompetent investigation do not rise to the level of a constitutional violation. Even if an officer could have done more, there must only be a showing of ***arguable*** probable cause for qualified immunity purposes. *Id*. *28, *Harte v. Bd. of Comm'rs of Cnty. Of Johnson, Kansas*, 864 F.3d 1154, 1178 (10th Cir. 2017). "Arguable probable cause is another way of saying that the officer's conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Stonecipher v. Valles*, 759 F.3d at 1141. The failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth. *Beard v. City of Northglenn, Colo.*, 24 F.3d at 116. At most, such shortcomings may be considered merely negligent, which is insufficient to state a claim under § 1983. *See generally Thomson v. Salt Lake County*, 584 F.3d 1304, 1316 (10th Cir. 2009).

A recent opinion that is very much in line with the facts in this case is *Cruz v. City of Albuquerque*, No. CIV 17-676 JAP/SCY (D. N.M. 2019). In *Cruz*, the plaintiff complained that the officers did not interview alibi witnesses, did not interview witnesses to verify statements made by other witnesses, did not obtain corroborating evidence with cellphone records or cellphone tower date, and failed to investigate other suspects including accessories or co-conspirators to the crime. Judge Parker, relying on the above law, reasoned that these alleged "flaws" in the investigation met Fourth Amendment requirements. At most, these deficiencies were a claim of negligence, which was insufficient for a § 1983 claim. Moreover, there was no clearly established duty in the law to investigate all potential alibi witnesses, to analyze data to determine a suspect's location, or to resolve conflicting information.

Similarly, to the extent Plaintiff contends that the deputies ought to have believed his claims of innocence or that further investigation into the writer of the notes was required, this argument is similarly unavailing to support a 4th Amendment violation. This is because the probable cause standard does not require officers to correctly resolve conflicting evidence. *Id.* \*51, citing *Wright*, 409 F.3d 603. Plaintiff's 4th Amendment claims, therefore, must be dismissed. He has not stated a constitutional violation or, at the very least, cannot show that the deputies' conduct violated clearly established law.

### C. PLAINTIFF'S STATE LAW CLAIMS ARE UNAVAILING DUE TO THE EXPIRATION OF THE STATUTE OF LIMITATIONS AND SUBSTANTIVE NEW MEXICO LAW.

#### 1. PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY THE EXPIRATION OF THE STATUTE OF LIMITATIONS.

In New Mexico, tort claims against public employees, including law enforcement officers, can only be brought pursuant to the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1 *et seq*. Based on the allegations in the Complaint, the County is a governmental entity covered by the Act and the deputies are "public employees" and "law enforcement officers" as those terms are defined in the Act. *See* NMSA 1978 § 41-4-3(C), (D) and (F)(2). As such, these Defendants are immune from liability for any tort except as immunity is expressly waived in the Tort Claims Act. Waiver of immunity is "limited to and governed by" the Tort Claims Act and the Act "shall be the exclusive remedy for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought[.]" *See* NMSA 1978 §§ 41-4-2(A), 41-4-4(A), and 41-4-17.

The Tort Claims Act contains its own statute of limitations which provides that "Actions against a governmental entity or a public employee for torts shall be forever barred, unless such

action is commenced within two years after the date of occurrence resulting in loss, injury or death…." NMSA 1978 § 41-4-15(A). In the present case, the last act attributed to the deputies occurred at the filing of the criminal charges on November 6, 2015. The statute of limitations would have expired on November 6, 2017. The Complaint in this matter was filed on April 26, 2018, five months after the statute expired. All state law claims, Counts II, III, and IV must be dismissed as a matter of law.

> 2. **EVEN IF THE NEW MEXICO CONSTITUTION CLAIM WAS VIABLE, IT STILL OUGHT TO BE DISMISSED AS THE WORKPLACE SEARCH WARRANTS COMPLIED WITH STATE CONSTITUTIONAL REQUIREMENTS.**

While Plaintiff's New Mexico constitutional claim as asserted in Count II of the Complaint fail outright, due to the expiration of the statute of limitations, it also fails substantively. Unlawful search claims under the New Mexico Constitution are analyzed similarly to the 4th Amendment as both require probable cause to believe that a crime is occurring or seizable evidence exists at a particular location before a search warrant may issue. *State v. Williamson*, 2009-NMSC-039, ¶ 14. Probable cause to search a specific location exists when there are reasonable grounds to believe that a crime has been committed or that evidence of a crime will be found there. *State v. Evans*, 2009-NMSC-027, ¶ 10. Probable cause does not have to be based on absolute factual certainty, but it must be based on more than a suspicion or possibility. *State v. Sabeerin*, 2014-NMCA-110, ¶ 11.

Just as above, the search warrants were based on probable cause. The deputies received statements from NMBHI personnel and were shown photographs or were presented with a viewing of the suspected contraband. There was far more information than simply a singular, anonymous note. The search warrants identified what was to be searched, what was expected to be found, and

why such items were anticipated to be evidence of a crime. New Mexico Constitutional requirements are met.

Plaintiff's reliance in the Complaint in *State v. Barker*, 1992-NMCA-117 is not persuasive. In *Barker*, the court was concerned with search warrants that were based solely or largely on information obtained by a confidential informant. That is not the case where, where there was additional information and direct evidence of a possible crime presented to the police by NMBHI. Regardless, even if the *Aguilar/Spinelli* test as set forth in *Barker* were used, the result would be the same.

The *Aguilar/Spinelli* test is designed to ensure that the court makes the determination of probable cause based on reliable information. *Barker*, 1992-NMCA-117, ¶ 4. The test requires that an affidavit include the factual basis for any conclusions drawn from the information and to show that the information is inherently credible or that the information rom the informant is reliable on this particular occasion. *Id*. In this case, while an anonymous note precipitated the legal searches conducted by NMBHI, the search warrants contained additional, credible information from two NMBHI employees, photographic evidence of what was found by NMBHI and, in the case of the second warrant, items seen in plain view when Plaintiff's workplace locker was displayed. The warrants at issue were in compliance with the New Mexico Constitution.

Just as in the 4th Amendment analysis stated above, the New Mexico Constitutional analysis produces only one result: Plaintiff fails to state a claim under Article 2 § 10 of the New Mexico Constitution. Count II must be dismissed.

### 3. PLAINTIFF FAILS TO STATE A CLAIM FOR STATE-LAW ABUSE OF PROCESS AGAINST THE DEPUTIES.

While the Court has already ruled that there was probable cause to initiate criminal proceedings against Plaintiff, any claim for abuse of process derived from procedural impropriety also fails. Under New Mexico state law, the elements for a malicious abuse of process claim are: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. *O'Brian v Behles*, 2020-NMCA-032, ¶33. The first element may be shown by either (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or some other illegitimate end. *Id.* ¶ 34, citing *Durham v. Guest*, 2009-NMSC-007, ¶ 29. An irregularity or impropriety may be shown by an irregular use of procedure or by some other act that indicates the wrongful use of judicial proceedings, such as a request for excessive damages, oppressive conduct in discovery, or misuse of subpoena power. *Id*. ¶ 34, citing *Durham*, 2009-NMSC-007, ¶ 27; *see also* Committee Commentary to UJI Civil 13-1639A NMRA.

Applying the law to the case at hand, there are no allegations in the Complaint to support a malicious abuse of process claim premised on procedural impropriety. There is no allegation that the deputies irregularly used any procedure: valid search warrants were obtained as explained above, and criminal proceedings were properly initiated with probable cause. There is no allegation that the deputies abused discovery, issued invalid subpoenas, or otherwise abused the criminal process during the proceedings. Plaintiff merely disagreed with the prosecution and, ultimately, was acquitted. This does not, however, mean that the deputies abused the legal process.

Plaintiff's Complaint contains no allegations to support such a claim. Count III fails as a matter of law.

### 4. ANY REMAINING RESPONDEAT SUPERIOR CLAIM AGAINST DEFENDANT COUNTY IN COUNT IV FAILS.

Count VII of Plaintiff's Second Amended Complaint asserts respondeat superior for tort claims. A governmental entity may be vicariously liable for the acts of its employee. *See* NMSA §41-4-4(D)(1). The Act specifically provides that a governmental entity shall pay any final judgment entered against a public employee for any tort committed by the public employee while acting within the scope of his duty. See NMSA §41-4-4(D)(1). As explained above, Plaintiff's state law claims fail due to the expiration of the statute of limitations and substantively. If liability cannot attach to the sheriff's deputies, vicarious liability cannot attach to Defendant Board of County Commissioners for San Miguel County. As such, Plaintiff's claims against Defendant County must fail.

## III. CONCLUSION

Plaintiff's remaining claims against the County Defendants fall short. The 4th Amendment claims fail as the searches were constitutionally permissible, such that no violation occurred. There is further no clearly established law that the deputies' conduct ran afoul of constitutional protections. Accordingly, the deputies enjoy qualified immunity on their 4th Amendment unlawful search claim. Plaintiff's state claims are also faulty, due to the expiration of the statute of limitations and because the New Mexico Constitution follows 4th Amendment analysis. Moreover, there was no procedural impropriety by County Defendants to sustain an abuse of process claim.

Because there are no underlying claims, the respondeat superior claim asserted in Count VII also falls by the wayside.

>Respectfully submitted,
>
>BRENNAN & SULLIVAN, P.A.
>
>By: */s/ Christina L. G. Brennan*
>Christina L. G. Brennan
>James P. Sullivan
>128 East DeVargas
>Santa Fe, New Mexico 87501
>(505) 995-8514
>Christina@brennsull.com
>Jamie@brennsull.com
>*Attorneys for Defendants, Deputy Sean Armijo,*
>*Undersheriff Anthony Madrid, Deputy Antoine Whitfield,*
>*and the Board of County Commissioners for the County of*
>*San Miguel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 24th day of September 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Joe M. Romero, Jr.
Romero & Winder, P.C.
1905 Lomas, Blvd., NW
Albuquerque, NM 87104
505-843-9776
joe@romeroandwinder.com
*Attorneys for Plaintiff*

Mark Komer, Esq.
Long, Komer & Associates, P.A.
Post Office Box 5098
Santa Fe, NM  87502-5098
505-982-8405
mark@longkomer.com
*Attorneys for Defendants Frances Tweed,*
*Corrine Dominguez, Antonio Coca, Joe Chavez,*
*and New Mexico Department of Health*

        By:    */s/ Christina L. G. Brennan*
               Christina L. G. Brennan