## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOHN VIGIL,

      Plaintiff,

    v.                                  Civ. No. 18-829 SCY/JFR

FRANCES TWEED et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING
## MOTION FOR JUDGMENT ON THE PLEADINGS[1]

Plaintiff is an employee of a state-run psychiatric hospital in Las Vegas, New Mexico. He has sued the hospital, San Miguel County, and an assortment of individual defendants, claiming that a series of searches conducted of his belongings at his workplace, and subsequent prosecution for possession of a controlled substance, were unlawful. After Plaintiff filed his Second Amended Complaint, the Court in its June 16, 2020 Memorandum Opinion found that Plaintiff could not relitigate the issue of probable cause for his prosecution because the issue was adversely determined against him in prior proceedings in state court. The County Defendants (Sean Armijo, Antoine Whitfield, Anthony Madrid, and the Board of County Commissioners of San Miguel County) now move for judgment on the pleadings on the ground of qualified immunity. Doc. 91. In connection with this motion, the Court granted the County Defendants' motion to stay all discovery in the case and denied Plaintiff's Rule 56(d) request. Doc. 102.

Because Plaintiff has not satisfied his burden to defeat qualified immunity from the

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 15, 21 & 22.

federal claims, or to state a claim under state law, the Court grants the motion in full.

**PROCEDURAL HISTORY**

The procedural history of this case is summarized at length in the Court's previous Memorandum Opinions. Docs. 30, 66, 82 & 102. As relevant to the present decision, Plaintiff filed his Second Amended Complaint ("SAC") on September 22, 2019. Doc. 38. Plaintiff alleges that the State Defendants fabricated anonymous notes suggesting that Plaintiff kept cash and drugs in his desk at work and, further, that they planted evidence in Plaintiff's desk during the subsequent search that was based on these fabricated anonymous notes. Doc. 38 ¶¶ 18-24, 31-36, 41.

With respect to the County Defendants, the SAC alleges that Undersheriff Anthony Madrid conducted a warrantless search on June 19, 2012. *Id.* ¶¶ 39-41, 46. He and Deputy Antoine Whitfield then used the fruits of that search to obtain a second search warrant on June 26, 2015 and executed it the same day. *Id.* ¶ 42. In addition, the SAC alleges that Deputy Sean Armijo and Undersheriff Madrid "did not conduct the minimal investigation needed to discover that the [anonymous] note was fabricated." *Id.* ¶¶ 48, 50. It alleges the County Defendants were aware of the warrantless character of the State Defendants' searches, *id.* ¶¶ 47, 49, but that the affidavits in support of the search warrants "deliberately omitted any mention of the previous warrantless search or the individuals who had conducted it to disguise the use of the fabricated note to discover planted evidence previously." *Id.* ¶¶ 30, 44. The SAC also alleges that Deputy Armijo and Undersheriff Madrid "pressed charges" against Plaintiff for possessing Hydrocodone even though they knew that Hydrocodone had been lawfully prescribed to him. *Id.* ¶¶ 53-54.

The County Defendants filed a motion to dismiss the SAC on December 2, 2019. Doc. 49. The Court agreed with the County Defendants that Plaintiff may not relitigate issues a state

court has already decided. Thus, it held that Plaintiff could not relitigate whether the State Defendants' workplace searches were legal or whether probable cause supported the criminal prosecution against Plaintiff. Doc. 66 at 26, 30. But the legality of the County Defendants' searches had not been determined in the state court proceedings and Plaintiff's claims related to the law enforcement searches (as opposed to the workplace searches) remained. *Id.* at 26, 30 (also finding state-law malicious prosecution claims can succeed under an alternative theory even if probable cause supported the prosecution). In addition, the Court rejected the County Defendants' argument that Plaintiff insufficiently pleaded the federal Fourth Amendment claim. *Id.* at 18-20. The Court, however, had no occasion to address whether qualified immunity shielded the County Defendants from liability, as the County Defendants had not yet raised the defense of qualified immunity. *Id.* at 18-20 & 18 n.11.

Thus, the following claims in the SAC against the County Defendants survived: Count I (federal Fourth Amendment claim); Count II (state-law unlawful search claim); Count IV, to the extent Plaintiff intended to plead a state-law tort claim of malicious abuse of process; and Count VII (respondeat superior state-law claims). *Id.* at 31. On September 24, 2020, the County Defendants filed the present Motion For Judgment On The Pleadings On The Basis Of Qualified Immunity And Other Grounds. Doc. 87. In the motion, they move to dismiss the federal claims on the basis of qualified immunity, and to dismiss the state-law claims on the basis of the statute of limitations and failure to state a claim. *Id.* Plaintiff filed a response in opposition on October 20, 2020, but also requested additional discovery in order to more fully respond to the motion. Doc. 92. The County Defendants filed replies to both motions on November 3, 2020. Docs. 93 & 94. The Court denied Plaintiff's requested discovery but permitted Plaintiff the opportunity for additional briefing in connection with the motion for judgment on the pleadings, if desired. Doc.

102 at 8-9. Plaintiff did not submit any additional briefing. Therefore, briefing is complete and the motion for judgment on the pleadings is ready for decision.

## STANDARD OF REVIEW

Rule 12(c) permits a litigant to file a motion for judgment on the pleadings after the pleadings have closed; that is, after the filing of the complaint and answer. "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the court required to accept as true legal conclusions that are

masquerading as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When an individual defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The plaintiff must show that 1) the officer violated a constitutional or statutory right and 2) the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). A court may address these prongs in either order, *Pearson*, 555 U.S. at 236, but a plaintiff must satisfy both to avoid qualified immunity, *Olsen*, 312 F.3d at 1304.

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The action at issue need not have been previously declared unlawful, but its unlawfulness must be evident in light of preexisting law. *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). Unlawfulness is generally demonstrated "when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law." *Id.* at 1069-70 (internal quotation marks omitted).

The plaintiff bears the burden of identifying "a controlling case or robust consensus of cases" where an officer acting "under similar circumstances" to those faced by the defendants

was found to have acted unlawfully. *D.C. v. Wesby*, 138 S. Ct. 577, 591 (2018); *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015). "In order for a law to be clearly established, there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (internal quotation marks omitted). If no controlling authority is on point, the plaintiff must identify "a robust consensus of cases of persuasive authority." *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014) (internal quotation marks omitted); *Quinn*, 780 F.3d at 1013. The plaintiff "does not need to find a case with an identical factual situation." *Moore*, 438 F.3d at 1042. But the correspondence between settled law and the present case must be "substantial." *Quinn*, 780 F.3d at 1014.

In recent years, the Supreme Court "has issued a number of opinions reversing federal courts in qualified immunity cases." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). "The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *Id.* (internal quotation marks and citations omitted). "[T]he defense of qualified immunity gives public officials the benefit of legal doubts." *Donovan v. City of Milwaukee*, 17 F.3d 944, 951 (7th Cir. 1994) (internal quotation marks omitted). Thus, qualified immunity provides "ample room for mistaken judgments" and protects all but "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 314, 343 (1986).

## DISCUSSION

### I.    Fourth Amendment Claims

According to the allegations in the Second Amended Complaint, the County Defendants conducted three searches of Plaintiff's belongings:

- June 5, 2015: Deputy Armijo and Undersheriff Anthony Madrid obtained and executed a search warrant on Plaintiff's desk. In order to enable their search, Joe Chavez removed the lock he had placed on the desk after cutting Plaintiff's own lock off. Doc. 38 ¶¶ 26-28.

- June 19, 2015: Undersheriff Madrid, accompanied by Ms. Tweed, searched Plaintiff's locker in Mesa Cottage without a warrant. Ms. Tweed informed Undersheriff Madrid that the lock had been cut off and a search already performed by the State Defendants. Undersheriff Madrid later states that this search was executed pursuant to the June 5, 2015 search warrant, a warrant that was specifically for Plaintiff's desk in another building, and had been executed on June 5. Doc. 38 ¶¶ 39-41, 43.

- June 26, 2015: Undersheriff Madrid and Deputy Antoine Whitfield obtained and executed a search warrant for Plaintiff's locker. During his examination of Plaintiff's locker, Undersheriff Madrid seized several items. Doc. 38 ¶¶ 42-43.

The County Defendants argue that warrants were not required for any of these searches because the County Defendants permissibly seized the evidence under the "plain view" doctrine and under the doctrine of third-party authority. Doc. 87 at 7-8, 8-9. Plaintiff's Response does not address either argument. Doc. 91. Instead of responding to these arguments, Plaintiff sought discovery in the form of depositions under Federal Rule of Civil Procedure 56(d). Doc. 91 at 1. These depositions, his counsel asserted, "are critical to Plaintiff's ability to evaluate what was known and not known by the County Defendants." Doc. 91-1 at 3. Reading this assertion in context with the remainder of the affidavit of Plaintiff's counsel, Plaintiff sought discovery related to whether the County Defendants were aware that statements Francis Tweed (a supervisor at Plaintiff's workplace) made at the administrative hearing were false. Doc. 91-1 at 2-3. As the Court explained in its March 21, 2021 Order Granting Motion to Stay Discovery, however, even if Plaintiff obtained in discovery the information he hoped to find, the County Defendants still had arguable probable cause to support their searches. Doc. 102 at 8. As a result, the Court denied Plaintiff's Rule 56(d) request. Doc. 102 at 8-9. Having denied Plaintiff's Rule 56(d) request, the Court now moves forward to consider the County Defendants' assertion of qualified immunity.

Defendants' invocation of the doctrine of qualified immunity shifts the burden to Plaintiff to satisfy both prongs of the qualified immunity test. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1304 (10th Cir. 2002). It also means that "the *plaintiff* bears the burden of citing to [the Court] what he thinks constitutes clearly established law." *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015) (internal quotation marks and alteration omitted). The Tenth Circuit has emphasized this burden in a variety of circumstances. *See also Cox v. Glanz*, 800 F.3d 1231, 1245-46 (10th Cir. 2015) (by mere assertion of the qualified immunity defense, the law enforcement officer shifted the burden to the plaintiff to rebut both prongs of the qualified immunity test); *Cummings v. Dean*, 913 F.3d 1227, 1243 (10th Cir. 2019) ("Given that Plaintiffs bear the burden of presenting such a case to overcome qualified immunity, this failure proves fatal to their position." (citation omitted)); *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1218 (10th Cir. 2019) (by failing to argue "that the officer[s'] conduct was so obviously unconstitutional that it is not necessary for the plaintiff[s] to show clearly established existing law prohibiting such conduct," the plaintiff forfeited any such argument).

In his Response, Plaintiff did not address either prong of the qualified immunity test with respect to whether Defendants' searches were constitutional under the "plain view" and "consent" doctrines. Doc. 91. Similarly, after the Court denied Plaintiff's request for Rule 56(d) discovery, the Court allowed Plaintiff to file a supplemental response, but Plaintiff filed none. Because Plaintiff has declined to address the County Defendants' assertion of qualified immunity, the Court finds that Plaintiff has forfeited his Fourth Amendment arguments. *See Gutierrez v. Cobos*, 841 F.3d 895, 902-03 (10th Cir. 2016) (enforcing forfeiture of Plaintiff's

excessive force claims, without examining the state of the existing case law sua sponte, where "counsel did not make any legal argument in the district court to rebut qualified immunity").

In the interests of justice, however, and as an alternative to its forfeiture finding, the Court has examined the County Defendants' arguments and the applicable case law. After doing so, the Court concludes that Plaintiff also failed to meet his burden of establishing under the second prong of qualified immunity that clear authority existed at the time of the searches to place any reasonable police officer on notice that taking possession of evidence previously and independently discovered and seized by a suspect's employer violates that suspect's Fourth Amendment rights. In other words, Plaintiff has failed to overcome the County Defendants' argument that the State Defendants provided consent to search Plaintiff's desk and locker and the County Defendants reasonably believed the State Defendants (supervisors at Plaintiff's workplace) had actual or apparent authority to do so. *See* Doc. 87 at 8-9 (arguing "NMBHI had actual or apparent control over the work areas, as they had lawfully opened Plaintiff's desk and locker that was located on NMBHI premises.").

"A third party's consent to search is valid if that person has either the 'actual authority' or the 'apparent authority' to consent to a search of that property." *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004). "[A] third party has authority to consent to a search of property if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it." *United States v. Rith*, 164 F.3d 1323, 1329 (10th Cir. 1999). Granted, cutting against the County Defendants' apparent authority argument is Plaintiff's allegation that "Deputy Armijo obtained statements from both Mr. Chavez and Frances Tweed, and consequently learned that they had entered Plaintiff's secure office [and] cut off the lock he had on his desk." Doc. 38 ¶ 27. In other words, Plaintiff alleges the County Defendants were

aware of the circumstances under which the State Defendants conducted their search. And, the County Defendants cite no authority in support of the proposition that the State Defendants' actions of entering a "secure" office and cutting off Plaintiff's lock were "lawful."

Nonetheless, while relevant to the first prong of the qualified immunity analysis (whether there was a constitutional violation), Plaintiff's allegations are insufficient to overcome the second prong of the qualified immunity analysis (whether the law is clearly established). Having raised qualified immunity, the County Defendants carry no burden of satisfying the second prong. *Cox v. Glanz*, 800 F.3d 1231, 1244-46 (10th Cir. 2015). Instead, Plaintiff carries the burden to "rebut the Sheriff's no-constitutional-violation arguments, [and] also had to demonstrate that any constitutional violation was grounded in then-extant clearly established law." *Id.* at 1254. Plaintiff did not do so here.

Neither the Second Amended Complaint nor Plaintiff's brief contain facts or arguments related to whether the County Defendants could have reasonably thought that the State Defendants had "mutual use of the property by virtue of joint access" or "control for most purposes over it." *Rith*, 164 F.3d at 1329. Plaintiff does not cite, and the Court has not found, Tenth Circuit or Supreme Court precedent establishing that the doctrine of apparent authority ceases to apply when an employer removes a lock that an employee has placed on his desk at work.

Moreover, the Court has held that Plaintiff cannot relitigate the state court's conclusion in the criminal proceedings that the State Defendants' search was constitutional. Doc. 66 at 23-26. This is important because Plaintiff's argument against the County Defendants is that they should have known the actions of the State Defendants were unconstitutional. Because the premise of Plaintiff's argument fails (that the State Defendants acted illegally), so does its conclusion (the

County Defendants' awareness that the State Defendants acted illegally prevents the County Defendants from relying on the actions of the State Defendants).

Plaintiff's argument also fails because the government's "viewing of what a private party had freely made available for [its] inspection d[oes] not violate the Fourth Amendment." *United States v. Jacobsen*, 466 U.S. 109, 119 (1984). Whether law enforcement could have taken the same actions absent the private party search is not relevant. Where "the government agent merely repeated the private search and inspected what was in plain view," the Fourth Amendment does not apply. *United States v. Walsh*, 791 F.2d 811, 815 (10th Cir. 1986); *Jacobsen*, 466 U.S. at 114-15 ("[T]he fact that agents of the private [party] independently opened the package and made an examination that might have been impermissible for a [law enforcement] agent cannot render otherwise reasonable official conduct unreasonable.").[2] Thus, allegations that the State Defendants violated Plaintiff's constitutional rights in the course of their workplace search do not, even if true, mean that law enforcement officers then also violated Plaintiff's constitutional rights when they took possession of the evidence the State Defendants illegally seized.

Plaintiff carries the burden of demonstrating that clear legal authority in existence at the time the County Defendants conducted their searches placed them on notice that their actions would violate Plaintiff's constitutional rights. Plaintiff has failed to identify such legal authority and the Court is aware of none. Because Plaintiff has not met his burden to show the County

---

[2] Of course, this doctrine does not apply if the private actor and the government are working in concert. *Walsh*, 791 F.2d at 814. However, the Court has dismissed Plaintiff's allegations of a conspiracy between all Defendants because the Second Amended Complaint fails to state facts to support the conclusory allegation of a conspiracy, and because Plaintiff conceded at a hearing that he is not aware of any support for the claim that the County Defendants and the State Defendants were engaged in a conspiracy that predated the State Defendants' first workplace search. Doc. 66 at 10 n.5, 19.

Defendants violated clearly established law, the Court grants the County Defendants' motion to dismiss Plaintiff's federal constitutional claims on the basis of qualified immunity.

## II.     State-law claims

The County Defendants also move to dismiss the three remaining state law claims: unlawful search; malicious abuse of process; and respondeat superior. Doc. 87 at 13-17. In his response, Plaintiff concedes that the unlawful-search state claims are subject to dismissal under the applicable statute of limitations. Doc. 91 at 2. Therefore, the Court dismisses Count II of the SAC without prejudice for lack of subject-matter jurisdiction.

Turning to the second state law claim, the tort of malicious abuse of process requires a showing of either (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or some other illegitimate end. *O'Brian v Behles*, 2020-NMCA-032, ¶ 34. In its June 16, 2020 Order, the Court addressed whether, in the criminal proceedings below, the state court's ruling that probable cause supported the criminal complaint collaterally estopped Plaintiff from bringing a malicious abuse of process claim on the basis that probable cause did not support the complaint. Doc. 66 at 26-30. The Court held that it did. *Id*. The Court noted, however, that "the County Defendants did not address whether Plaintiff's state-law misuse of process claim could proceed through the second potential avenue – procedural impropriety. The Court therefore does not dismiss Count IV (state malicious prosecution) based on collateral estoppe[l]." *Id*. at 30.

Now addressing this second avenue, the County Defendants argue that the SAC does not contain any allegations of procedural improprieties, such as an irregular use of procedure or some other act that indicates the wrongful use of judicial proceedings. Doc. 87 at 16. In response, Plaintiff points to no allegations in the complaint that are relevant to this claim. Instead, Plaintiff

"requests the opportunity to address the available case law more completely after he has had the opportunity to conduct the depositions described in the attached Affidavit." Doc. 91 at 4.

Plaintiff, however, failed to adequately support this request. The affidavit from Plaintiff's counsel did not discuss any procedural improprieties on the part of law enforcement during the criminal prosecution which Plaintiff expected to uncover in discovery. *See generally* Doc. 91-1. In the Tenth Circuit, the party requesting additional discovery must identify "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (internal quotation marks and alterations omitted). Regarding discovery to support a malicious abuse of process claim through the procedural impropriety avenue, the affidavit of Plaintiff's counsel fails to meet any of these requirements. As a result, Plaintiff's request for additional discovery fails. Further, regarding Plaintiff's request for additional briefing, the Court provided Plaintiff the opportunity to submit additional briefing after its discovery ruling but Plaintiff filed no additional briefing. Doc. 102 at 8-9.

Turning to whether Plaintiff has stated a claim for malicious abuse of process claim based on procedural impropriety, Plaintiff cites to nothing in his Second Amended Complaint that would support such a claim. Nonetheless, to complete its analysis, the Court notes that the Second Amended Complaint contains the following allegations:

> On November 6, 2015, Plaintiff was charged with felony Possession of a Controlled Substance; Misdemeanor Possession of a Controlled Substance; and a second felony alleging that he sold or possessed Dangerous Drugs.

> The Hydrocodone that Plaintiff was charged with possessing was prescribed to Plaintiff by his physician.

Despite knowing that the Hydrocodone was lawfully prescribed to Plaintiff,
Deputy Armijo and Undersheriff Madrid pressed charges against Plaintiff.

Doc. 38 ¶¶ 52-54.

Accepting Plaintiff's allegations as true, Deputy Armijo and Undersheriff Madrid pressed charges against Plaintiff for possessing Hydrocodone even though they knew that Hydrocodone was prescribed to him by his physician. These allegations fit more neatly under the first avenue of a malicious abuse of process claim (that the prosecution was initiated without probable cause) than the second avenue (that there were procedural improprieties during the prosecution). Essentially, Plaintiff's malicious abuse of process claim is that Deputy Armijo and Undersheriff Madrid pressed charges against Plaintiff even though they knew there was not probable cause to support those charges (because Plaintiff had a valid prescription for Hydrocodone). For the reasons the Court stated in its June 16, 2020 Order, the doctrine of collateral estoppel bars Plaintiff from relitigating the state court's determination that probable cause supported the criminal complaint. Doc. 66 at 26-30.

Moreover, even if the Court construed Plaintiff's allegations as an attempt to proceed down the procedural impropriety path, the relevant statute of limitations would bar Plaintiff's abusive misuse of process claim. *See* NMSA § 41-4-15(A) (providing a two-year statute of limitations). Plaintiff's complaint alleges that law enforcement pressed charges against him on November 6, 2015, despite knowing he had a lawful prescription for the medication. Doc. 38 ¶¶ 52-54. But Plaintiff did not file the present case until April 26, 2018, more than two years later. Doc. 1.

Faced with these facts, Plaintiff argues that the claim did not accrue, and the two-year statute of limitations did not begin running, until he was acquitted of two of the three charges and the third charge was dismissed. Doc. 91 at 2. Plaintiff does not state the dates these acquittals and

the dismissal occurred. But, even assuming they occurred after April 26, 2016, the Court would find the statute of limitations bars this claim.

The filing of the criminal complaint is the only act described as wrongful in the complaint. Once law enforcement filed the criminal complaint on November 6, 2015, pursuing the case became the responsibility of the District Attorney. Moreover, soon after the criminal complaint was filed, Plaintiff had the opportunity to present evidence to a judge that he had a lawful prescription to possess the Hydrocodone he was charged with unlawfully possessing. *State v. Massengill*, 1983-NMCA-001, ¶ 7, 99 N.M. 283, 284-85; NMRA 6-202(B)(5). In other words, after the complaint against Plaintiff was filed, the prosecutor and the Court, not law enforcement who earlier investigated the case, had control over the process.[3]

In addition, the Court agrees with Judge Browning's reasoning in *Mata v. Anderson*, 685 F. Supp. 2d 1223 (D.N.M. 2010), *aff'd on other grounds*, 635 F.3d 1250 (10th Cir. 2011). The New Mexico state law abuse-of-process tort does not require favorable termination of proceedings in order for a plaintiff to bring the claim. *Id.* at 1265-66. Because this is not an element of the claim, the favorable termination does not have any bearing on when the claim accrued. *Id.* Instead, the statute "begins to run as soon as the plaintiff knows of the facts on which he or she is basing the claim." *Id.* at 1266. There can be no credible argument that Plaintiff did not know the facts on which his claim is based as of November 6, 2015: Plaintiff both must

---

[3] As the Court noted in its June 16, 2020 Order "This analysis does not apply when law enforcement fabricates the probable cause evidence presented to both the magistrate judge and district court judge." Doc. 66 at 29 n.16. This is because an undiscovered fabrication can continue to affect the process even after law enforcement hands the case off. Here, Plaintiff was in control of the relevant information he alleges law enforcement omitted; namely, that he had a valid prescription for the Hydrocodone.

have known about his own lawfully prescribed medications as well as the allegations in the filed criminal complaint.

Because the Second Amended Complaint primarily challenges probable cause for the prosecution, which Plaintiff may not relitigate, and because the relevant statute of limitations bars the claim, the Court grants the County Defendants' motion to dismiss Count IV of the SAC.

Finally, the County Defendants argue, and Plaintiff does not contest, if the underlying substantive counts are dismissed, then the respondeat superior claim must be dismissed as well. Doc. 87 at 17. Given Plaintiff's lack of opposition to this request, the Court grants the Defendants' motion and dismisses Count VII.

## CONCLUSION

The Court GRANTS the County Defendants' Motion For Judgment On The Pleadings On The Basis Of Qualified Immunity And Other Grounds. Doc. 87. All claims in the Second Amended Complaint against Sean Armijo, Antoine Whitfield, Anthony Madrid, and the Board of County Commissioners of San Miguel County are DISMISSED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent