BEFORE THE PERSONNEL BOARD
STATE OF NEW MEXICO

FILED
MAR 0 4 2019
NM STATE PERSONNEL BOARD

IN THE MATTER OF
JOHN P. VIGIL,

Appellant,

v.                                                                                      Docket No. 15-079

NEW MEXICO DEPARTMENT
OF HEALTH,

Appellee.

## RECOMMENDED DECISION

**Jessica B. Cooper, Administrative Law Judge**

Joe M. Romero, Jr.                                                      Attorney for Appellant
Romero & Winder, P.C.
1905 Lomas Blvd. NW
Albuquerque, New Mexico 87104

Jesse Tremaine, Assistant General Counsel                Attorney for Appellee
Office of the General Counsel
New Mexico Department of Health
P.O. Box 26110
Santa Fe, NM 87502-6110

### I. STATEMENT OF THE CASE

Appellant John Vigil was dismissed from his position as a Psychiatric Technician-Supervisor ("Psych Tech Supervisor" or "PTS") with the Community Based Services/Assisted Living Facility Unit of the New Mexico Behavioral Health Institute ("BHI") within the New Mexico Department of Health ("DOH" or "Department"), effective October 21, 2015. (Stip. 2; Ex. 15.) He was dismissed for numerous policy violations, including possession of patient medications and illegal possession of controlled substances, failure to follow proper

1

- Improperly handled approximately $25 of patient funds by storing the clothing allowance change in his unlocked desk drawer.

These actions were violations of policy and constituted misconduct.

But Mr. Vigil's misconduct and policy violations were mitigated by the following facts:

- It was established practice in the ALF Unit for the PTS to store expired patient medication in his desk cabinet until it could be returned to the pharmacy;
- Mr. Vigil followed this practice to ensure the safety of the ALF residents;
- Mr. Vigil held the expired medications in secure locations – the ostensibly locked desk cabinet of his locked office and in his locked cubby locker; and
- Mr. Vigil reported his discovery of expired patient medication in ALF residents' active medication bins directly to his supervisor, CBS Director Dominguez.

In addition, while Mr. Vigil previously received a LOR (Letter of Reprimand) from DOH, it was for unprofessional conduct in his interactions with a staff member. (Ex. 21.) Because these allegations were not similar in any way to those currently against him in this matter, that previous discipline cannot serve as progressive discipline here.

After significant consideration, the ALJ concludes that Mr. Vigil's misconduct and policy violations are simply insufficient to warrant his dismissal, particularly in the absence of any related progressive discipline. (*Selmeczki* at ¶ 20; *Martinez* at ¶ 42.) Rather, based on Mr. Vigil's limited proven misconduct and the referenced mitigating factors, the more reasonable, appropriate, and proportional sanction to impose upon Mr. Vigil is a 30-day suspension.

## VI. RECOMMENDED FINDINGS OF FACT

**It was proved by a preponderance of the evidence that:**

1. Mr. Vigil was first hired by BHI in 1999, became the ALF Unit Psych Tech Supervisor for evening shift in or around 2011, and became the ALF Unit Psych Tech Supervisor for dayshift in or around 2013. (Vigil; Tweed; Aragon; Ex. 16.)

2. Mr. Vigil held the dayshift Psych Tech Supervisor position at the time of the incidents underlying this appeal. (Id.)

3. When Mr. Vigil was Psych Tech Supervisor, CBS Director Corinne Dominguez was his administrative supervisor; CBS Director of Nursing Cathy Aragon was his clinical

85

supervisor, until she retired in April 2015; and Executive Nurse Administrator Frances Tweed was also in his chain of command. (Tweed; Aragon; Dominguez; *see also* Valdez.)

4. On June 6, 2007, Mr. Vigil signed an acknowledgment of DOH's Code of Conduct (HR 015), acknowledging that he received, read, understood, and would follow that Code. (Exs. 3, 10.)

5. On October 31, 2014, Mr. Vigil signed an acknowledgment of DOH's Disciplinary Action Policy (HR 08:10), acknowledging that it was his responsibility to read, understand, and comply with that Policy; that if he had questions about the Policy he would consult with his supervisor or HR staff members; and that violation of the Policy may result in disciplinary action up to and including dismissal. (Exs. 2, 10.)

6. Mr. Vigil confirmed he was familiar with BHI's Disposal of Unusable Products Policy (PHM 060) when he was working; he also signed his Psych Tech Annual Review on March 19, 2015, indicating he reviewed BHI policies in general in December 2014, and signed his Skills & Knowledge Checklist on December 12, 2014, indicating he had reviewed the Pharmacy policies relevant to Psych Techs. (Vigil; Exs. 11, 16, 20; *see also* Aragon.)

7. Mr. Vigil's familiarity with BHI's Incident Reporting and Notification Policy is indicated by the same Psych Tech Annual Review he signed on March 19, 2015, which shows he reviewed BHI policies in general in December 2014 and had an education session specifically on Incident Reporting policies on December 17, 2014. (Ex. 20.)

8. At the time relevant to this appeal, the ALF Unit on the BHI campus consisted of two cottages located next to each other, El Paso and Mesa. (Tweed; Aragon; Chavez; Exs. 16, I-1; *see also* Valdez.)

9. The ALF Unit is part of BHI's Community Based Services and is an out-patient program; ALF residents live on BHI premises, but are considered out-patients. (Tweed; Aragon; Moore; Smith; Valdez.)

10. ALF Unit Psych Tech Supervisors and staff are trained to assist ALF residents in the self-administration of their medications. (Tweed; *see also* Valdez, Ex. K.)

11. ALF Psych Tech staff can retrieve medication for the residents, hand medication bottles to residents, and help the residents open medication bottles, but the residents are supposed to take the medication on their own. (Tweed; Aragon; Moore; *see also* Valdez.)

12. Each ALF Cottage had a locked medroom in its nurses' station, and within each locked medroom was a locked medcart. (Vigil; Tweed; Aragon; Dominguez; Smith.)

State Defendants-000109

13. The medcarts had a locked top drawer for residents' narcotics/controlled medications; a middle section of residents' individual drawers/bins, for their active, non-controlled medications; and two bottom drawers, for extra medication and for expired medications. (Vigil; Tweed; Aragon; Valdez.)

14. Psych Tech Supervisors and staff had access to the medroom and the medcart, but the residents did not. (Aragon.)

15. At the time of the incidents underlying this appeal, Mr. Vigil shared an office (Supervisors' Office) with ALF evening shift Psych Tech Supervisor Jesse Montoya and ALF graveyard shift Psych Tech Supervisor Tina Gurule. (Vigil; Chavez; Schaefer; Ex. 16.)

16. The Supervisors' Office door locked. (Tweed; Chavez.)

17. Prior to the incidents at issue, Mr. Vigil developed conflicts with certain ALF graveyard staff and ALF graveyard Psych Tech Supervisor Tina Gurule, and he believed that these co-workers were trying to get him fired. (Vigil; Schaefer; Exs. 16, 17.)

18. On May 27, 2015, Mr. Vigil received a Letter of Reprimand for the unprofessional conduct of yelling at and using bad language toward an ALF graveyard staff member when he caught her sleeping. (Exs. 15, 21.)

19. Mr. Vigil submitted a rebuttal to the LOR that same day and later made a complaint to HR claiming that the allegations in the LOR were not true – that he had caught the staff member sleeping, but did not yell bad words at her – but the LOR was not rescinded. (Vigil; Exs. 17, J.)

20. On or around May 29, 2015, an anonymous letter was sent via BHI inter office mail, one copy each to BHI C.O.O. Charles Jaramillo, BHI Assistant Director of HR Richard Vigil, and BHI Standards and Compliance Director Rose Contreras, stating:

    > I was told and everybody knows that superviser john vigil has a lot of bottels of the patients meds in his desk, and some are ativans and narcotics locked away. Also hundreds of dollars of there money to. John vigil is the psych tech superviser at the arches. We will send to HR patient avocate and investegations. You cannot tell him how you found out cuase he will know who send this letter.
    > (Ex. 16; *see also* Tweed.)

21. BHI Security Director Joe Chavez located the key to unlock the Supervisors' Office door. (Chavez; *see also* Tweed.)

State Defendants-000110

22. On June 3, 2015, Executive Nurse Administrator Frances Tweed, Internal Review Director Antonio Coca, and Security Director Joe Chavez conducted a search of Mr. Vigil's office desk area in El Paso Cottage. (Tweed; Chavez; Schaefer; Ex 16.)

23. Mr. Vigil's desk cabinet was secured with its own combination lock, but there was still enough play in the cabinet doors that they could be pulled open a couple of inches. (Id.; Ex. 22-2.)

24. Mr. Vigil believed that his desk cabinet was securely locked. (Vigil.)

25. Found in Mr. Vigil's locked desk cabinet, in relevant part, were:
    - two prescription bottles of Risperidone for two BHI patients, both of which were expired;
    - a small paper medication cup with a single tablet of Clonazepam inside; and
    - some Southwest Capital Bank money envelopes.
    (Tweed; Chavez; Schaefer; Exs. 16, 22-3 – 22-6; *concur* Exs. 18, C-1, G-1 – G-2.)

26. The June 3 search party also found additional Southwest Capital Bank envelopes in one of Mr. Vigil's unlocked desk drawers. (Chavez; Exs. 22-1; *see also* Tweed; *concur* Exs. 18, C-1, G-3 – G-4.

27. Law enforcement was contacted and conducted its own search of Mr. Vigil's desk. (Tweed; Exs. 16, C-1 – C-2; *see also* Chavez.)

28. On June 19, 2015, a second anonymous letter was sent via inter office mail, one copy each to Ms. Tweed, Mr. Jaramillo, and Mr. Richard Vigil, stating:

    > John paul vigil has 2 lokers in mesa and el paso unit 1 in mesa has a combination and 1 in el paso has a yellow lock. I no the 1 in el paso has pills. He uses.
    > (Tweed; Ex. 16.)

29. That same day, Ms. Tweed, Security Officer Louann Gonzales, and Investigator Peter Schaefer conducted a search of the referenced lockers in the ALF Unit. (Id.; Chavez; Schaefer.)

State Defendants-000111

30. Found in Mr. Vigil's blue, full-sized, gym-style locker, which had his name on it, in relevant part, were:
    - A Centrum Silver vitamin bottle containing multiple, loose, unlabeled medications, including:
        o 9 tablets of Hydrocodone/Acetaminophen 5 mg/500 mg,
        o 2 tablets of Hydrocodone/Acetaminophen 7.5 mg/500 mg,
        o Ibuprofen,
        o Indomethacin,
        o Colchicine, and
        o Clindamycin.
    (Vigil; Tweed; Schaefer; Exs. 16, 22-10, 22-17, 22-30; *concur* Exs. C-2, H-1 – H-4.)

31. Found in a cubby locker with a yellow-trimmed lock, were:
    - A magazine with Mr. Vigil's name and address on the address label; and
    - Three expired prescription medications belonging to two BHI patients:
        o One prescription bottle of Risperidone 1 mg (issued 7/31/14);
        o One prescription bottle of Risperidone 2 mg (issued 6/16/14); and
        o One prescription bottle of Benzotropine 0.5 mg (issued 8/17/14).
    (Tweed; Chavez; Exs. 16, 22-19 – 22-24.)

32. Law enforcement was contacted again and conducted its own search of Mr. Vigil's blue locker. (Tweed; Exs. 16, C-2.)

33. Both the blue locker containing the Hydrocodone and the yellow-locked cubby locker containing three expired patient prescriptions were Mr. Vigil's lockers. (Vigil; Ex. 16.)

34. Locks had to be cut off both lockers in order to search them. (Schaefer; Exs. 16, 22-22, 22-24.)

35. Of the medications found in Mr. Vigil's desk cabinet, blue locker, and yellow-locked cubby locker, Hydrocodone was the only opioid. (https://mayoclinic.org/drugs-supplements; https://medlineplus.gov/druginformation.html; 1.7.12.18(J) NMAC.)

36. Of the medications found in Mr. Vigil's desk cabinet, blue locker, and yellow-locked cubby locker, Hydrocodone and Clonazepam were the only controlled substances under the Controlled Substances Act. (https://deadiversion.usdoj.gov/schedules/orangebook/c_cs_alpha.pdf; 1.7.12.18(J) NMAC.)

37. Mr. Vigil had prescriptions for the Hydrocodone and all the other prescription medications found in his blue locker. (Vigil; Exs. 22-14, 22-18, D; *concur* Tweed, Smith, Schaefer.)

38. There is no BHI policy that prohibits Mr. Vigil from keeping his personal prescription Hydrocodone in his work locker. (Tweed; *see also* Ex. 4, Drug and Alcohol-Free Workplace Policy.)

89

State Defendants-000112

39. The Clonazepam was patient medication, which Mr. Vigil worked with as part of his job. (Vigil; Tweed; Aragon; Moore; Chavez; Schaefer; Valdez; Exs. 16, 22-6, G-2, K; Hearing, *generally*.)

40. Mr. Vigil did not know about or place the Clonazepam tablet in his desk cabinet. (Vigil; Ex. 16.)

41. Mr. Vigil found two expired patient prescriptions in two ALF residents' active medication bins on June 1, 2015; he thought that was a safety-hazard for the residents. (Vigil.)

42. Mr. Vigil completed no Medication Incident Report on his discovery of expired medications in ALF residents' active medication bins. (Hearing, *generally*.)

43. Mr. Vigil placed the two expired patient prescription medications in his desk cabinet. (Vigil; Ex. 16.)

44. Mr. Vigil knew or should have known that three additional expired patient prescription medications were stored in his yellow-locked cubby locker. (*See* Vigil.)

45. Expired medication should be "segregated and held" in the locked medcart. (Tweed; Aragon; Smith; Ex. 26.)

46. On May 1, 2013, Mr. Vigil signed and acknowledged the NMBHI at Las Vegas CBS Custodial Procedures Manual (revised as of 4/25/12), which provided: "Medications no longer in use, unwanted, outdated, or adulterated will be placed in a quarantine area in the locked medication cabinet and held for destruction by the consultant pharmacist." (Smith; Ex. 26.)

47. Mr. Vigil completed no Medication Incident Report on his storing expired patient prescription medications in his desk and cubby locker. (Hearing, *generally*.)

48. Mr. Vigil's priority was the safety of the ALF residents. (Vigil; Ex. 16; *see also* Swan, Ex. 17.)

49. Mr. Vigil removed expired patient medication from the medcart to safeguard the residents. (Vigil; Schaefer; Ex. 16; *see also* Valdez, Swan, Ex. L.)

50. Mr. Vigil stored the expired patient medication in secure locations, the desk cabinet of his locked office and his locked cubby locker. (Vigil; Tweed; Chavez; Schaefer; Exs. 16, 22-19, 22-22; *concur* Aragon.)

51. There was an established practice at the ALF of the Psych Tech Supervisor removing expired medications from the medcart and storing them in his desk cabinet. (Vigil; Valdez.)

52. Mr. Vigil learned that practice from his dayshift Psych Tech Supervisor predecessor, Manuel Valdez, as well as from his evening shift Psych Tech Supervisor predecessor, Connie Solano. (Id.; *see also* Aragon.)

53. Mr. Vigil told his supervisor, CBS Director Corinne Dominguez, that he would hold on to the expired medications he found on June 1, 2015, until they had a chance to meet. (Vigil.)

54. In Spring 2015, the BHI Finance Cashier disbursed a combined clothing allowance for the 14 ALF residents as two lump sum checks, one for $900 on or around May 4 and one for $1200 on or around May 7, rather than disbursing only one $150 check for each resident at a time. (Id.; Martinez; Ex. 16.)

55. Mr. Vigil took the clothing allowance funds issued in bulk by BHI, separated them into $150 increments, and placed each $150 in its own envelope for each ALF resident. (Vigil; *see also* Schaefer, Exs. 16, 18.)

56. Mr. Vigil learned the practice of holding clothing allowance funds, change, and receipts for each resident in its own envelope, and waiting until the shopping was complete before returning any of it to the Finance Department, from his Psych Tech Supervisor predecessor Manuel Valdez. (Vigil; Ex. 16; *see also* Valdez.)

57. Mr. Vigil stored the envelopes with the pre-shopping, full $150 clothing allowance in his locked desk cabinet. (Vigil; Exs. 18, 22-4.)

58. Mr. Vigil stored the envelopes with the post-shopping clothing allowance receipts and change – approximately $25 in total – in his unlocked desk drawer. (Vigil; Exs. 18, 22-1.)

59. Mr. Vigil was arrested on July 8, 2015, and charged with Possession of Controlled Substances. (Exs. 15, 16, C-2 – C-3.)

60. BHI was aware that Mr. Vigil was arrested, as his arrest occurred on BHI premises. (Vigil; Tweed; Exs. 16, C-2 – C-3.)

61. The NCA proposing Mr. Vigil's dismissal from BHI was dated October 2, 2015, and served on him the same day. (Exs. 12, 15.)

62. Mr. Vigil was given the opportunity to respond to the allegations in his NCA either orally or in writing. (Ex. 12.)

63. Mr. Vigil requested and was granted an Oral Response Meeting, which took place on October 15, 2015. (Ex. 15.)

State Defendants-000114

64. The Department considered the information provided by Mr. Vigil at his ORM, but found no reason to reduce the proposed disciplinary action. (Id.)

65. Mr. Vigil's NFA was dated October 20, 2015, and dismissed him effective October 21, 2015. (Id.; Stip. 2.)

66. At the time of his dismissal, Mr. Vigil was a permanent employee of BHI within the classified service. (Stip. 3.)

67. Mr. Vigil filed the Notice of Appeal of his dismissal with the Board on November 19, 2015. (Stip. 4.)

Any Finding of Fact that constitutes a Conclusion of Law is adopted by the ALJ as such as if originally so denominated.

### VII. RECOMMENDED CONCLUSIONS OF LAW

1. Mr. Vigil received due process through his NCA and the opportunity to respond to it orally and in writing, as this provided him with notice of the factual basis underlying his proposed dismissal and an opportunity to be heard. (*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985).)

2. At the time of his dismissal on October 21, 2015, Mr. Vigil was a permanent employee of DOH within the classified service and was entitled by law to appeal his discipline to the Board. (NMSA 1978, Section 10-9-18(A) (2009); 1.7.11.13(C)(4)(a) and 1.7.12.8(A) NMAC.)

3. Mr. Vigil timely filed his Notice of Appeal with the Board within the 30-day period provided by law. (NMSA 1978, Section 10-9-18(A) (2009); 1.7.11.13(C)(4)(a) and 1.7.12.8(B) NMAC.)

4. The Board has personal and subject matter jurisdiction over the parties. (Id.)

5. Under BHI's Disposal of Unusable Products Policy, expired medication is an unusable product. (BHI Disposal of Unusable Products Policy, PHM 060, Definitions Section A(1).)

6. BHI's Disposal of Unusable Products Policy states that "[u]nusable products shall be segregated and held until able to return." (BHI Disposal of Unusable Products Policy, PHM 060, Procedures Section III(A).)

7. The "segregated and held" provision of BHI's Disposal of Unusable Products Policy is informed by the NMBHI at Las Vegas CBS Custodial Procedures Manual (revised as of 4/25/12), which provides that, "Medications no longer in use, unwanted, outdated, or adulterated will be placed in a quarantine area in the locked medication cabinet and held

92

for destruction by the consultant pharmacist." (NMBHI at Las Vegas CBS Custodial Procedures Manual (revised as of 4/25/12), Drug Policy Section I(E)(6).)

8. Mr. Vigil knew or should have known that expired patient medication was stored in a separate area of the locked medcart.

9. When Mr. Vigil stored expired patient medication in his desk cabinet and cubby locker, he engaged in misconduct and violated BHI's Disposal of Unusable Products Policy. (BHI Disposal of Unusable Products Policy, PHM 060, Procedures Section III(A).)

10. Under BHI's Incident Reporting and Notification Policy, employees are required to complete a Medication Incident Report when there is a medication-related deviation from policy or a medication-related safety hazard for BHI patients. (BHI Incident Reporting and Notification Policy, SCD 001, Definitions Section and Procedures Section IV(I).)

11. When Mr. Vigil failed to complete Medication Incident Reports on: 1) his storing expired patient prescription medications in his desk and cubby locker, in violation of policy; and 2) his discovery of expired medications in ALF residents' active medication bins, a safety hazard for those ALF residents, he engaged in misconduct and violated BHI's Incident Reporting and Notification Policy. (Id.)

12. When Mr. Vigil failed to complete the required Medication Incident Reports and left clothing allowance change in his unlocked desk drawer, he engaged in misconduct, was negligent, violated DOH's Disciplinary Action Policy, and violated DOH's Code of Conduct. (DOH Disciplinary Action Policy, HR.08.10, Definitions Section S and Policy Section B(3)(f); DOH Code of Conduct, HR 015, Policy Section III(A)(b).)

13. When Mr. Vigil violated BHI's Disposal of Unusable Products Policy (PHM 060), BHI's Incident Reporting and Notification Policy (SCD 001), and DOH's Code of Conduct, he violated DOH's Disciplinary Action Policy. (DOH Disciplinary Action Policy, HR.08.10, Policy Section B(3)(bb).)

14. Mr. Vigil's proven misconduct and violations of BHI and DOH policies were inconsistent with his obligations to BHI and DOH. (1.7.11.10(A) NMAC.)

15. Mr. Vigil's proven misconduct and policy violations are mitigated, however by the following facts:
    - It was established practice in the ALF Unit for the Psych Tech Supervisor to store expired patient medication in his desk cabinet until it could be returned to the pharmacy;
    - Mr. Vigil followed this practice to ensure the safety of the ALF residents;
    - Mr. Vigil held the expired medications in secure locations – the locked desk cabinet of his locked office and in his locked cubby locker; and
    - Mr. Vigil reported his discovery of expired patient medication in ALF residents' active medication bins directly to his supervisor, CBS Director Dominguez.

93

State Defendants-000116

16. The allegations in Mr. Vigil's LOR (unprofessional interaction with co-worker) are wholly unrelated to his proven misconduct here. (*Compare* Ex. 21 *to* Recommended Conclusions of Law 9, 11, and 12.)

17. Mr. Vigil's prior LOR cannot serve as progressive discipline under these circumstances.

18. Based on Mr. Vigil's misconduct and violations of BHI and DOH policy, the Department had just cause to discipline him. (1.7.11.10(B) NMAC.)

19. Given the nature of Mr. Vigil's misconduct, the mitigating factors listed above, and the lack of progressive discipline, however, the discipline of dismissal was not the appropriate sanction to impose on him.

20. Under these circumstances, the appropriate and proportional sanction to impose upon Mr. Vigil is a 30-day suspension.

## VIII. RECOMMENDED DECISION

Mr. Vigil improperly stored expired patient medication in his desk cabinet and cubby locker; failed to complete Medication Incident Reports on that improper storage and on his discovery of expired medication in ALF residents' active medication bins, and improperly handled clothing allowance change by storing it in his unlocked desk drawer. This misconduct is inconsistent with Mr. Vigil's obligations to DOH and BHI, is a violation of BHI and DOH policies, and is just cause for his discipline. However, given the nature of his misconduct, the mitigating factors listed above that lessen the severity of his misconduct, and the lack of progressive discipline, dismissal was not the appropriate sanction here. Rather, a 30-day suspension is the appropriate, reasonable, and proportional sanction to impose on Mr. Vigil.

Respectfully submitted,

Jessica B. Cooper
Administrative Law Judge

Entered: March 4, 2019

94

State Defendants-000117