IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN VIGIL,

    Plaintiff,

v.                                           Case No. 1:18-CV-00829-SCY-JFR

FRANCES TWEED, et al.,

    Defendants.

## PLAINTIFF JOHN VIGIL'S ANSWERS TO "STATE DEFENDANTS" FIRST SET OF INTERROGATORIES and REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

    Plaintiff John Vigil, by and through her attorney of record, Romero & Winder, P.C. (Joe M. Romero, Jr.), answers as set forth below to State Defendant's First Set of Interrogatories and Requests for Production of Documents.

1. List each address where you have lived from 2012 through the present and state the dates when you lived at each address you list.

    Answer:

    I have resided at the same address, ███████████████████████████████, from 2012 to the present.

2. List the name, address and telephone number of each of your employers from 2012 through the present; for each employer listed, state the dates of your employment, your job title, the nature of your job duties, the average weekly, bi-monthly or annual compensation you received and the reason for your discharge or termination. Please execute the attached Personnel Records Release.

    Answer:

    Plaintiff does not recall precise dates. He was employed full time by the New Mexico Behavioral Health Institute (NMBHI) from approximately May 1999 until my wrongful

1

termination on October 20, 2015. Plaintiff was reinstated and returned to work at NMBHI in approximately June 2019.  As best Plaintiff can recall, his starting pay, when he first started working at NMBHI was $6.50 per hour. As time progressed, Plaintiff received periodic promotions and / or cost of living raises. At the time Plaintiff medically retired from NMBHI, or about March 2020, he was being paid $20.00 per hour.

      Plaintiff's job titles during my tenure at NMBHI varied from Pscyh Tech 1, Psych Tech 2, and Psych Tech Supervisor. His duties generally involved observing and caring for   NMBHI residents, to include ensuring their safety and welfare, observing their condition, monitoring their medication and Activities of Daily Living (ADL), and assisting or leading them in their therapeutic and recreational activities. After becoming a supervisor, Plaintiff was also responsible for supervising employees in the performance of their Psych Tech duties.

      From approximately 2013 to 2015, Plaintiff also worked part time (approximately 16 hours per week at a rate of pay of $8.00 per hour), as a home health care provider for Victory Home Health Care, Las Vegas, New Mexico.

      Plaintiff has executed and previously provided you a Personnel Records Release.

3.  Identify by name, occupation, address and telephone number each person you expect to call as a lay witness at trial.  For each witness listed, state the subject matter on which the witness is expected to testify and describe the substance of the witness's expected testimony.

      Answer:

      A final determination as to all lay witnesses Plaintiff will call to testify at trial has not been made. Reserving his right to amend his answer to this interrogatory, Plaintiff may call the following witness at trial:

    a) Plaintiff resides in Las Vegas, New Mexico and will testify in this case regarding all allegation in his complaint.
    b) All named Defendants in this case, may be called to testify regarding their participation and that of others in the events described in Plaintiff's complaint.
    c) Patricia Vigil resides in Las Vegas, New Mexico. Patricia is John Vigil's domestic partner and may testify regarding her whistleblower complaint against NMBHI, Plaintiff's express support of her claim, and the retaliation Plaintiff experienced because of his support for Ms. Vigil's complaint against NMBHI.
    d) Manuel Valdez resides in Las Vegas, New Mexico, ▓▓▓▓▓▓▓. He is a former NMBHI employee. He may testify regarding his experience working at a NMBHI - Assisted Living Facility (ALF) unit, as well as events of which he has knowledge and are described in Plaintiff's complaint.
    e) Pauline Lucero, resides in Las Vegas, New Mexico, ▓▓▓▓▓▓▓. Ms. Lucero is a former employee of NMBHI and may testify regarding practices at the NMBHI -

2

year listed. Please execute the attached IRS Form 4506.

    Answer:

    From 2012 to October 2015, Plaintiff worked full time at NMBHI, including working periodic over-time hours. During his employment at NMBHI, as indicated previously, Plaintiff variously earned from $6.50 per hour to $20.00 per hour. His medical retirement from NMBHI became effective on or about March 2020.

    During the time Plaintiff was contesting my wrongful termination, form October 2015 until his reinstatement in approximately June 2019, Plaintiff received Social Security Disability (SSD) income. As best Plaintiff can recall, in 2016 he received SSD income of approximately $10,136.00; in 2017 he received SSD income of approximately $15,252.00; and in 2019, he received SSD income of approximately $15,552.00. In late 2019, upon his reinstatement at NMBHI, and until my medical retirement from NMBHI in approximately March 2020, Plaintiff was working full time at NMBHI earning $20.00 per hour.

    Upon my medical retirement from NMBHI, Plaintiff receives two separate monthly disability payments, an SSD payment of approximately $1,200.00 and a New Mexico state disability payment of approximately $1,800, for a total monthly of income of approximately $3,000 per month.

    As stated earlier, from approximately 2013 to 2015, Plaintiff also worked part time (approximately 16 hours per week at a rate of pay of $8.00 per hour) as a home health care provider, for Victory Home Health, located at 2810 Hot Springs Blvd, Las Vegas, New Mexico.

    Plaintiff has previously executed and submitted the requested IRS Form 4506.

8. What do you expect your gross income to be this year? Produce any and all documents substantiating or in any way relating to the amount of gross income you expect to receive this year.

Answer:

Plaintiff expects his annual gross income in 2020 to be approximately $36,000 to $37,000.

9. With regard to Paragraph 123 of the Second Amended Complaint, Doc 38, filed 09/22/19, describe with particularity any instances in which you "specifically complained to NMBHI employees, including but not limited to Defendants Frances Tweed, Corrine

Dominguez, Antonio Coca, and/or Joe Chavez that patients were suffering as a result of placing patients who had extremely limited cognitive skills into placements designed for patients who were able to take care of themselves." Include in your description the date and location of the communication, the manner in which it was made, the individuals who received the communication and the complete substance of the alleged communication.

Produce any notes, correspondence, email, electronically stored information that support your allegation.

Answer:

Plaintiff does not recall exact dates, but to the best of my recollection, during my employment at NMBHI, Plaintiff worked extensively with residents who qualified for community-based service (CBS) or alternative living facility (ALF) services. The latter part of my career at NM BHI was as a psych tech supervisor in an ALF unit. In an ALF unit, residents suffered from various degrees of mental illness, but did not require intensive in-patient hospitalization due to their diagnosed mental illness. As such, ALF residents, lived in a semi-independent environment.

Starting in the 2014-time frame, Plaintiff started noticing and was directly impacted by changes in the way ALF units were managed. In her capacity of Executive Nurse Administrator, Defendant Tweed, with the full cooperation of Defendant Dominguez, would routinely and regularly require ALF employees to be transferred from their assigned ALF related duties to work in other units on the NMBHI grounds. As an ALF supervisor, Plaintiff verbally complained about this directly to my immediate supervisor Defendant Dominguez. Plaintiff was told to cooperate with Defendant Tweed and comply with her requests. The result was that the ALF unit was often left short staffed and unable to fully carry out ALF related duties. These duties included transporting ALF residents on their shopping trips, doctors' appointment, family visits, or other events which required the staff to separate and do more than one thing at one time.

During this time, Plaintiff was both the official day shift supervisor at his ALF unit and a temporarily appointed night shift supervisor. The night shift supervisor position was left unfilled for over two years. However, when Plaintiff tried to discipline night shift staff, he was told by Defendant Dominguez he had no authority to discipline night shift staff since he was not the permanently assigned night shift supervisor.

In 2015, Plaintiff tried to correct or report duty lapses on the part of the graveyard shift. In response, Plaintiff was retaliated against and Plaintiff was himself wrongfully reprimanded by his supervisor (Defendant Dominguez) for doing so. He was informed that the graveyard shift supervisor, Tina Gurule, was effectively untouchable because her relatives (her step-father and

9

mother) both worked at NM BHI and were "close" acquaintances with both the then NM BHI Executive Director and Defendant Tweed.

Plaintiff personally experienced this preferential treatment. In 2015, upon starting his shift, Plaintiff discovered an ALF resident ▋ locked inside an ALF unit bathroom. She had slipped and fallen in the bathroom, urinated on herself, and was in a dazed state and confused. An ambulance was called to transport her to the hospital to ensure she had not suffered or sustained any cardiac or neurological event. After discovering ▋, Plaintiff sought out graveyard shift supervisor and her staff and discovered the entire graveyard shift in the t.v. room, either watching t.v. or sleeping. Instead of anyone on the graveyard shift being disciplined for the neglect of ▋, Plaintiff was disciplined, allegedly for raising his voice and being disrespectful to a graveyard shift staff member.

Regarding medication administration, there were no full-time nurse assigned to the ALF unit. The full-time personnel assigned to the ALF unit are psych techs. As non-doctors or non-nurses, psych techs were strictly prohibited by law and policy from administering prescription medications to ALF residents. The only nurse with direct responsibility over ALF unit residents was Ms. Cathy Aragon, an NM-CBS (Community Based Service) nurse. Ms. Aragon worked off site, that is not on the NM BHI campus grounds. Absent an emergency, Ms. Aragon visited the ALF unit at most once a week. Ms. Aragon's visits involved reviewing resident paperwork, not treating patients, or administering meds.

As there were no full-time nurses in the ALF unit, ALF residents were expected to be sufficiently competent to self-administer their own medications. They were required, in the presence of ALF staff, to retrieve and take their medication from the med cart where it was stored. As time progressed in the ALF unit, it became obvious that an increasing number of ALF residents were being admitted into the ALF unit who were not sufficiently competent to knowingly and intelligently self-administer their own medication, (i.e. know what medication they were taking, why they were taking it, and when they were required to take it). As such, to mitigate the risk of these ill placed residents mistakenly taking unusable medication, Plaintiff and his predecessor supervisor stored unusable or expired medication in the supervisor's office until it could be safely disposed.

On multiple occasions, Plaintiff complained to NM BHI Defendants, in particular Defendants Dominguez and Tweed, that the psych tech staff was not trained, but nonetheless being forced, to administer meds to ALF unit residents due to the incompetency of many of these residents. Plaintiff specifically recalls questioning and discussing the incompetency of many ALF unit residents. Examples of incompetent residents included ▋ who physically was not capable of opening her own pill bottle, ▋ who couldn't communicate because of her schizophrenia, ▋ who was in a consistent hallucinated state, ▋ who would take more pills then authorized by his prescription, ▋ who was elderly and senile, ▋ who simply refused to take any of meds, ▋ who was blind. This is but a sampling of residents admitted into the ALF unit who should not have been admitted.

10

Supervisors (Defendants Tweed and Dominguez) were aware of this problem, but simply looked the other way and expected Plaintiff as the supervisor for both the day and night shift to "take care of it". When Plaintiff complained about the impossible situation, he was ignored.

The danger or risk to many of the more mentally incompetent ALF unit residents was compounded by the fact that Plaintiff would often find expired meds in the med cart and all residents in the unit had access to the med cart. As such, Plaintiff did what he was trained to do by his predecessor. He would remove expired meds from the med cart, secure them in his office, in a locked desk drawer, until he could safely dispense them at the NM BHI pharmacy.

Also, in 2013, Plaintiff's domestic partner, Patricia Vigil, filed a state law whistle blower complaint against NM BHI. The litigation of the case was protracted and ultimately settled in mid-2015. During the litigation of Ms. Vigil's case, Plaintiff openly supported Ms. Vigil by attending mediations and other litigation related meetings with her. On one occasion, he served a subpoena or summons on an NM BHI employee, Audrey Madrid. Upon returning to work in mid-2015, after accompanying Ms. Vigil to a mediation hearing in Albuquerque, Plaintiff was required on multiple occasions to meet with and answer questions from Defendants Tweed and Dominguez, and NM BHI management employee Richard Vigil, questioning whether he had attended the mediation in an authorized non-leave status and his authority to serve Audry Madrid with service. After not providing the answer that Defendants wanted to hear, Plaintiff was required to report to the main NM DOH office in Santa Fe to explain and justify his leave status and his presence at his domestic partner's mediation. When he reported to Santa Fe, he was informed by an HR personnel staff member that there was no issue or problem with his leave status.

Ms. Vigil's whistleblower case with NM BHI settled out of court and the case was subsequently dismissed based on a significant financial settlement made to Ms. Vigil. When Ms. Vigil attempted to visit Plaintiff on the NM BHI campus, she was informed that she had been banned from the NM BHI campus and was not allowed on NM BHI grounds. Moreover, approximately two weeks after Ms. Vigil's case settled, NM BHI is alleged to have received the first anonymous letter that led to Plaintiff's locked desk drawer and personal lockers being searched by NM BHI Defendants and law enforcement being contacted.

Upon the alleged receipt of the anonymous letters, NM BHI Executive Director Troy Jones assigned Defendant Tweed to conduct or facilitate an investigation regarding the anonymous letters. The assignment of Defendant Tweed was problematic in that Defendant Tweed was not Plaintiff's supervisor and it was common practice and policy for one's direct supervisor to investigate and discipline a subordinate employee suspected of misconduct.

In response to the alleged anonymous letters submitted to NM BHI management in June 2015, containing incorrect and incomplete allegations against Plaintiff, Defendants entered Plaintiff's office without his consent, when Plaintiff was absent from work due to work related stress. Defendants proceed to break the locks to his office desk and personal lockers and search his desk and lockers. Thereafter, after securing the medications alleged to have been found in the desk drawer and lockers, and without attempting to obtain Plaintiff's version of events, NM BHI Defendants immediately reported these alleged workplace violations as felony crimes to the

11

police as a crime. Both Defendant Tweed and Mr. Troy Jones, then the Executive Director of NM BHI expressly and falsely told the police that Plaintiff lacked the authority to possess the subject patient related medications

Defendant Tweed encouraged the prosecution of Plaintiff by immediately reporting the results of the Plaintiff's search of Plaintiff's office and personal lockers to the police and then falsely and / or recklessly claiming that Plaintiff was not lawfully in possession of the ALF resident prescription medication or lawfully in possession of his own prescription medication on the NM BHI campus. These statements contributed and led to the arrest and filing of felony criminal charges against Plaintiff. These statements also contributed and led to Plaintiff's termination of employment on October 20, 2015.

After prolonged litigation in the criminal case filed against Plaintiff, he was acquitted on all charges.

After prolonged litigation in the personnel case challenging his wrongful termination, Plaintiff was reinstated based on the findings of a State Personnel Office finding that there did not exist sufficient grounds for Plaintiff's termination of employment.

10. With regard to Paragraph 124 of the Second Amended Complaint, Doc 38, filed 09/22/19, describe with particularity any instances in which you "… spoke out about other instances involving the mistreatment of patients in [his] unit at NMBHI." Include in your description the date and location of the communication, the manner in which it was made, the individuals who received the communication and the complete substance of the alleged communication.

Produce any notes, correspondence, email, electronically stored information that support your allegation.

Answer:

See Answer to Interrogatory No. 9.

11. With regard to Paragraph 132 of the Second Amended Complaint, Doc 38, filed 09/22/19, describe with particularity all material facts that support your allegation that

12

"Defendants' actions were likely also motivated by the fact that Defendant had spoken out over mismanagement at NMBHI, including but not necessarily limited to employee misbehavior and misclassification of residents/patients." Include in your description the date and location of any such communication, the manner in which it was made, the individuals who received the communication and the complete substance of the alleged communication.

Produce any notes, correspondence, email, electronically stored information that support your allegation.

Answer:

See Answer to Interrogatory No. 9.

12. With regard to Paragraph 133 of the Second Amended Complaint, Doc 38, filed 09/22/19, describe with particularity all material facts that support your allegation that "[T]he widespread misclassification of NMBHI residents/patients caused people who could not independently function to be assigned to the unit that Plaintiff oversaw."

Produce any notes, correspondence, email, electronically stored information that support your allegation.

Answer:

See Answer to Interrogatory No. 9.

13. With regard to Paragraph 134 of the Second Amended Complaint, Doc 38, filed 09/22/19, describe with particularity all material facts that support your allegation that "Said unit was not designed to house people who could not, for example, manage their own money or take their own medication."

13

Produce any notes, correspondence, email, electronically stored information that support your allegation.

Answer:

See Answer to Interrogatory No. 9.

14. With regard to Paragraph 135 of the Second Amended Complaint, Doc 38, filed 09/22/19, describe with particularity all material facts that support your allegation that "These failings were compounded by the lack of medical staff in the unit in which Plaintiff worked."

Produce any notes, correspondence, email, electronically stored information that support your allegation.

Answer:

See Answer to Interrogatory No. 9.

15. List by amount each item of damage you seek to recover in this lawsuit as an out-of-pocket expense, including but not limited to: past and future medical expenses; past and future pain and suffering; past and future loss of enjoyment of life; and past and future lost income and earning capacity. For all past expenses listed, state the date the expense was incurred, to whom it was paid or owed, and the purpose of the expense.

Produce copies of all invoices, bills, canceled checks, receipts, statements, estimates or other documentation substantiating all expenses listed.

Answer:

Plaintiff is entitled to damages to be determined by a jury for Plaintiff's wrongful acts of retaliating against him for speaking out about NMBHI management's treatment of whistleblowers, in particular his domestic partner, and NMBHI's mis-management of NMBHI's